**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| SAN ROCCO THERAPEUTICS, LLC,<br><br>Plaintiff,<br><br>v.<br><br>NICK LESCHLY, MITCHELL FINER, PHILIP REILLY, CRAIG THOMPSON, THIRD ROCK VENTURES, LLC, BLUEBIRD BIO, INC., and 2SEVENTY BIO, INC.,<br><br>Defendants. | Civil Action No. 1:23-cv-10919-ADB |

**DEFENDANTS LESCHLY, FINER, REILLY, THIRD ROCK, BLUEBIRD AND 2SEVENTY'S MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6)**

**TABLE OF CONTENTS**


**Page**

I. INTRODUCTION ..... 1

II. FACTUAL BACKGROUND ..... 2

A. The Parties ..... 2

B. The Dispute's Origin ..... 2

C. The Prior Litigations ..... 3

D. The 2020 Settlement Agreement ..... 4

E. SRT's Renewed Litigation Campaign ..... 5

III. ARGUMENT ..... 6

A. THE RICO COUNTS (COUNTS I-IV) FAIL ..... 7

1. The RICO Counts Are Time-Barred ..... 7

2. The Allegations Are Implausible and Insufficiently Pled ..... 9

3. SRT Fails to Establish a Racketeering Pattern ..... 15

4. SRT Fails to Allege Cognizable RICO Injuries ..... 17

5. Additional Pleading Failures ..... 19

B. THE FEDERAL ANTITRUST COUNTS (COUNTS V-X) FAIL ..... 20

1. SRT Fails to Allege an Antitrust Injury ..... 20

2. SRT Improperly Relies on Released and Time-Barred Allegations ..... 23

3. SRT Improperly Relies on First Amendment-Protected Activity ..... 25

C. THE FRAUDULENT INDUCEMENT COUNT (COUNT XI) FAILS ..... 26

1. SRT Fails to Satisfy Rule 9(b) ..... 27

2. SRT Fails to Allege a Misrepresentation of Present Fact ..... 28

3. SRT Fails to Allege a Duty of Disclosure ..... 29

4. The Allegations Are Barred by Disclaimers ..... 30

5. SRT Waived Its Claim by Ratification ..... 31

D. THE CHAPTER 93A COUNT (COUNT XII) FAILS ..... 32

E. THE MASSACHUSETTS ANTITRUST COUNTS (COUNTS XIII AND XIV) FAIL ..... 33

1. SRT Fails to Establish Jurisdiction Under the MAA ..... 33

2. SRT's Allegations Are Exempted Under the MAA ..... 34

F. THE CLAIMS AGAINST THE INDIVIDUAL DEFENDANTS AND 2SEVENTY ARE EVEN MORE BASELESS ..... 34

IV. CONCLUSION ..... 35

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Agency Holding Corp. v. Malley-Duff & Assocs., Inc.*,
483 U.S. 143 (1987) ....................7

*Aleshire v. Wells Fargo Home Mortg., Inc.*,
No. 10-12066-RWZ, 2011 WL 4595250 (D. Mass. Sept. 30, 2011) ....................3

*Allen v. Riese Org., Inc.*,
106 A.D.3d 514 (1st Dept. 2013) ....................31

*Allied Tube & Conduit Corp. v. Indian Head, Inc.*,
486 U.S. 492 (1988) ....................25

*Almeda Mall, Inc. v. Houston Lighting & Power Co.*,
615 F.2d 343 (5th Cir. 1980)....................22

*Álvarez-Maurás v. Banco Popular of P.R.*,
919 F.3d 617 (1st Cir. 2019)....................8

*American Tel. & Tel. Co. v. IMR Capital Corp.*,
888 F. Supp. 221 (D. Mass. 1995)....................33

*American Transp. Ins. Co., Inc. v. Balboa Ins. Co.*,
No. CIV. A. 88-1834-MC, 1989 WL 90425 (D. Mass. Aug. 2, 1989)....................34

*Andrews v. Am. Nat'l Red Cross*,
176 F. Supp. 2d 673 (W.D. Tex. 2001)....................12

*Anoush Cab, Inc. v. Uber Techs., Inc.*,
8 F.4th 1 (1st Cir. 2021)....................32

*Arista Records, LLC v. Doe 3*,
604 F.3d 110 (2d Cir. 2010)....................28

*Armored Grp., LLC v. Homeland Sec. Strategies, Inc.*,
No. 07-9694 (LAP), 2009 WL 1110783 (S.D.N.Y. Apr. 21, 2009)....................29

*Arunachalam v. IBM*,
759 Fed. Appx. 927 (Fed. Cir. 2019)....................18

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ....................7, 9

*Augustine Med., Inc. v. Progressive Dynamics, Inc.*,
194 F.3d 1367 (Fed. Cir. 1999)....................23

**TABLE OF AUTHORITIES**
**(continued)**

**Page(s)**

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ........ 6, 9, 14

*Brooke Grp. Ltd. v. Brown & Williamson Tobacco Corp*.,
509 U.S. 209 (1993) ........ 20, 21

*Brown Shoe Co. v. United States*,
370 U.S. 294 (1962) ........ 20

*Brunswick Corp. v. Pueblo Bowl–O–Mat, Inc*.,
429 U.S. 477 (1977) ........ 21

*Brunswick Corp. v. Riegel Textile Corp*,
752 F.2d 261 (7th Cir. 1984) ........ 21, 22, 23, 25

*C. R. Bard, Inc. v. Medical Elecs. Corp*.,
529 F. Supp. 1382 (D. Mass. 1982) ........ 33

*Capone v. City of Columbia*,
No. 19-2490-CMC-PJG, 2020 WL 633739 (D.S.C. Feb. 11, 2020) ........ 11

*Cavallaro v. UMass Mem'l Health Care, Inc*.,
No. 09-40152-FDS, 2010 WL 3609535 (D. Mass. July 2, 2010) ........ 18

*Columbia River Peoples Util. Dist. v. Portland Gen. Elec. Co*.,
217 F.3d 1187 (9th Cir. 2000) ........ 22

*Compagnie De Reassurance D'lle de France v. New England Reinsurance Corp*.,
57 F.3d 56 (1st Cir. 1995) ........ 18

*Consolidated Edison Inc. v. Northeast Utilities*,
249 F. Supp. 2d 387 (S.D.N.Y. 2003) ........ 30

*CrossBorder Sols., Inc. v. Macias, Gini & O'Connell, LLP*,
No. 20 Civ. 4877 (NSR), 2022 WL 562934 (S.D.N.Y. February 23, 2022) ........ 15

*Danann Realty Corp. v. Harris*,
5 N.Y.2d 317 (1959) ........ 30

*Day v. Johns Hopkins Health Sys. Corp*.,
907 F.3d 766 (4th Cir. 2018) ........ 11

*DiMuro v. Clinique Lab'ys, LLC*,
572 F. App'x 27 (2d Cir. 2014) ........ 27

**TABLE OF AUTHORITIES**
**(continued)**

**Page(s)**

*Donovan v. Aeolian Co.*,
270 N.Y. 267 (1936)....29

*Douglas v. Hirshon*,
63 F.4th 49 (1st Cir. 2023)....3

*Duplessis v. Wells Fargo Bank, Nat'l Ass'n*,
91 Mass. App. Ct. 1125 (2017)....32

*DynCorp v. GTE Corp.*,
215 F. Supp. 2d 308 (S.D.N.Y. 2002)....30

*Eastern R.R. Presidents Conference v. Noerr Motor Freight, Inc.*,
365 U.S. 127 (1961)....25

*ECA & Local 134 IBEW Joint Pension Tr. v. JP Morgan Chase Co.*,
553 F.3d 187 (2d Cir. 2009)....27

*EcoDisc Tech. AG v. DVD Format/Logo Licensing Corp.*,
711 F. Supp. 2d 1074 (C.D. Cal. 2010)....25

*Efron v. Embassy Suites (P.R.), Inc.*,
223 F.3d 12 (1st Cir. 2000)....16, 19

*In re Elan Corp. Sec. Litig.*,
543 F. Supp. 2d 187 (S.D.N.Y. 2008)....27

*ESPOT, Inc. v. MyVue Media, LLC*,
492 F. Supp. 3d 672 (E.D. Tex. 2020)....15

*Ferrer v. Int'l Longshoremen's Ass'n (ILA) AFL-CIO*,
No. 08-1505 (JP), 2009 WL 1361953 (D.P.R. May 11, 2009)....16

*Freeman v. Lasky, Haas & Cohler*,
410 F.3d 1180 (9th Cir. 2005)....25

*Gagliardi v. Sullivan*,
513 F.3d 301 (1st Cir. 2008)....6

*United States ex rel. Gagne v. City of Worcester*,
565 F.3d 40 (1st Cir. 2009)....7

*George Cohen Agency, Inc. v. Donald S. Perlman Agency, Inc.*,
114 A.D.2d 930 (2d Dept. 1985)....29

**TABLE OF AUTHORITIES**
**(continued)**


**Page(s)**

*Giuliano v. Fulton*,
399 F.3d 381 (1st Cir. 2005) ........ 9, 10, 16

*H.J. Inc. v. Nw. Bell Tel. Co.*,
492 U.S. 229 (1989) ........ 15, 16

*Halvorssen v. Simpson*,
No. 18-2683, 2019 WL 4023561 (E.D.N.Y. Aug. 26, 2019), *aff'd*, 807 F. App'x 26 (2d Cir. 2020) ........ 17

*Harsco Corp. v. Segui*,
91 F.3d 337 (2d Cir. 1996) ........ 30, 31

*Huntington Intern. Corp. v. Fieldcrest Cannon, Inc.*,
No. 93 Civ. 7602 (PKL), 1994 WL 282220 (S.D.N.Y. June 22, 1994) ........ 28

*Indus. Gen. Corp. v. Sequoia Pac. Sys. Corp.*,
44 F.3d 40 (1st Cir. 1995) ........ 32

*JetAway Aviation, LLC v. Bd. of County Comm'rs of County of Montrose, Colorado*,
754 F.3d 824 (10th Cir. 2014) ........ 22

*Kingvision Pay-Per-View, Ltd. v. Vergas*,
No. 00-0407-JD, 2001 WL 311199 (D.N.H. Mar. 26, 2001) ........ 34

*Klehr v. A.O. Smith Corp.*,
521 U.S. 179 (1997) ........ 8, 24

*Kuwaiti Danish Comput. Co. v. Digit. Equip. Corp.*,
438 Mass. 459 (2003) ........ 32

*Langan v. Smith*,
312 F. Supp. 3d 201 (D. Mass. 2018) ........ 11, 19

*Lares Grp., II v. Tobin*,
221 F.3d 41 (1st Cir. 2000) ........ 8

*Lawson v. FMR LLC*,
554 F. Supp. 3d 186 (D. Mass. 2021) ........ 8, 17

*Lemelson v. Wang Lab'ys, Inc.*,
874 F. Supp. 430 (D. Mass. 1994) ........ 17

*Lerner v. Colman*,
26 F.4th 71 (1st Cir. 2022) ........ 14, 19

**TABLE OF AUTHORITIES**
**(continued)**

**Page(s)**

*Lerner v. Fleet Bank*,
459 F.3d 273 (2d Cir. 2006)....................27

*Line v. Astro Mfg. Co.*,
993 F. Supp. 1033 (E.D. Ky. 1998)....................17

*Loksen v. Columbia Univ.*,
No. 12-7701 (CM), 2013 WL 5549780 (S.D.N.Y. Oct. 4, 2013)....................31

*Longo v. Butler Equities II, L.P.*,
278 A.D.2d 97 (1st Dept. 2000)....................29

*Lu v. Menino*,
98 F. Supp. 3d 85 (D. Mass. 2015)....................10

*In re Lupron Mktg. & Sales Practices Litig.*,
295 F. Supp. 2d 148 (D. Mass. 2003)....................10

*A.G. ex rel. Maddox v. Elsevier, Inc.*,
732 F.3d 77 (1st Cir. 2013)....................6, 7

*McEvoy Travel Bureau, Inc. v. Heritage Travel, Inc.*,
904 F.2d 786 (1st Cir. 1990)....................12, 14

*Milliken & Co. v. Duro Textiles, LLC*,
451 Mass. 547 (2008)....................32

*Mills v. Polar Molecular Corp.*,
12 F.3d 1170 (2d Cir. 1993)....................27

*Morales-Cruz v. Univ. of P.R.*,
676 F.3d 220 (1st Cir. 2012)....................7

*Moweta v. Citywide Home Improvements of Queens, Inc.*,
267 A.D.2d 438 (2d Dept. 1999)....................31

*Munoz-Nagel v. Guess, Inc.*,
No. 12 Civ. 1312 (ER), 2013 WL 1809772 (S.D.N.Y. Apr. 30, 2013)....................28

*N. Am. Catholic Educ. Programming Found., Inc. v. Cardinale*,
567 F.3d. 8 (1st Cir. 2009)....................9

*Neder v. United States*,
527 U.S. 1 (1999)....................10

**TABLE OF AUTHORITIES**
**(continued)**

**Page(s)**

*Nelson v. Countrywide Home Loans, Inc.*,
No. 3:18-CV-02081 (SRU), 2019 WL 4762086 (D. Conn. Sept. 30, 2019)............................9

*Orix Credit All., Inc. v. R.E. Hable Co*.,
256 A.D.2d 114 (1st Dept. 1998) ....................................................................................29

*Petrello v. White*,
412 F. Supp. 2d 215 (E.D.N.Y. 2006) ..............................................................................27

*In re Relafen Antitrust Litig*.,
286 F. Supp. 2d 56 (D. Mass. 2003)..................................................................................24

*Rhone v. Energy N., Inc*.,
790 F. Supp. 353 (D. Mass. 1991)....................................................................................34

*Rombach v. Chang*,
355 F.3d 164 (2d Cir. 2004)..............................................................................................27

*RSA Media, Inc. v. AK Media Grp., Inc*.,
260 F.3d 10 (1st Cir. 2001)...............................................................................................20

*Sanchez v. Triple-S Mgmt., Corp.*,
492 F.3d 1 (1st Cir. 2007).................................................................................................10

*Sedima, S.P.R.L. v. Imrex Co.*,
473 U.S. 479 (1985) ..........................................................................................................17

*Serpa Corp. v. McWane, Inc*.,
199 F.3d 6 (1st Cir. 1999).................................................................................................20

*Simons v. Crowley*,
112 N.Y.S.2d 851 (1952)...................................................................................................31

*SNS Bank, N.V. v. Citibank, N.A.*,
7 A.D.3d 352 (1st Dept. 2004) ..........................................................................................29

*Sterling Merch., Inc. v. Nestle, S.A.*,
656 F.3d 112 (1st Cir. 2011).......................................................................................20, 21

*Steward Health Care System LLC v. Southcoast Health System, Inc.*,
No. CV 15-14188-MLW, 2016 WL 9022444 (D. Mass. Sept. 2, 2016) ...............................33

*Storage Tech. Corp. v. Custom Hardware Eng'g & Consulting, Ltd*.,
No. CIV.A. 02-12102-RWZ, 2006 WL 1766434 (D. Mass. June 28, 2006).........................25

**TABLE OF AUTHORITIES**
**(continued)**

**Page(s)**

*Tele-Cons, Inc. v. Feit Elec. Co.*,
No. 03-11250-LTS, 2011 U.S. Dist. LEXIS 129820 (D. Mass. Nov. 9, 2011) ....................23

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
551 U.S. 308 (2007) ....................27

*The Topps Co., Inc. v. Cadbury Stani S.A.I.C.*,
380 F. Supp. 2d 250 (S.D.N.Y.2005) ....................27

*Traverse v. Gutierrez Co.*,
No. 18-10175, 2021-DJC WL 3475723 (D. Mass. Aug. 6, 2021), *appeal dismissed*, Nos. 21-1703, 21-1754, 2022 WL 964095 (1st Cir. Jan. 5, 2022) ....................14

*United Food & Com. Workers Unions & Emps. Midwest Health Benefits Fund v. Novartis Pharms. Corp.*,
902 F.3d 1 (1st Cir. 2018)....................26

*United Mine Workers of Am. v. Pennington*,
381 U.S. 657 (1965) ....................25

*United States v. Sawyer*,
85 F.3d 713 (1st Cir. 1996)....................14

*United States v. Stepanets*,
989 F.3d 88 (1st Cir. 2021)....................15, 16

*United States v. Velazquez-Fontanez*,
6 F.4th 205 (1st Cir. 2021)....................35

*Varney v. R.J. Reynolds Tobacco Co.*,
118 F. Supp. 2d 63 (D. Mass. 2000)....................32

*Vázquez-Baldonado v. Domenech*,
847 F. Supp. 2d 281 (D.P.R. 2012), *aff'd*, 595 F. App'x 5 (1st Cir. 2015)....................19

*Watterson v. Page*,
987 F.2d 1 (1st Cir. 1993)....................3

*Wolf v. Wagner Spray Tech Corp.*,
715 F. Supp. 504 (S.D.N.Y. 1989) ....................24

*Wolfson v. Wolfson*,
No. 03-0954 (RCC), 2004 WL 224508 (S.D.N.Y. Feb. 5, 2004) ....................29

*Zirvi v. Flatley*,
433 F. Supp. 3d 448 (S.D.N.Y. 2020), *aff'd*, 838 F. App'x 582 (2d Cir. 2020) ....................15

**TABLE OF AUTHORITIES**
**(continued)**

**Page(s)**

**Statutes**

15 U.S.C. § 15b......24

18 U.S.C.
§ 1001......12
§ 1961(1)......12
§ 1962(a)......7, 18, 19
§ 1962(b)......7, 18, 19
§ 1962(c)......7
§ 1962(d)......7, 19

28 U.S.C. § 1367(c)......7

DTSA......15

M.G.L. c. 93
§ 1......33
§ 3......33, 34
§ 7......34

M.G.L. c. 93A, §11......32

M.G.L. c. 175A......34

M.G.L. c. 175E......34

RICO......*passim*

Sherman Act......33

**Rules**

Fed. R. Civ. P.
R. 9(b)......*passim*
R. 12(b)(6)......7

## TABLE OF ABBREVIATIONS

| RELEVANT ENTITIES | |
|---|---|
| SRT | Plaintiff San Rocco Therapeutics, LLC |
| bluebird | Defendant bluebird bio, Inc. |
| Third Rock | Defendant Third Rock Ventures, LLC |
| 2seventy | Defendant 2seventy bio, Inc. |
| Sloan Kettering | Non-parties Memorial Sloan Kettering Cancer Center and Sloan-Kettering Institute for Cancer Research |
| **BRIEF REFERENCES** | |
| Ex. ___ | Exhibits submitted with the Declaration of Jeffrey S. Robbins in Support of Defendants' Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6), filed herewith |
| Am. Compl. ¶ ___ | Amended Complaint filed on August 7, 2023 by SRT in the instant case (D.I. 42) |
| **RELATED LITIGATIONS** | |
| the Delaware Litigation | *San Rocco Therapeutics, LLC v. bluebird bio, Inc. and Third Rock Ventures, LLC*, D. Del. Case No. 1:21-cv-01478-RGA |
| the New York Litigation | *Errant Gene Therapeutics v. Sloan-Kettering Institute for Cancer Research, et al.*, New York Supreme Court Case No. 150856/2017 |
| the Massachusetts Litigation | *Errant Gene Therapeutics v. Third Rock Ventures, LLC, et al.*, Mass. Superior Court Case No. 1984CV01832-BLS1 |
| **RELEVANT AGREEMENTS** | |
| the 2005 Agreement | License Agreement between SRT and Sloan Kettering, dated March 7, 2005 |
| the 2011 Agreement | Agreement between SRT and Sloan Kettering, dated June 17, 2011 |
| the 2020 Settlement Agreement | Confidential Settlement Agreement among SRT, its founder Patrick Girondi, Sloan Kettering, and bluebird, dated November 2, 2020 |
| **OTHER** | |
| PTAB | The United States Patent and Trademark Office's Patent Trial and Appeal Board |
| the '179 patent | U.S. Patent No. 7,541,179 |
| the '061 patent | U.S. Patent No. 8,058,061 |

# I. INTRODUCTION

The 14-count Amended Complaint is the latest salvo from serial litigator San Rocco Therapeutics, LLC ("SRT") in a decade-long feud with bluebird bio, Inc. ("bluebird") and Third Rock Ventures, LLC ("Third Rock"). SRT previously sued both defendants in New York and Massachusetts state courts alleging the same "conspiracy" at issue here. Those cases settled in November 2020. One year later, SRT sued them again, this time in Delaware federal court alleging patent infringement. That led to an arbitration and a proceeding before the Patent and Trademark Office's Patent Trial and Appeal Board ("PTAB"). SRT next filed this action, repackaging its "conspiracy" allegations as RICO violations, fraudulent inducement, and unfair competition. Facing a motion to dismiss, SRT amended its complaint, added a new defendant, and piled on eight antitrust counts. The Court should now dismiss all counts with prejudice.

***First***, the RICO counts are time-barred, implausible, and inadequately pled. ***Second***, the federal antitrust counts fail to allege antitrust injury, and rely on conduct that is released, time-barred, and legally protected. ***Third***, the fraudulent inducement count fails Rule 9(b), fails to allege a misrepresentation of present fact or duty of disclosure, and is barred by disclaimers and ratification. ***Fourth***, the Chapter 93A count merely reiterates the same flawed allegations and lacks the requisite connection to the Commonwealth. ***Fifth***, the Massachusetts antitrust counts likewise add nothing new, lack jurisdiction, and rely on exempted conduct. ***Sixth***, there is no reason for the individual defendants and 2seventy bio, Inc. to have been included in this lawsuit.

In short, this is not a legitimate commercial dispute. It is a misuse of the judicial system in pursuit of a personal vendetta.[1]

---

[1] *See e.g.* https://medium.com/authority-magazine/author-patrick-girondi-on-becoming-free-from-the-fear-of-failure-54b6112801a1 (SRT's founder, Patrick Girondi: "The hardest thing for me to deal with is that I was outsmarted by Bluebird Bio and Third Rock Ventures. . . . I know that if I wanted to eliminate them, hunt them down and take their lives, I could easily do so. It's not arrogance. 90% of murders in the US are never solved.").

## II. FACTUAL BACKGROUND

### A. The Parties

Plaintiff SRT is a private company that purports to be a competitor of bluebird in the development of gene therapies to treat blood disorders. It holds a license to two patents obtained via settlement—one that already expired and one set to expire next year. It has no approved products and purports to operate out of the Tampa home of its founder, Girondi. (*See* Am. Compl. ¶¶ 31, 52, 215; *https://floridaparcels.com/property/39/182912ZZZ000005864400A*.)

Defendant bluebird is a publicly owned biotechnology company founded in 1992, and based in Somerville, Massachusetts. It has successfully developed two FDA-approved therapies: Zynteglo® for the treatment of beta-thalassemia, and Skysona® for the treatment of cerebral adrenoleukodystrophy. Defendant Third Rock Ventures is a venture capital firm in Boston, Massachusetts, and past bluebird shareholder. Defendant 2seventy bio, Inc. ("2seventy") is a biopharmaceutical company based in Cambridge, Massachusetts. It was formed in late 2021 as a bluebird spin-off focusing on oncology. Defendants Leschly, Finer, and Reilly are former officers of bluebird. Leschly left bluebird in 2021, Finer left in 2015, and Reilly left in 2011. Defendant Thompson—the new party added in the Amended Complaint—is the former President of Memorial Sloan Kettering Cancer Center, and represented by separate counsel. (*See* Am. Compl. ¶¶ 32-38, 233, Ex. P.)

### B. The Dispute's Origin

For the past decade, SRT has been accusing bluebird, Third Rock, and non-parties Sloan Kettering Institute for Cancer Research and Memorial Sloan Kettering Cancer Center (collectively, "Sloan Kettering") of conspiring against SRT to sabotage its gene therapy development efforts. The origin of this feud dates to 2005, when SRT entered an agreement with Sloan Kettering that provided SRT a license to use two Sloan Kettering patents ("the 2005

Agreement"). The two patents are U.S. Patent Nos. 7,541,179 ("the '179 patent") and 8,058,061 ("the '061 patent"). They cover a Sloan Kettering vector known as "TNS9" that had once been studied for possible use in gene therapy. SRT failed to develop a commercial product using the technology disclosed in these patents. Thus, on June 17, 2011, Sloan Kettering terminated SRT's license pursuant to a new agreement ("the 2011 Agreement"). (*Id.* ¶¶ 6-7, 65.)

Five months later, on November 21, 2011, Sloan Kettering and bluebird entered into an agreement that granted bluebird the option to obtain a license to use the '179 and '061 patents. Ultimately, bluebird chose not to exercise this option. Instead, bluebird continued to develop its own vector known as "BB305" for use in treating beta thalassemia. This is the vector bluebird uses in Zynteglo®, which the FDA approved in 2022. (*Id.* ¶¶ 127, 142, 223.)

**C. The Prior Litigations**

SRT began its litigation crusade in 2015. First, SRT sued Sloan Kettering in the Southern District of New York, alleging fraud and breach of contract. (*See* Ex. 1.)[2] The Court sanctioned SRT for discovery violations and later dismissed the case. (*See* Ex. 2.) In 2016, SRT sued bluebird in Illinois state court, alleging fraud and breach of contract. (*See* Ex. 3.) A month later, SRT voluntarily dismissed that case. (*See* Ex. 4.) In 2017, SRT sued both Sloan Kettering and bluebird in New York state court, alleging fraud, breach of contract, civil conspiracy, unfair competition, injunctive relief, and unjust enrichment ("the New York Litigation"). (*See* Ex. 5.) Then in 2019, while the New York Litigation was pending, SRT expanded its targets by suing Third Rock and Leschly in Massachusetts state court, alleging misappropriation of trade secrets,

---

[2] The Court may consider SRT's filings in prior litigations, and the settlement agreement discussed below, because they are referenced in and central to SRT's pleading, and the authenticity of these documents is not in dispute. *See e.g. Watterson v. Page*, 987 F.2d 1, 3 (1st Cir. 1993); *see also Douglas v. Hirshon*, 63 F.4th 49, 57 (1st Cir. 2023); *Aleshire v. Wells Fargo Home Mortg., Inc.*, No. 10-12066-RWZ, 2011 WL 4595250, at *1 (D. Mass. Sept. 30, 2011).

tortious interference, violations of Mass. Gen. ch. 93, civil conspiracy, unjust enrichment, and violations of Mass. Gen. ch. 93A ("the Massachusetts Litigation"). (*See* Ex. 6.)

The central dispute in both the New York and Massachusetts Litigations was the same as this one: a purported fraudulent conspiracy to steal SRT's trade secrets, sabotage the development of the TNS9 vector, and eliminate the competition for bluebird's BB305 vector. (*See e.g.* Am. Compl. ¶ 348 (alleging Defendants "conspired to take and use SRT's technology," to "sabotage SRT's efforts" relating to TNS9, and "shut down SRT as a competitor of bluebird"); Ex. 5, ¶ 253 (Second Am. Compl. in the New York Litigation) (alleging defendants "conspired" to "take possession of [SRT's] technology" relating to TNS9, to "sabotage all the efforts" of SRT, and "eliminate Bluebird's competition"); Ex. 6, ¶¶ 56, 108 (Am. Compl. in the Massachusetts Litigation) (alleging defendants "engaged in a conspiracy" to steal SRT's "trade secrets" relating to TNS9, and "remove [SRT] from competition").)

**D. The 2020 Settlement Agreement**

Trial in the New York Litigation began on October 29, 2020. After two days of testimony the parties agreed to settle all their disputes, as documented in a settlement agreement executed on November 2, 2020 ("the 2020 Settlement Agreement"). (Ex. 7; *see also* Am. Compl. ¶ 15.) The parties to the 2020 Settlement Agreement were SRT, Girondi, Sloan Kettering, and bluebird. They agreed that New York law governs the 2020 Settlement Agreement and all disputes relating to it. (Ex. 7, § 6; *see also* Am. Compl. ¶ 352.)

Under the 2020 Settlement Agreement, Sloan Kettering agreed to give SRT "an exclusive, royalty-free commercial license" to the '179 and '061 patents. (Ex. 7, § 2.) The parties also exchanged general releases covering "all claims" "relate[d] to or arising out of" the "2005 Agreement, the 2011 Agreement, or the New York and Massachusetts Litigations," and "all claims" the parties "may have, ever had or now has . . . for upon or by reason of any cause or

thing, from the beginning of the world to the Parties' execution" of the 2020 Settlement Agreement. (*Id.* § 5; *see also* Am. Compl. ¶ 15.) SRT agreed that such releases would cover bluebird and Sloan Kettering as well as their "past and present . . . shareholders . . . officers . . . predecessors [and] successors." (Ex. 7, § 5.)

No provision in the 2020 Settlement Agreement states that bluebird would shut down the development of its flagship product Zynteglo®, which uses the BB305 vector. Nor is there any allegation in the Amended Complaint that anyone discussed this before settlement. Nor can there be. The 2020 Settlement Agreement contains an integration clause that "supersedes and cancels" any pre-settlement representations (*id.* § 10), and a mutual "Representation" by all parties that they are "not relying on any promise, understanding, or representation of any other party, except as set forth herein." (*Id.* § 8.) Moreover, in a sworn affidavit issued in the New York Litigation, SRT's founder Girondi stated that he did not wish to seek to enjoin bluebird's BB305 development because it is "very close to approval" and he "could not in good conscience pursue any action that could delay or withhold treatment of a single patient of Bluebird." (Ex. 8.) The final sentence of the 2020 Settlement Agreement reiterates this sentiment: "The parties have reached a mutually agreeable resolution in the best interests of the patients." (Ex. 7, § 11.)

**E. SRT's Renewed Litigation Campaign**

Almost a year after the settlement, on October 5, 2021, SRT sued Sloan Kettering again—this time in New York federal court, seeking declaratory relief relating to the '179 and '061 patents, and alleging unfair competition. (*See* Ex. 9.) That case is ongoing. Two weeks later, on October 21, 2021, SRT sued bluebird in Delaware federal court (and subsequently added Third Rock as a defendant), alleging that bluebird's BB305 vector infringes the '179 and '061 patents ("the Delaware Litigation"). (*See* Ex. 10.)

The Delaware Litigation, which also is ongoing, led to a court-ordered arbitration in New York on various threshold issues relating to SRT's patent rights and the scope of the mutual general release provisions in the 2020 Settlement Agreement. SRT initiated the arbitration in August 2022. On October 18, 2022, bluebird filed IPR petitions with the PTAB, seeking to invalidate the two patents SRT accuses it of infringing. (Am. Compl. ¶ 243.) The PTAB instituted the IPR proceedings on April 24, 2023. Three days later, SRT filed its original Complaint in this action against all Defendants except Thompson, alleging RICO violations, fraudulent inducement, and unfair competition.

On July 7, 2023, the original defendants moved to dismiss. In response, SRT filed the Amended Complaint on August 7, 2023, reasserting all its prior claims, adding eight new antitrust counts, and adding Thompson as a Defendant. The gist of the action remains the same: Defendants allegedly conspired to misappropriate SRT's trade secrets and "sabotage" its development of the TNS9 vector with the supposed goal of "eliminate[ing] bluebird's competition." (Am. Compl. ¶¶ 19, 87, 114, 154-55.)

## III. <u>ARGUMENT</u>

A complaint must set forth "more than labels and conclusions," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007), and contain "factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory." *Gagliardi v. Sullivan*, 513 F.3d 301, 305 (1st Cir. 2008) (quotation marks and citations omitted). The facts alleged, taken together, must "state a claim to relief that is plausible on its face." *A.G. ex rel. Maddox v. Elsevier, Inc.*, 732 F.3d 77, 80 (1st Cir. 2013) (quoting *Twombly*, 550 U.S. at 570). When assessing the sufficiency of a complaint, the Court first "separate[s] the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited)." *Id.* Next, the Court "determine[s] whether the

remaining factual content allows a 'reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.* (quoting *Morales-Cruz v. Univ. of P.R.*, 676 F.3d 220, 224 (1st Cir. 2012). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the Court should grant dismissal. *Ashcroft v. Iqbal,* 556 U.S. 662, 679 (2009); *see also* Fed. R. Civ. P. 12(b)(6).

The Court should dismiss the Amended Complaint because, as demonstrated below, SRT has failed to allege any plausible claims. Dismissal should be with prejudice because SRT has now repeatedly failed to cure deficiencies, and further amendments would be futile. *See United States ex rel. Gagne v. City of Worcester*, 565 F.3d 40, 48 (1st Cir. 2009) (reasons for dismissing with prejudice and denying leave to amend include "bad faith or dilatory motive, repeated failure to cure deficiencies, undue prejudice to the opposing party, and futility of amendment").[3]

## A. THE RICO COUNTS (COUNTS I-IV) FAIL

Plaintiff alleges four counts of RICO violations: Count I - RICO 1962(c); Count II - RICO 1962(a); Count III - RICO 1962(b); and Count IV - RICO 1962(d). (*See* Am. Compl. ¶¶ 330-434.) The Court should dismiss them all because they: (1) are time-barred; (2) are implausible and insufficiently particularized; (3) fail to allege a racketeering pattern; (4) fail to allege cognizable RICO injuries; and (5) fail to allege various other required elements.

### 1. The RICO Counts Are Time-Barred

A four-year statute of limitations governs civil RICO claims. *Agency Holding Corp. v. Malley-Duff & Assocs., Inc.,* 483 U.S. 143, 156 (1987). A RICO cause of action accrues for statute of limitations purposes when the plaintiff discovers, or reasonably should have

[3] Additionally, if the Court dismisses the federal RICO and antitrust counts, it should also dismiss the fraudulent inducement, unfair competition, and state law antitrust counts pursuant to 28 U.S.C. § 1367(c) because they are state law claims that SRT solely brought under the Court's supplemental jurisdiction. (*See* Am. Compl. ¶¶ 41-43.)

discovered, its injury. *See Álvarez-Maurás v. Banco Popular of P.R.*, 919 F.3d 617, 625-28 (1st Cir. 2019) (claims accrued when plaintiff "knew of his injury, at the very latest, by the time he filed his [arbitration] claim" even though he did not yet know the "methods" used to injure him); *Lares Grp., II v. Tobin*, 221 F.3d 41, 43-44 (1st Cir. 2000). Accrual occurs even "before the plaintiff knows of a *pattern* of injurious practice," so a plaintiff that discovers it has been injured must uncover and allege the RICO pattern within four years or lose its cause of action. *Lawson v. FMR LLC*, 554 F. Supp. 3d 186, 194 (D. Mass. 2021) (citations omitted).

Here, the alleged RICO violations accrued no later than 2017, six years ago, when SRT filed the New York Litigation alleging a fraudulent conspiracy to "take possession of [SRT's] technology," "sabotage all the efforts" of SRT, and "eliminate Bluebird's competition." (Ex. 5, ¶ 253 (Second Am. Compl. in New York Litigation).) This is the same conspiracy alleged here. (*See e.g.* Am. Compl. ¶¶ 19, 87.) More than 100 allegations in the Amended Complaint repeat the allegations from the New York Litigation, based on events from 2010 to 2017. (*See id.* ¶¶ 78-207.) SRT attempts to salvage its time-barred RICO claims by alleging various post-settlement acts, but those all relate to the same alleged RICO enterprise causing the same alleged RICO injury—the supposed loss of SRT's competitive advantage resulting from the theft and continued use of its intellectual property and alleged "sabotage." (*Compare* Am. Compl. ¶¶ 87, 114, 154-55, 182 *with id.* ¶¶ 293, 300, 307, 348, 361, 381-82, 388, 422 (alleging the same "sabotage" and misappropriation of trade secrets in pre- and post-statute of limitations periods as the cause of the purported competitive injury).)

"New" predicate acts do not reset the clock absent a new RICO injury. *Lawson*, 554 F. Supp. 3d at 194 (quoting *Klehr v. A.O. Smith Corp.*, 521 U.S. 179, 190 (1997)) ("[A] new predicate act . . . cannot be used as a 'bootstrap to recover for injuries caused by other earlier

predicate acts that took place outside the limitations period.'"). A new RICO claim may accrue only if a "new and independent injury" arises from the same activity, but "[a]n injury is not independent of the alleged underlying RICO violation where it is caused in material part by the original fraud." *Nelson v. Countrywide Home Loans, Inc.*, No. 3:18-CV-02081 (SRU), 2019 WL 4762086, at *4 (D. Conn. Sept. 30, 2019). Pleading summarily that the RICO counts arose from post-settlement conduct is insufficient to establish a new RICO injury. (*See* Am. Compl. ¶ 340.) Thus, the Court should dismiss the RICO counts as time-barred.

**2. The Allegations Are Implausible and Insufficiently Pled**

Separate from this improper bootstrapping, the post-settlement conduct that SRT alleges to be "predicates" to its RICO counts fail both the *Iqbal/Twombly* plausibility standard and the Fed. R. Civ. P. 9(b) particularity standard. *Iqbal/Twombly* requires dismissal of all claims when the allegations do not "permit the court to infer more than the mere possibility of misconduct." *Iqbal*, 556 U.S. at 679, 680 (quoting *Twombly*, 550 U.S. at 570). Rule 9(b), which requires that fraud be pled with particularity, is applicable because SRT contends that its RICO predicates constitute mail and wire fraud. *See Giuliano v. Fulton*, 399 F.3d 381, 388 (1st Cir. 2005) (internal quotations omitted); *N. Am. Catholic Educ. Programming Found., Inc. v. Cardinale*, 567 F.3d. 8, 13 (1st Cir. 2009) (plaintiff must identify "the basis for inferring scienter," in addition to "specifying the false statements and by whom they were made"). SRT identifies five categories of misconduct, but each fails these standards as demonstrated below.

***a. The Alleged 2020 Settlement Agreement "Fraud"***

According to SRT, Defendants committed the RICO predicate of mail and wire fraud by "transmitting a settlement payment" *to SRT*, after fraudulently inducing SRT to agree to the 2020 Settlement Agreement by failing to disclose that certain Defendants had entered a "secret side-agreement," in which they allegedly agreed to later argue in future potential litigation that the

release provisions "excuse[d]" bluebird's BB305 vector from patent infringement. (Am. Compl. ¶¶ 247, 337(i).) Aside from being tortured and implausible on its face, a later disagreement about a contractual term, *i.e.* whether the release provisions in the 2020 Settlement Agreement barred SRT's infringement claims, cannot constitute a "scheme to defraud" as required to establish a RICO predicate of mail or wire fraud. *In re Lupron Mktg. & Sales Practices Litig.*, 295 F. Supp. 2d 148, 165 (D. Mass. 2003) (citing *Neder v. United States,* 527 U.S. 1, 20 (1999)) (mail and wire fraud requires "proof that (1) defendants knowingly devised or participated in a scheme to defraud, (2) to obtain money or property by means of false or fraudulent pretenses, representations and promises, and (3) that the mails or interstate wire facilities were used in carrying out the scheme").

Moreover, to sustain an act of mail or wire fraud based on non-disclosure, as SRT attempts, a plaintiff must allege "a legal, professional or contractual duty" of disclosure. *Sanchez v. Triple-S Mgmt., Corp.*, 492 F.3d 1, 10 (1st Cir. 2007) (lack of evidence to support duty to disclose supports grant of summary judgment). Here, SRT provides none. SRT also fails to plead the existence of the alleged "secret side agreement" with any particularity. Outside of referencing that it occurred "during settlement negotiations" (Am. Compl. ¶¶ 254, 260), none of SRT's fraud allegations specify the "time, place or content of these alleged misrepresentations," as required to meet the pleading standard. *Giuliano*, 399 F.3d at 389. Further, to the extent SRT is attempting to prove the existence of a fraud based on litigation positions bluebird has taken, that too fails. Legal positions are not "material falsehoods that would support wire fraud." *Lu v. Menino*, 98 F. Supp. 3d 85, 98-99 (D. Mass. 2015).

***b. The Alleged Litigation Activity "Fraud"***

Approximately one year after entering the 2020 Settlement Agreement, SRT initiated the Delaware Litigation accusing bluebird and Third Rock of patent infringement. The Delaware

court compelled arbitration on threshold issues, and SRT initiated the arbitration as Claimant on August 30, 2022. (Am. Compl. ¶¶ 236-238.) On October 18, 2022, bluebird initiated a PTAB proceeding in accordance with its congressionally-mandated right to contest the validity of the two patents SRT accused it of infringing. (*Id.* ¶ 243.) SRT now contends that this litigation activity—including the submission of IPR petitions to PTAB, and the submission of documents and administrative payments in the arbitration—constitutes mail and wire fraud. (*Id.* ¶¶ 238, 243, 366(vii), (ix), (x).) These allegations are implausible and contrary to settled precedent.

As this Court has held, "routine litigation activities" are insufficient to establish a fraud predicate to a RICO claim. *Langan v. Smith*, 312 F. Supp. 3d 201, 207 (D. Mass. 2018) (dismissing RICO claims). This "is particularly true in the context of communications relating to litigation where parties frequently take differing positions as to the facts in a context that provides an opportunity to present opposing positions." *Capone v. City of Columbia*, No. 19-2490-CMC-PJG, 2020 WL 633739, at *4 (D.S.C. Feb. 11, 2020) (dismissing RICO claim based on alleged false communications made during litigation). The litigation privilege prevents SRT from relying on communications made in litigation to support its claims. *See Day v. Johns Hopkins Health Sys. Corp.*, 907 F.3d 766, 777-78 (4th Cir. 2018) ("Witness Litigation Privilege" bars RICO predicate acts of fraud).

***c. The Alleged No-Orphan-Drug-Designation Checkmark "Fraud"***

In the Amended Complaint, SRT added Thompson as a Defendant and added allegations that he "directed and caused" non-party Sloan Kettering to checkmark "No" on five Investigational New Drug Application forms (Form 1571) it submitted to the FDA between December 1, 2021 and May 12, 2023, indicating that no orphan drug designation had been

granted to the TNS9 vector.[4] (Am. Compl. ¶¶ 300-318, 366(iv)-(vi), (viii), (xi).) According to SRT, Thompson did so allegedly to "delay" the approval of SRT's gene therapy, as part of a RICO mail and wire fraud conspiracy with the other Defendants. (*Id.*) SRT fails, however, to allege how any Defendants were involved in such FDA submissions by non-party Sloan Kettering. None signed the Form 1571s, and there are no plausible allegations that any were even aware of them—or the checkmarks at issue—before SRT filed the Amended Complaint.

SRT also has not plausibly pled how these checkmarks could have been part of any scheme to defraud *SRT*, as opposed to the recipient of the forms—the FDA. Activity cannot amount to a private claim of mail and wire fraud where the "effective reach of the deception stopped" at a third-party regulatory body, rather than the plaintiff. *McEvoy Travel Bur. v. Heritage Travel, Inc.*, 904 F.2d 786, 794 (1st Cir. 1990) (rejecting an attempt to convert a "deceptive scheme" against a regulatory agency into a fraud on the plaintiff).

SRT also fails to allege facts to support the existence of a material, intentional misrepresentation in these Form 1571s—and it cannot do so. "Orphan drug designation is a separate process from seeking approval" of a drug through an IND. *See Designating an Orphan Product: Drugs and Biological Products*, FDA, https://www.fda.gov/industry/medical-products-rare-diseases-and-conditions/designating-orphan-product-drugs-and-biological-products (last accessed September 12, 2023) (Ex. 11). Orphan drug status grants exclusivity and financial incentives to the holder of the designation, not permission to market a product. *See Medical Products for Rare Diseases and Conditions*, FDA, https://www.fda.gov/industry/medical-

[4] SRT characterizes these alleged predicates as violations of 18 U.S.C. § 1001 (*see* Am. Compl. ¶ 372), but § 1001 violations are not included in the RICO statute, and therefore irrelevant to establishing the existence of a RICO pattern. *See* 18 U.S.C.§ 1961(1); *Andrews v. Am. Nat'l Red Cross*, 176 F. Supp. 2d 673, 685, n.15 (W.D. Tex. 2001).

products-rare-diseases-and-conditions (last accessed September 12, 2023) (Ex. 12). By contrast, parties submit IND forms such as the ones at issue (Form 1571) pursuant to 21 C.F.R. Part 312 to seek FDA approval. Thus, there is no plausible connection between the allegedly improperly check-marked boxes and any alleged conspiracy to delay approval of SRT's product.

Regardless, the judicially noticeable instructions to Form 1571 demonstrate that Sloan Kettering properly check-marked "No." The instructions to Form 1571 state: "If the *sponsor for the submission* is the holder of the Orphan Designation Number, select 'Yes' and provide the six-digit Orphan Designation Number in the appropriate field; if not, select 'No.'" Instructions to FDA Form 1571, FDA, https://www.fda.gov/media/77596/download (last accessed September 12, 2023) (Ex. 13) (emphasis added). Here, Sloan Kettering was the "sponsor" of the submissions at issue (*see* Am. Compl. Exs. I-M), but not the "holder of the Orphan Designation," because it had transferred that designation to SRT on January 12, 2021, nearly a year before any of the Form 1571 filings at issue were submitted. (*See* Am. Compl. ¶ 303, Ex. H.)

***d. The Alleged 2seventy Spinoff "Fraud"***

SRT alleges that bluebird fraudulently spun-off 2seventy to protect its assets from theoretical future liability to SRT (*id.* ¶ 366(ii)-(iii)), but any alleged fraudulent aspect of this spinoff is entirely contingent on SRT separately establishing an underlying fraud. That is, SRT would need to establish that Defendants anticipated a future liability to SRT and conspired to avoid that liability by rendering bluebird judgment proof. SRT has not done so and cannot do so, especially since the 2seventy spin-off was announced on January 11, 2021 (*see* Am. Compl. ¶ 263), nine months *before* SRT even accused bluebird of patent infringement in the Delaware Action. (*See* Am. Compl. ¶¶ 226, 263.) The spin-off of 2seventy itself does not somehow establish a fraud, and merely labeling it "fraudulent" is not sufficient. Mail and wire fraud claims require allegations of a scheme "calculated to deceive persons of ordinary prudence" used

"to deprive another of property." *See McEvoy Travel Bureau*, 904 F.2d at 791-92. Here, no such scheme has been alleged—and certainly none with sufficient factual particularity or plausibility.

Instead, SRT contends that Defendants "sublicense[d] the rights to the BB305 vector to 2seventy," so that 2seventy could one day in the future "market and sell the BB305 vector for the treatment of SCD and Beta Thalassemia patients," *i.e.*, non-oncology patients. (Am. Compl. ¶¶ 284-85.) This is all baseless speculation about 2seventy's future business plans, and SRT fails to allege any actual present harm caused by it. *See McEvoy Travel Bureau, Inc.*, 904 F.2d at 790 (RICO injury must be "caused" by the alleged RICO violations).

SRT also fails to allege how 2seventy's financial statements relating to its spinoff from bluebird were "intended to deceive" anyone. *See Traverse v. Gutierrez Co.*, No. 18-10175, 2021-DJC WL 3475723, at *16 (D. Mass. Aug. 6, 2021), *appeal dismissed*, Nos. 21-1703, 21-1754, 2022 WL 964095 (1st Cir. Jan. 5, 2022) (dismissing RICO claim because it lacked facts to show how financial statement communications were actually "intended to deceive another") (citing *McEvoy Travel Bureau*, 904 F.2d at 791); *see also United States v. Sawyer*, 85 F.3d 713, 732 (1st Cir. 1996). Moreover, SRT cannot rely on "any conduct that would have been actionable as securities fraud" as a predicate RICO act. *Lerner v. Colman*, 26 F.4th 71, 82 (1st Cir. 2022).

***e. The Conditionally Alleged Trade Secret "Theft"***

SRT also *conditionally* alleges that theft of trade secrets and transport of stolen property become predicate RICO acts, but only to the extent this Court finds that the release provisions in the 2020 Settlement Agreement are "voidable" based on SRT's fraudulent inducement claim. (Am. Compl. ¶ 338.) As demonstrated below, the fraudulent inducement claim fails. *See infra* III(C). But even if it did not, SRT's allegations do not specifically or plausibly assert trade secret misappropriation as a predicate act sufficient to meet *Twombly*.

The only trade secret theft alleged in any form concerns conduct from 2010 to 2012 (*see* Am. Compl. ¶¶ 115, 124, 134, 155), which was at the heart of the New York and Massachusetts Litigations (*see* Ex. 5, ¶ 253; Ex. 6, ¶¶ 56, 108). SRT merely alludes to these allegations in its RICO counts but does not specifically plead them as RICO predicate acts, likely because it recognizes SRT settled and released them. (*See infra* III(B)(2).) In any event, these allegations are time-barred by the four-year RICO statute of limitations (*see supra* III(A)(1)), and cannot serve as RICO predicates as a matter of law because they predate the statutory enactment of the Defend Trade Secrets Act ("DTSA"). *See Zirvi v. Flatley*, 433 F. Supp. 3d 448, 463-64 (S.D.N.Y. 2020), *aff'd*, 838 F. App'x 582 (2d Cir. 2020) (trade secret misappropriation cannot serve as a RICO predicate unless it occurred after the May 11, 2016 enactment of the DTSA).

Further, SRT's vague reference to Defendants' alleged post-settlement "continued use" of SRT's allegedly stolen trade secrets (*see* Am. Compl. ¶ 382) is unavailing because such "use" cannot support a RICO claim. *CrossBorder Sols., Inc. v. Macias, Gini & O'Connell, LLP*, No. 20 Civ. 4877 (NSR), 2022 WL 562934, at *10 (S.D.N.Y. February 23, 2022) ("use" of a stolen trade secret "cannot constitute a predicate act under RICO because it is not an indictable criminal offense such that it falls under the definition of 'racketeering activity"); *ESPOT, Inc. v. MyVue Media, LLC*, 492 F. Supp. 3d 672, 695 (E.D. Tex. 2020) (plaintiff "cannot rely on allegations that [defendants] are using its trade secrets, and will continue to do so" to support RICO claim).

**3. SRT Fails to Establish a Racketeering Pattern**

SRT fails to allege a pattern of at least two sufficiently related RICO predicate acts that satisfy the RICO requirement of "continuity" in either open- or closed-ended form. *See H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 242 (1989); *United States v. Stepanets*, 989 F.3d 88, 108 (1st Cir. 2021). A plaintiff may show open-ended continuity by demonstrating "past conduct that by its nature projects into the future with a threat of repetition." *H.J. Inc.*, 492 U.S. at 241. A

plaintiff may establish close-ended continuity "by proving a series of related predicates extending over a substantial period of time." *Id.* at 242; *Stepanets*, 989 F.3d at 107-108. Here, SRT has done neither.

Nothing about the nature of the alleged predicate acts projects into the future with a threat of repetition. Instead, SRT alleges racketeering activity focused on the discrete objective to "obtain FDA approval for the BB305 Vector with market exclusivity status ahead of SRT," and "shield associated assets" from SRT. (Am. Compl. ¶ 339.) But 2seventy was spun-off in 2021, and bluebird's gene therapy using the BB305 vector was approved in 2022. (*Id.* ¶¶ 28, 385.) Thus, Defendants already achieved their alleged racketeering objective against SRT, precluding open-ended continuity. *See e.g. Giuliano v. Fulton,* 399 F.3d 381, 390-91 (1st Cir. 2005) (no open-ended continuity where racketeering objective had "one" victim and was "achieved").

SRT also fails to support a pattern of more than two years sufficient to establish close-ended continuity. *See e.g. Ferrer v. Int'l Longshoremen's Ass'n (ILA) AFL-CIO,* No. 08-1505 (JP), 2009 WL 1361953, at *7 (D.P.R. May 11, 2009) (an alleged "period of racketeering activity of less than two years does not satisfy the closed-ended continuity requirements") (citing *Efron v. Embassy Suites (P.R.), Inc.*, 223 F.3d 12, 20 (1st Cir. 2000)). Of the eleven predicate acts alleged, all but one occurred within the 19-month period from October 2021 to May 2023. (*See* Am. Compl. ¶¶ 268-69, 366.) The only alleged outlier is a November 2020 settlement payment *to SRT,* which benefited SRT, and cannot plausibly constitute a RICO predicate.

Moreover, even if a party can meet the continuity requirement, the predicate acts must "have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise [be] interrelated by distinguishing characteristics and are not isolated events." *H.J. Inc.*, 492 U.S. at 240. Here, the alleged predicate acts encompass a series of disparate and

unrelated acts that lack sufficient relatedness to any plausible overarching scheme: a settlement resolving SRT's own claims, defensive litigation in response to SRT's own post-settlement allegations, routine FDA filings by a non-party, and a commercial divestiture of a business that does not even compete with SRT. "'[W]here the enterprise in question is not primarily in the business of racketeering,' overlapping participants, without more, are insufficient to show horizontal relatedness." *Halvorssen v. Simpson*, No. 18-2683, 2019 WL 4023561, at *5 (E.D.N.Y. Aug. 26, 2019), *aff'd*, 807 F. App'x 26 (2d Cir. 2020) (citation omitted).

**4. SRT Fails to Allege Cognizable RICO Injuries**

To bring a RICO claim, a plaintiff must plead "concrete financial loss" to "business or property." *Lawson*, 554 F. Supp. 3d at 196. The racketeering activity must be the factual and proximate cause of the RICO injury. *See Lemelson v. Wang Lab'ys, Inc.*, 874 F. Supp. 430, 433 (D. Mass. 1994) (citing *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496-497 (1985)). Here, SRT alleges only in conclusory fashion it "has been injured in its business and property" because bluebird was able to launch its treatment first. (*See* Am. Compl. ¶¶ 381-82.)[5] SRT provides no plausible support for this contention, and ignores that it has never launched anything.

SRT alleges that Defendants "derailed legal proceedings through fraudulent inducement" (*see id.* ¶ 382), but the proceedings were settled, not derailed. Moreover, under the 2020 Settlement Agreement, SRT received both a payment and patent rights. (*Id.* ¶¶ 215, 337(i).) Where "an alleged RICO violation induces a plaintiff to enter into a contract on which the plaintiff does not lose money, the plaintiff has suffered no injury and, therefore, lacks standing to bring a RICO claim." *Line v. Astro Mfg. Co.*, 993 F. Supp. 1033, 1037 (E.D. Ky. 1998).

[5] SRT characterizes its alleged RICO injury as four separate types of injury, but all relate to the advantage supposedly gained by bluebird's treatment receiving approval and going to market before SRT's treatment.

SRT alleges injury caused by Defendants allegedly "violating SRT's intellectual property," which appears to be a vague reference to its patent infringement claims in the Delaware Litigation. (Am. Compl. ¶ 382.) This is not a cognizable RICO injury because "patent infringement is not a recognized predicate 'racketeering activity' for a RICO claim." *Arunachalam v. IBM*, 759 Fed. Appx. 927, 931 (Fed. Cir. 2019).

RICO Count II, alleged under 18 USC § 1962(a), also fails because SRT does not allege an investment injury distinct from any injury resulting from the alleged pattern of racketeering activity. "In the First Circuit, the 'investment use rule' requires plaintiffs asserting a § 1962(a) cause of action to allege a specific injury flowing from the investment and use of racketeering proceeds." *Cavallaro v. UMass Mem'l Health Care, Inc.*, No. 09-40152-FDS, 2010 WL 3609535, at *5 (D. Mass. July 2, 2010) (citing *Compagnie De Reassurance D'Ile de France v. New England Reinsurance Corp*., 57 F.3d 56, 91-92 (1st Cir. 1995) (plaintiffs suing under § 1962(a) must "prove that they were harmed by reason of [defendant]'s use or investment of income derived from a pattern of racketeering activity in some enterprise")). The law requires a distinct injury to sustain a separate 1962(a) count, but SRT alleges the same injury from Count I, and even then only in speculative fashion. (*Compare* Am. Compl. ¶ 383 (as to Count I, alleging Defendants' "investments" injured SRT by protecting them from speculative future "monetary judgments") *with id*. ¶ 400 (as to Count II, alleging same injury as Count I verbatim).)

RICO Count III, alleged under 18 USC § 1962(b), similarly fails. The Amended Complaint alleges verbatim the same injury as RICO Counts I and II, and does not allege how any "benefit from the infusion of income" 2seventy gained as part of its creation injures SRT, or how it contributes to Defendants' alleged "racketeering activities." (Am. Compl. ¶ 416.) This failure requires dismissal. *See Compagnie De Reassurance D'Ile de France*, 57 F.3d at 91-92.

**5. Additional Pleading Failures**

RICO Count II, alleged under 18 U.S.C. § 1962(a), separately fails because SRT does not sufficiently allege Defendants "invest[ed]" in an enterprise. 18 U.S.C. § 1962(a) (prohibiting use of racketeering income to "invest" in an enterprise). Only one of the alleged RICO predicates even indirectly relates to an enterprise investment, *i.e.*, the spinoff of 2seventy from bluebird. (Am. Compl. ¶ 391.) But bluebird did not invest in 2seventy; it spun it off. Similarly, RICO Count III, alleged under 18 U.S.C. § 1962(b), separately fails because SRT does not sufficiently allege Defendants "acquire[d]" an interest in an enterprise. 18 U.S.C. § 1962(b) (prohibiting racketeering activity to "acquire" an enterprise). SRT does not plausibly allege any such acquisition at all, other than in conclusory form. (*See* Am. Compl. ¶ 413.)

Finally, RICO Count IV separately fails because a RICO conspiracy under 18 U.S.C. § 1962(d) cannot be established where the pleadings do not state a substantive RICO claim. *Efron*, 223 F.3d at 21 ("if the pleadings do not state a substantive RICO claim upon which relief may be granted, then the [RICO] conspiracy claim also fails"); *see also Lerner*, 26 F.4th at 77 n.2; *Langan*, 312 F. Supp. 3d at 208-09 (dismissing RICO conspiracy claim for failure to allege viable substantive RICO violation). Moreover, "to prove a RICO conspiracy, a plaintiff must show . . . *that each defendant agreed to commit, or in fact committed, two or more predicate acts*." *Vázquez-Baldonado v. Domenech*, 847 F. Supp. 2d 281, 286 (D.P.R. 2012), *aff'd*, 595 F. App'x 5 (1st Cir. 2015) (emphasis added). Here, all SRT alleges is that "Defendants knew that their predicate acts were part of a pattern of racketeering activity and agreed to the commission of those acts to further the scheme" through "a pattern of mail and wire fraud, theft of trade secrets, and transport/receipt of stolen goods." (Am. Compl. ¶ 422.) This is a conclusory assertion and mere recitation of the claim elements insufficient to support a plausible inference of agreement by each Defendant to commit the predicate acts.

**B. THE FEDERAL ANTITRUST COUNTS (COUNTS V-X) FAIL**

SRT improperly reiterates all the same conduct discussed above as purported federal antitrust violations of monopolization, attempted monopolization, conspiracy, and collusion. (*See* Am. Compl. ¶¶ 435-544.) They are implausible and insufficiently pled for the same reasons discussed above and fail for three additional reasons. *First*, courts recognize that there is no antitrust injury—and thus no viable antitrust claim—when a plaintiff's allegation is, as SRT alleges here, that it should have a defendant's place in the relevant market. *Second*, any claim for purported antitrust violations based on Defendants' alleged "continued use" of allegedly previously stolen trade secrets is covered by the release in the 2020 Settlement Agreement and, in any event, now time-barred. Third, courts recognize that antitrust liability cannot arise, absent certain rare conditions not established here, from allegations that a defendant navigated regulatory processes better than a plaintiff did.

**1. SRT Fails to Allege an Antitrust Injury**

The federal antitrust "laws do not create a federal law of unfair competition or 'purport to afford remedies for all torts committed by or against persons engaged in interstate commerce.'" *Brooke Grp. Ltd. v. Brown & Williamson Tobacco Corp*., 509 U.S. 209, 225 (1993). Rather, the antitrust laws were passed for "the protection of competition, not competitors." *Brown Shoe Co. v. United States*, 370 U.S. 294, 320 (1962). Consequently, the Supreme Court has "created a comprehensive antitrust standing doctrine to determine which persons are entitled to bring suit under the federal antitrust statutes." *Serpa Corp. v. McWane, Inc*., 199 F.3d 6, 10 (1st Cir. 1999). This "doctrine of antitrust standing has significantly narrowed the number of persons entitled to bring suit." *RSA Media, Inc. v. AK Media Grp., Inc*., 260 F.3d 10, 13 (1st Cir. 2001).

To establish antitrust standing, an antitrust plaintiff "bears the burden of proving antitrust injury," including at the pleading stage. *Sterling Merch., Inc. v. Nestle, S.A*., 656 F.3d 112, 121

(1st Cir. 2011). "Antitrust injury is 'injury of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful.'" *Id.* (quoting *Brunswick Corp. v. Pueblo Bowl–O–Mat, Inc.*, 429 U.S. 477, 489 (1977)). That is to say, "[p]laintiffs must show not only that they were injured as a result of the defendant's actions and that those actions constituted an antitrust violation, but also that their injury is the type of injury the antitrust violation would cause *to competition*." *Sterling Merch.*, 656 F.3d at 121 (emphasis in original).

Because the antitrust laws require harm to competition, not just to a competitor, "[a] competitor may suffer injury even when there is no injury to competition or to consumers, and so lack standing." *Id.* As the Supreme Court emphatically put it, "[e]ven an act of pure malice by one business competitor against another does not, without more, state a claim under the federal antitrust laws." *Brooke Group*, 509 U.S. at 225. That is why courts look askance at antitrust claims premised upon "unfair" or "predatory" tactics such as business torts, and distinguish between such allegedly malicious acts and anticompetitive conduct. *Id.*

Courts applying this distinction—between harm to competition and harm to competitors—routinely recognize that there is no antitrust injury when a plaintiff's allegation is that it should have the defendant's place in the relevant market. In *Brunswick Corp. v. Riegel Textile Corp*, 752 F.2d 261, 267 (7th Cir. 1984), for example, the Seventh Circuit rejected an antitrust claim predicated on the allegation that the defendant had fraudulently obtained a patent by convincing the plaintiff to share its technology and then stealing it. The district court dismissed the claim and the Seventh Circuit affirmed. The antitrust laws, Judge Posner began, are concerned with "the protection of competition, not competitors." *Id.* at 266. The theft of intellectual property is of "no antitrust significance" when it "merely shifts a lawful monopoly into different hands." *Id.* "It is not a purpose of antitrust law to confer patents or to resolve

disputes between rival applicants for a patent" when the market would remain just as competitive before and after the alleged theft. *Id.* at 267.

Numerous other courts and leading treatises have reached the same conclusion that there is no injury when an antitrust plaintiff merely wants to substitute itself for the defendant in the marketplace. *See e.g. Columbia River Peoples Util. Dist. v. Portland Gen. Elec. Co.*, 217 F.3d 1187, 1190–91 (9th Cir. 2000) ("CRPUD seeks to use the antitrust provisions to replace PGE in the monopoly market that sells electric power to Boise Cascade. This it cannot do."); *Almeda Mall, Inc. v. Houston Lighting & Power Co*., 615 F.2d 343, 353 (5th Cir. 1980) (no antitrust injury because "mere 'substitution'" of one entity for another did not affect competition); *see also JetAway Aviation, LLC v. Bd. of County Comm'rs of County of Montrose, Colorado*, 754 F.3d 824, 840 (10th Cir. 2014) (Holmes, J., concurring in two judge-panel) ("[I]t is clear that a defeated monopolist cannot establish an antitrust injury simply by pointing to the victory of the 'substitute monopolist.'"); Herbert Hovenkamp, Federal Antitrust Policy 552–53 ("But if the plaintiff's only claim is of the nature 'I, rather than the defendant, was entitled to be the monopolist,' then the plaintiff is not a victim of antitrust injury.").

SRT's claims run head-on into this precedent. Again and again, SRT alleges that it suffered injury from Defendants' actions because bluebird replaced SRT as the *first* to have a gene therapy treatment in the relevant market. As SRT puts it, "but for Defendants' actions," SRT "would have received FDA approval sooner than currently expected with market exclusivity for lentiviral gene therapy treatments in Sickle Cell and Beta Thalassemia patients before bluebird," and "would have obtained FDA approval with Orphan drug designation ahead of bluebird." (Am. Compl. ¶¶ 320-21; *see also id.* ¶¶ 464 (same allegation in Count V), 488

(Count VI), 507 (Count VII), 514 (Count VIII), 520 (Count IX), 538 (Count X).) To the consumer, it is a "matter of indifference" who reached the market first. *Riegel*, 752 F.2d at 267.

### 2. SRT Improperly Relies on Released and Time-Barred Allegations

SRT recognizes that it has released any claims based on the alleged trade secret misappropriation that occurred from 2010 to 2012. Indeed, it contends that such allegations support its claims only "to the extent" the release provisions in the 2020 Settlement Agreement are "voidable." (Am. Compl. ¶¶ 338, 454.) SRT tries to get around this by alleging that Defendants have "continued" to "use" SRT's trade secrets after execution of the 2020 Settlement Agreement, and that such "continued use" constitutes anticompetitive conduct. (*Id.* ¶ 452.) SRT's vague reference to "continued use" of trade secrets does not salvage its claims.

The release provisions in the 2020 Settlement Agreement expressly cover "any and all claims," regardless of the cause of action that SRT "may have," that are "for upon or by reason of any cause or thing" that occurred pre-settlement. (Ex. 7, § 5.) "The phrase 'may have' is necessarily future-oriented," and thus bars claims based on any alleged tort relating to a pre-settlement act that continues post-settlement. *Augustine Med., Inc. v. Progressive Dynamics, Inc.*, 194 F.3d 1367, 1371 (Fed. Cir. 1999) (plaintiff's characterization of a patent infringement claim as a post-settlement "continuing tort" did not override settlement agreement that released claims plaintiff "may have" that relate to settled allegations).

A plaintiff cannot settle an allegation of trade secret theft on day 1, and then sue again on day 2 claiming "continued" use of the same allegedly stolen trade secret, without expressly reserving such rights. When parties agree to a general release, they must "expressly reserve . . . any rights that they wish to maintain beyond the date of the settlement of the agreement." *Tele-Cons, Inc. v. Feit Elec. Co.*, No. 03-11250-LTS, 2011 U.S. Dist. LEXIS 129820, at *6 (D. Mass. Nov. 9, 2011) (citing *Augustine Med., Inc.*, 194 F.3d 1367). SRT did not reserve any such rights,

despite knowing bluebird would continue to develop the BB305 vector post-settlement. Indeed, Girondi swore under oath in the New York Litigation that he knew bluebird's BB305 vector was "very close to approval" by the FDA, and that he "could not in good conscience pursue any action that could delay or withhold treatment of a single patient by [b]luebird." (Ex. 8.) And in the final sentence of the 2020 Settlement Agreement, Girondi agreed that the settlement was "in the best interests of the patients." (Ex. 7, § 11.) Any attempt by SRT to now re-litigate the very same trade secret theft claim it previously litigated, settled, and released—by reframing it as a "continued use" antitrust violation—must be rejected.

Even if SRT did not release its "continued use" allegations, it cannot use these allegations to bootstrap a purported antitrust claim that it failed to commence within the statute of limitations. "Any action to enforce any cause of action under [the Sherman or Clayton Antitrust Acts] shall be forever barred unless commenced within four years after the cause of action has accrued." 15 U.S.C. § 15b (2000). Here, SRT alleges that Defendants stole its trade secrets more than a decade ago. (Am. Compl. ¶¶ 115, 124, 134, 155.) It is no answer that they allegedly "continued" to "use" the trade secrets more recently. (*Id.* ¶ 425.) In a monopolization case such as this one, unlike a price-fixing case, an overt act that allegedly restarts a statute of limitations cannot be a mere continuation of the original alleged antitrust violation. *See e.g. In re Relafen Antitrust Litig.*, 286 F. Supp. 2d 56, 62 (D. Mass. 2003) (continued sham litigation does not constitute continuing antitrust violation); *Wolf v. Wagner Spray Tech Corp.*, 715 F. Supp. 504, 508 (S.D.N.Y. 1989) (ruling that plaintiffs' claims are time-barred and rejecting the argument that defendants' continuing use of the patent and their subsequent refusal to surrender the patent constituted separate anticompetitive acts); *see generally Klehr v. A.O. Smith Corp.*, 521 U.S. 179, 190 (1997) ("in [ ] antitrust cases, the plaintiff cannot use an independent, new predicate act

as a bootstrap to recover for injuries caused by other earlier predicate acts that took place outside the limitations period").

**3. SRT Improperly Relies on First Amendment-Protected Activity**

The First Amendment protects the right to petition the government without undue fear of antitrust liability, under what is known as the *Noerr-Pennington* doctrine. *See United Mine Workers of Am. v. Pennington*, 381 U.S. 657, 669–70 (1965); *Eastern R.R. Presidents Conference v. Noerr Motor Freight, Inc*., 365 U.S. 127, 136 (1961). Here, all purported anticompetitive conduct that SRT alleges arose in conjunction with or after the 2020 Settlement Agreement qualifies as protected petitioning conduct. (*See e.g.* Am. Compl. ¶ 452.)

First, SRT alleges that Defendants engaged in a "conspiracy to shut down SRT as a competitor of bluebird, and obtain FDA approval for the BB305 Vector with market exclusivity ahead of SRT." (*Id*.) Obtaining FDA approval is the quintessential petitioning conduct that cannot give rise to antitrust liability under the First Amendment unless FDA approval wrongly issued, *see e.g*. *Riegel*, 752 F.2d at 265, which SRT does not allege.

Next, SRT relies on the alleged "fraudulent inducement of SRT in connection with the Settlement Agreement." (Am. Compl. ¶ 452.) *Noerr-Pennington*, however, applies to not only petitioning activity itself, such as litigation, but also activities that are "incidental" to such petitioning. *Allied Tube & Conduit Corp. v. Indian Head, Inc.*, 486 U.S. 492, 499 (1988). "Settlement talks," such as what allegedly induced SRT to settle, is "conduct incidental to" a protected petition and thus entitled to immunity absent a showing that the talks were a sham. *Freeman v. Lasky, Haas & Cohler*, 410 F.3d 1180, 1185 (9th Cir. 2005); *see also Storage Tech. Corp. v. Custom Hardware Eng'g & Consulting, Ltd.*, No. CIV.A. 02-12102-RWZ, 2006 WL 1766434, at *35 (D. Mass. June 28, 2006) ("acts incidental to protected litigation . . . are entitled to immunity"); *EcoDisc Tech. AG v. DVD Format/Logo Licensing Corp*., 711 F. Supp. 2d 1074,

1082 (C.D. Cal. 2010) ("all communications between private parties related to litigation—including presuit demand letters and settlement offers—are entitled to immunity"). That is a high threshold, requiring objective and subjective baselessness, which SRT has not even attempted to meet.

The only remaining allegation is that Defendants allegedly are responsible for the submission of allegedly "materially false information about the TNS9 drug product to the FDA." (*See e.g.* Am. Compl. ¶ 452.)[6] While a knowing misrepresentation to the government can potentially give rise to antitrust liability (in circumstances not at issue here), the plaintiff in such cases must allege the misrepresentation was "material" to the government's decision. *United Food & Com. Workers Unions & Emps. Midwest Health Benefits Fund v. Novartis Pharms. Corp.*, 902 F.3d 1, 9 (1st Cir. 2018). Here, SRT nowhere pleads that any Defendants made or caused any misrepresentation that was material to any FDA decision regarding the TNS9 vector. Nor could a checkmark box indicating that a product does not have FDA orphan drug designation materially affect the timing of FDA approval. As explained above, approval and orphan drug designation are separate FDA processes. (*See supra* III(A)(2)(c).)

**C. <u>THE FRAUDULENT INDUCEMENT COUNT (COUNT XI) FAILS</u>**

SRT alleges that Defendants fraudulently induced it "into agreeing to the insertion of the Release and Dispute Resolution Provisions" in the 2020 Settlement Agreement through unspecified misrepresentations and omissions. (*See* Am. Compl. ¶¶ 27, 247-49, 255.) The Court should dismiss this count because it: (1) fails to satisfy Rule 9(b); (2) fails to allege a misrepresentation of present fact; (3) fails to allege any duty of disclosure; (4) is barred by the

[6] SRT additionally states that its antitrust claims are based on "Thompson's improper control over and direction of MSK to unlawfully delay SRT's competing lentiviral vectors," but the only such post-settlement conduct identified in the Amended Complaint concerns the allegedly "false information about the TNS9 drug product" submitted to the FDA. (Am. Compl. ¶ 452.)

merger clause and disclaimers in the 2020 Settlement Agreement; and (5) was waived by SRT's ratification of the 2020 Settlement Agreement. Each of these failures warrants dismissal.[7]

**1. SRT Fails to Satisfy Rule 9(b)**

Fraudulent inducement allegations must satisfy the heightened pleading requirements of Rule 9(b). *See e.g. ECA & Local 134 IBEW Joint Pension Tr. v. JP Morgan Chase Co.*, 553 F.3d 187, 196 (2d Cir. 2009) (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd*., 551 U.S. 308, 319-20 (2007)). Rule 9(b) requires that a complaint specify the fraudulent statement as well as the speaker, location, time, and basis for alleging the statement was fraudulent. *DiMuro v. Clinique Lab'ys, LLC*, 572 F. App'x 27, 30 (2d Cir. 2014) (quoting *Mills v. Polar Molecular Corp*., 12 F.3d 1170, 1175 (2d Cir. 1993)); *Rombach v. Chang*, 355 F.3d 164, 172, 175 (2d Cir. 2004) ("To meet the pleading requirement of Rule 9(b), plaintiffs cannot rest on their say-so that these statements are fraudulent; they must explain why"); *In re Elan Corp. Sec. Litig*., 543 F. Supp. 2d 187, 222 n.32 (S.D.N.Y. 2008) ("The bald assertion that the certifications were false provides no explanation why the certification was fraudulent and therefore fails to satisfy the Rule 9(b) requirement that fraud must be pled with particularity"). While "a plaintiff may plead facts alleged upon information and belief 'where the belief is based on factual information that makes the inference of culpability plausible,' such allegations must be 'accompanied by a

---

[7] The fraudulent inducement count is governed by New York law because the parties agreed that the 2020 Settlement Agreement would be governed by New York law, and it was negotiated and executed during the pendency of the trial in the New York Litigation. (*See* Ex. 7, § 6.) SRT agrees that New York law governs. (*See* Am. Compl. ¶ 546.) To state a claim for fraudulent inducement under New York law, a plaintiff must show: "(1) that [the defendants] made a representation; (2) as to a material existing fact; (3) which was false; (4) and known to be false by [defendants]; (5) that the representation was made for the purpose of inducing [plaintiff] to rely upon it; (6) that [plaintiff] reasonably did so rely; (7) in ignorance of its falsity; (8) to his injury." *Petrello v. White*, 412 F. Supp. 2d 215, 227 (E.D.N.Y. 2006) (citing *The Topps Co., Inc. v. Cadbury Stani S.A.I.C.*, 380 F. Supp. 2d 250, 265 (S.D.N.Y.2005)). Additionally, a complaint must contain facts giving rise to a "strong inference of fraudulent intent." *Lerner v. Fleet Bank*, 459 F.3d 273, 290 (2d Cir. 2006).

statement of the facts upon which the belief is founded.'" *Munoz-Nagel v. Guess, Inc.*, No. 12 Civ. 1312 (ER), 2013 WL 1809772, at *3 (S.D.N.Y. Apr. 30, 2013) (quoting *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010)).

SRT's allegations do not meet these requirements. Its allegations are vague as to substance, speaker, time, location, reliance, and even as to alleged falsity. For example, SRT alleges that certain Defendants made misrepresentations and omissions about whether SRT would be the only company to operate within the scope of the claims of the intellectual property in the 2005 Agreement after the settlement. (*See e.g.* Am. Compl. ¶ 248.) But SRT nowhere alleges with any specificity the who, what, when, where, or why for any particular statement or omission. (*See id.* ¶¶ 249-50; *see also id.* ¶¶ 547-548 (alleging that Defendants made unspecified misrepresentations "in 2020, prior to execution of the Settlement Agreement"), 256 (alleging unspecified "false representations and omissions"), 550 (alleging unspecified "false statements and omissions of material facts"), 551 (alleging unspecified "misrepresentations and omissions"), 257-259 and 552-553 (alleging unspecified "material omissions and false representations").) While SRT contends that Leschly, Thompson, and bluebird entered a "secret side-agreement" (*id.* ¶ 247), this appears to be pled on purported information and belief, and is not "accompanied by a statement of the facts upon which the belief is founded." *Munoz-Nagel*, No. 12 Civ. 1312 (ER), 2013 WL 1809772, at *3; *see also Huntington Intern. Corp. v. Fieldcrest Cannon, Inc.*, No. 93 Civ. 7602 (PKL), 1994 WL 282220, at *3 (S.D.N.Y. June 22, 1994) (dismissing as defective a fraudulent inducement claim based on vague allegations that defendants intended to breach an agreement at time they entered into it).

**2. SRT Fails to Allege a Misrepresentation of Present Fact**

"[A] viable claim of fraud concerning a contract must allege misrepresentations of present facts (rather than merely of future intent) that were collateral to the contract and which

induced the allegedly defrauded party to enter into the contract." *Orix Credit All., Inc. v. R.E. Hable Co.*, 256 A.D.2d 114, 115 (1st Dept. 1998); *see also Wolfson v. Wolfson*, No. 03-0954 (RCC), 2004 WL 224508, at *8 (S.D.N.Y. Feb. 5, 2004) (dismissing and holding fraud claims cannot be based on opinions or prognostications); *Longo v. Butler Equities II, L.P.*, 278 A.D.2d 97, 97 (1st Dept. 2000) (dismissing fraud allegations based on opinion).

Here, SRT merely alleges Defendants defrauded it through misrepresentations and omissions regarding what they supposedly agreed they *would* do in the future. For example, SRT invokes Defendants' purported secret agreement before entering the 2020 Settlement Agreement that they *would* later "undermine" the release provision to avoid a future infringement claim that SRT had not even filed at the time. (Am. Compl. ¶ 247; *see also id.* ¶ 248 (alleging Defendants fraudulently induced SRT because bluebird knew its "upcoming" BB305 vector product "would" operate within the scope of SRT's patents).) A fraud claim that "merely adds vague and conclusory allegations as to what defendants "'would' do" is not sufficient. *Armored Grp., LLC v. Homeland Sec. Strategies, Inc.*, No. 07-9694 (LAP), 2009 WL 1110783, at *1 (S.D.N.Y. Apr. 21, 2009).

**3. SRT Fails to Allege a Duty of Disclosure**

Fraud by omission requires proof that defendants had a duty to disclose material omitted information. *Donovan v. Aeolian Co.*, 270 N.Y. 267, 272 (1936). There is no duty to disclose absent a fiduciary or other special relationship. *SNS Bank, N.V. v. Citibank, N.A.*, 7 A.D.3d 352, 356 (1st Dept. 2004) ("an omission does not constitute fraud unless there was a fiduciary relationship"); *George Cohen Agency, Inc. v. Donald S. Perlman Agency, Inc.*, 114 A.D.2d 930, 931 (2d Dept. 1985) ("In the absence of a special relationship between two parties to a contract, no duty to disclose exists."). Here, SRT alleges fraud by omission (*see e.g.* Am. Compl. ¶ 247), but does not allege any fiduciary or special relationship between it and Defendants, because there

is none. SRT instead alleges a duty of unspecified origin "to disclose the material fact that Thompson had directed [Sloan Kettering] to cooperate with bluebird in challenging the validity and enforceability of the intellectual property licensed in the 2005 Agreement, including the '179 and '061 Patents." (*Id.* ¶ 251.) Defendants had no such duty. In fact, based on SRT's own allegations, SRT and bluebird are "direct competitor[s]." (*Id.* ¶ 8.)

#### 4. The Allegations Are Barred by Disclaimers

Under New York law, courts routinely dismiss fraud claims in the face of contractual disclaimers that negate reasonable reliance. *See e.g. DynCorp v. GTE Corp.*, 215 F. Supp. 2d 308, 326 (S.D.N.Y. 2002) (dismissing fraud claims on the pleadings due to contractual disclaimers); *Danann Realty Corp. v. Harris*, 5 N.Y.2d 317, 320-21 (1959) (same). For example, in *Consolidated Edison Inc. v. Northeast Utilities*, 249 F. Supp. 2d 387 (S.D.N.Y. 2003), the court applied New York law and dismissed a fraudulent inducement claim where disclaimers were signed during the same negotiation in which certain relied-upon promises were allegedly made—because of the proximity between the disclaimer and the alleged oral representations. As the court explained, "the corporate officers had to know that, at a minimum, the disclaimers precluded reliance on any specific oral promises made during the defendants' negotiations with the [plaintiffs]." *Consolidated Edison Inc.*, 249 F. Supp. 2d, 404 n.7 (internal quotation and citation omitted). Similarly, in *Harsco Corp. v. Segui*, 91 F.3d 337, 345 (2d Cir. 1996), the court held, "where a party specifically disclaims reliance upon a particular representation in a contract, that party cannot . . . claim it was fraudulently induced to enter into the contract by the very representation it has disclaimed reliance upon." "If [the Court] were to rule otherwise, the strong New York policy, giving autonomy to contracting parties to allocate risks, and rights, obligations, warranties and disclaimers, as they see fit, would be compromised." *DynCorp*, 215 F. Supp. 2d at 326.

Here, the 2020 Settlement Agreement expressly disclaims reliance on representations not specifically included in the contract. It contains an integration clause providing that the 2020 Settlement Agreement "sets forth the entire agreement and understanding between the Parties and supersedes and cancels all previous negotiations, agreements and commitments, whether oral or in writing, with respect to the subject matter hereof." (Ex. 7, § 10.) Section 8 of the 2020 Settlement Agreement goes further, explicitly providing that "[e]ach of the Parties represents and warrants that . . . [it] is not relying on any . . . representation of any other party, except as set forth herein." (*Id.* § 8.) And Girondi agreed that settlement was "in the best interests of the patients" (*id.* § 11), which meant bluebird's continued development of BB305. (Ex. 8.) These clear disclaimers are fatal to the fraudulent inducement count. *See e.g. Harsco*, 91 F.3d at 343.

**5. SRT Waived Its Claim by Ratification**

Ratification of an agreement by a party waives any claim of fraudulent inducement into such agreement. *See Moweta v. Citywide Home Improvements of Queens, Inc*., 267 A.D.2d 438, 438-39 (2d Dept. 1999); *Loksen v. Columbia Univ.*, No. 12-7701 (CM), 2013 WL 5549780, at *6 (S.D.N.Y. Oct. 4, 2013). "Ratification occurs when a party accepts the benefits of a contract and fails to act promptly to repudiate it." *Allen v. Riese Org., Inc.*, 106 A.D.3d 514, 517 (1st Dept. 2013). Here, SRT ratified the 2020 Settlement Agreement by accepting the benefits accruing under it in November 2020, including the settlement consideration, and by failing to repudiate it for nearly three years. Tellingly, even now, SRT seeks to "void" only the "Release" provisions in the 2020 Settlement Agreement (Am. Compl. ¶ 546), and not the provisions that provided SRT a settlement payment and patent rights, both of which SRT accepted long ago and apparently intends to keep. Pursuing such *partial* rescission is both hypocritical and contrary to New York law. *See e.g. Simons v. Crowley*, 112 N.Y.S.2d 851, 856 (1952) ("Rescission is not fractional. . . . It is an all or nothing process.").

**D. <u>THE CHAPTER 93A COUNT (COUNT XII) FAILS</u>**

To state a valid claim under Chapter 93A, § 11, a plaintiff must allege sufficient facts to show that: (1) the plaintiff and defendants were engaged in trade or commerce; (2) the defendants used an unfair method of competition or committed an unfair or deceptive act or practice; and (3) in doing so, the defendants caused the plaintiff to suffer a loss of money or property. *See* M.G.L. c. 93A, §11; *Anoush Cab, Inc. v. Uber Techs., Inc.*, 8 F.4th 1, 16 (1st Cir. 2021); *Milliken & Co. v. Duro Textiles, LLC*, 451 Mass. 547, 562-63 (2008). The plaintiff must also allege that the misconduct occurred "primarily and substantially" in Massachusetts. *Kuwaiti Danish Comput. Co. v. Digit. Equip. Corp.*, 438 Mass. 459, 470 (2003).

In support of its Chapter 93A claim, SRT merely repackages its flawed allegations regarding the alleged 2020 Settlement Agreement "fraud," litigation activity "fraud," 2seventy spin-off "fraud," no-orphan-drug-designation checkmark "fraud," and conditional trade secret "theft." (*See* Am. Compl. ¶ 563.) As demonstrated above, these allegations are time-barred, implausible, insufficiently pled, and released (*see supra* III(A)(1)-(2), (B)(2)), and thus fail to state a Chapter 93A claim. *See Varney v. R.J. Reynolds Tobacco Co.*, 118 F. Supp. 2d 63, 72 (D. Mass. 2000) (alleged violations of Chapter 93A based on conspiracy and fraud must be dismissed if they do not meet the "more stringent particularity requirements of Rule [of Civil Procedure] 9(b)"); *Indus. Gen. Corp. v. Sequoia Pac. Sys. Corp.*, 44 F.3d 40, 44 (1st Cir. 1995) (Chapter 93A, § 11 does not impose a duty to disclose); *Duplessis v. Wells Fargo Bank, Nat'l Ass'n*, 91 Mass. App. Ct. 1125, at *3 n.9 (2017) ("a business-to-business c. 93A claim is available only to a party who has suffered an actual loss of 'money or property'").

Moreover, the locus of the alleged misconduct was "primarily and substantially" outside Massachusetts. *Kuwaiti Danish Comput.*, 438 Mass. at 470. The 2020 Settlement Agreement was executed "during trial in the New York Litigation," and is governed by New York law.

(Am. Compl. ¶¶ 15, 546.) The litigation activity at issue arose from the Delaware Litigation, and it includes an arbitration conducted in New York and IPR proceedings before the PTAB located in Virginia. (*Id.* ¶¶ 237, 243.) The alleged false FDA filings were submitted by non-party Sloan Kettering in New York. (*Id.* Exs. I-M). That leaves only the conditional trade secret "theft" that was released, and the 2seventy spin-off that independently cannot support any claim.

### E. THE MASSACHUSETTS ANTITRUST COUNTS (COUNTS XIII AND XIV) FAIL

The elements required to establish a claim under the Massachusetts Antitrust Act, M.G.L. c. 93 (the "MAA"), are "identical" to those required under the Sherman Act. *American Tel. & Tel. Co. v. IMR Capital Corp.*, 888 F. Supp. 221, 252, n. 25 (D. Mass. 1995); *see also* M.G.L. c. 93 § 1. Accordingly, for the same reasons that SRT's federal antitrust counts fail (*see supra* III(B)), SRT's claims under the MAA also fail. *See e.g. Steward Health Care System LLC v. Southcoast Health System, Inc.*, No. CV 15-14188-MLW, 2016 WL 9022444, at *7 (D. Mass. Sept. 2, 2016) (dismissing MAA claims that failed to state claims for violations of the Sherman Act); *C. R. Bard, Inc. v. Medical Elecs. Corp.*, 529 F. Supp. 1382, 1391 (D. Mass. 1982) (same). Moreover, as set forth below, SRT's MAA claims fails for two additional reasons: (1) SRT fails to establish jurisdiction under the MAA; and (2) the FDA-based allegations are exempt under the MAA.

#### 1. SRT Fails to Establish Jurisdiction Under the MAA

Section 3 of the MAA provides that "[n]othing in the [MAA] . . . shall apply to any course of conduct, pattern of activity, or activities unless they occur and have their competitive impact primarily and predominantly within the commonwealth and at most, only incidentally outside New England." M.G.L. c. 93, § 3. In the Amended Complaint, SRT fails to plausibly allege that any purported anticompetitive conduct of Defendants has its "competitive impact primarily and predominantly within the commonwealth and at most, only incidentally outside New England."

*Id.* To the contrary, SRT alleges that Beta Thalassemia, the only condition that allegedly would be treated by the TNS9 vector, is "rare in the United States" but "affects a large population of children worldwide." (*See* Am. Compl. ¶ 55.) SRT's allegations do not even suggest that Defendants' alleged conduct would have any uniquely substantial competitive impact in Massachusetts (or New England) as opposed to any other location in the United States.

**2. SRT's Allegations Are Exempted Under the MAA**

The MAA counts also fail because SRT bases them on the Defendants' allegedly wrongful conduct to "gain FDA approval" for the BB305 vector ahead of and "delay" the commercial launch of SRT's TNS9 vector. (*See* Am. Compl. ¶¶ 24, 124, 284, 578, 587.) Section 7 of the MAA exempts from the MAA "[a]ny activities which are subject to regulation or supervision by state or federal agencies." M.G.L. c. 93, § 7. The FDA, a federal agency, governs the drug approval process and dictates the timing of any commercial launch. Thus, the Defendants' alleged "anticompetitive" acts are excluded from coverage under the MAA. *Cf., American Transp. Ins. Co., Inc. v. Balboa Ins. Co.*, No. CIV. A. 88-1834-MC, 1989 WL 90425, at *1 (D. Mass. Aug. 2, 1989) (alleged omission in reporting data to the Commonwealth Automobile Reinsurers ("CAR") held to be exempt from coverage under the MAA where "CAR's collection of insurance data and the setting of rates are strictly regulated under Massachusetts General Laws c. 175A and 175E and are supervised, regulated and enforced by the Commissioner of Insurance").

**F. THE CLAIMS AGAINST THE INDIVIDUAL DEFENDANTS AND 2SEVENTY ARE EVEN MORE BASELESS**

"If the complaint involves multiple defendants, then 'each defendant's role must be particularized with respect to their alleged involvement in the fraud.'" *Rhone v. Energy N., Inc.*, 790 F. Supp. 353, 361 (D. Mass. 1991); *Kingvision Pay-Per-View, Ltd. v. Vergas*, No. 00-0407-JD, 2001 WL 311199, at *2 (D.N.H. Mar. 26, 2001) (Rule 9(b) requires that "claims of fraud be

pled with particularity as to each defendant.") Similarly, in the First Circuit, a plaintiff pursuing a RICO claim must show "that *each defendant* knowingly agreed that at least two racketeering acts would be committed in furtherance of [the conspiracy]." *United States v. Velazquez-Fontanez*, 6 F.4th 205, 213 (1st Cir. 2021) (emphasis added).

Here, SRT has not pled any cognizable particularized allegations regarding the individual Defendants and 2seventy. The Complaint contains no allegation that Finer or Reilly did or agreed to anything after they left bluebird in 2015 and 2011, respectively, or played any role in negotiating (or even saw) the 2020 Settlement Agreement. (Am. Compl. ¶¶ 2, 374, 382, 406, 424, 452-53, 457, 548-51, 563.) As for 2seventy, it did not exist until a year after the 2020 Settlement Agreement was executed. (*Id.* ¶ 263.) Moreover, it is an oncology company (*id.*), and thus does not plausibly compete with SRT. Further, neither Finer, Reilly, nor 2seventy were parties to any of the prior litigations involving SRT, nor are they parties to any of the ongoing litigations that SRT alleges in support of its RICO claims. (*Id.* ¶ 337.) As for Leschly, he left bluebird in 2021 and is not alleged to have had any role in any post-settlement conduct upon which SRT relies. Thus, while the Court should dismiss the entire Amended Complaint against all Defendants, the claims against the individual defendants and 2seventy are especially baseless.

## IV. CONCLUSION

For these reasons, the Court should dismiss the Amended Complaint with prejudice.[8]

---

[8] Defendants Leschly, Finer, Reilly, Third Rock, bluebird, and 2seventy reserve the right to join in any additional arguments supporting dismissal that Thompson may raise in a response to the Amended Complaint, which is due by October 23, 2023.

Dated: September 18, 2023

Respectfully submitted,

*/s/ Jeffrey S. Robbins*

Jeffrey S. Robbins (#421910)
Patrick S. Tracey (#659626)
Evan Gotlob (#704771)
SAUL EWING LLP
131 Dartmouth Street, Suite 501
Boston, MA 02116
(617) 723-3300
jeffrey.robbins@saul.com
patrick.tracey@saul.com
evan.gotlob@saul.com

*Attorneys for Defendants*
*Nick Leschly, Mitchell Finer, Philip Reilly, Third Rock Ventures, LLC, bluebird bio, Inc., and 2seventy bio, Inc.*

OF COUNSEL:

Eric W. Dittmann (*pro hac vice)*
Joshua M. Bennett (*pro hac vice*)
PAUL HASTINGS LLP
200 Park Avenue
New York, NY 10166
(212) 318-6000

Naveen Modi (*pro hac vice*)
Jeff A. Pade (*pro hac vice*)
Michael F. Murray (*pro hac vice*)
PAUL HASTINGS LLP
2050 M Street NW
Washington, DC 20036
(202) 551-1700