## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

SAN ROCCO THERAPEUTICS, LLC,

      Plaintiff,

v.

NICK LESCHLY, MITCHELL FINER, PHILIP REILLY, CRAIG THOMPSON, THIRD ROCK VENTURES, LLC, BLUEBIRD BIO, INC., AND 2SEVENTY BIO, INC.,

      Defendants.

Case No.: 1:23-cv-10919-ADB

Leave to file granted on September 7, 2023 [Dkt. 52]

## DEFENDANT CRAIG THOMPSON, M.D.'S MEMORANDUM OF LAW IN SUPPORT OF HIS MOTION TO DISMISS PURSUANT TO <u>FEDERAL RULES OF CIVIL PROCEDURE 12(B)(2) AND 12(B)(6)</u>

# TABLE OF CONTENTS

ARGUMENT ........................................................................................................................1

I.        Plaintiff Cannot Establish That This Court Has Jurisdiction Over Dr. Thompson. ............1

    A. This Court Does Not Have General Jurisdiction Over Dr. Thompson. ...............................1

    B. This Court Does Not Have Specific Jurisdiction Over Dr. Thompson. ...............................2

        1. Dr. Thompson Is Not Subject to Massachusetts' Long-Arm Statute...............................2

        2. Exercising Specific Jurisdiction Over Dr. Thompson Would Not Comport with the Due
           Process Clause. ........................................................................................................4

    C. 18 U.S.C. § 1965(b) Does Not Establish Jurisdiction Over Dr. Thompson. .......................6

    D. The Court Should Not Exercise Pendent Personal Jurisdiction Over Dr. Thompson...........6

II.       All Four of Plaintiff's RICO Claims Must Be Dismissed. ...................................................7

    A. The Claims Are Time Barred. ...........................................................................................8

    B. Plaintiff Has Not Adequately Pled that Dr. Thompson Was Part of the Alleged RICO
       Enterprise. .......................................................................................................................9

    C. Plaintiff Has Not Pled with Particularity that Dr. Thompson Committed Two Actionable
       Predicate Acts. ..............................................................................................................10

    D. Plaintiff Fails to Show a Pattern of Racketeering Activity. .............................................13

    E. The Predicate Acts Did Not Proximately Cause Plaintiff's Alleged Injury. ......................15

    F. Plaintiff Has Not Alleged Distinct Section 1962(a) and 1962(b) Injuries..........................16

    G. Plaintiff Has Not Alleged Actionable Conduct Under Sections 1962(a) and (b). ..............18

    H. The RICO Conspiracy Claim Against Dr. Thompson Must Be Dismissed. .......................19

III.      Plaintiff's Fraudulent Inducement Claim Must Be Dismissed. .........................................20

    A. The 2020 Settlement Agreement and Release Preclude the Claim. ...................................21

        1. The Claims and Parties Are Covered by the Release......................................................21

        2. The Release is Enforceable. ......................................................................................22

i

3. SRT Fails to Allege Fraudulent Misrepresentation by Dr. Thompson. ...........................23

B. SRT Has Ratified the 2020 Settlement Agreement. ...........................................24

C. SRT's Claim Concerning the 2020 Settlement Agreement Should Be Referred to Arbitration. ....................................................................................................24

IV.    Plaintiff's Federal and State Antitrust Claims Must Be Dismissed. ...............................25

A. SRT Has Failed to Allege Facts Sufficient to Support Its Conspiracy Claims. ................26

1. SRT Does Not Allege Any Evidence of an Agreement Involving Dr. Thompson. .........26

2. SRT Does Not Allege Any Conduct by Dr. Thompson that Supports an Inference of a Conspiracy. ....................................................................................................27

B. SRT Lacks Antitrust Standing to Sue Dr Thompson. ..........................................29

C. SRT's Monopolization Claims Fail Because Dr. Thompson Neither Has Monopoly Power Nor is Dangerously Close to Achieving Such Power. ........................................30

D. SRT's Massachusetts Antitrust Claims Are Not Viable Because It Has Not Alleged an Actionable Antitrust Conspiracy or Conduct Occurring "Primarily and Substantially in Massachusetts." .................................................................................32

E. SRT's Antitrust Claims Against Dr. Thompson Are Time-Barred and, in Any Event, Were Released. ....................................................................................................33

V.    Plaintiff's Claim Under Chapter 93A Must Be Dismissed. ...............................................33

CONCLUSION ....................................................................................................35

# TABLE OF AUTHORITIES

## Cases

*10x Genomics, Inc. v. Vizgen, Inc.*,
  No. 22-595-MFK, 2023 U.S. Dist. LEXIS 117685 (D. Del. July 10, 2023) ..........................35

*ACE Capital Re Overseas Ltd. v. Cent. United Life Ins.*,
  307 F.3d 24 (2d Cir. 2002)..................................................................................................25

*Alleghany Corp. v. Kirby*,
  333 F.2d 327 (2d Cir. 1964)................................................................................................23

*All Seasons Servs., Inc. v. Comm'r of Health & Hosps. of Bos.*,
  416 Mass. 269 (1993) .........................................................................................................34

*Anza v. Ideal Steel Supply Corp.*,
  547 U.S. 451 (2006).....................................................................................................15, 16

*Associated Gen. Contractors v. Cal. State Council of Carpenters*,
  459 U.S. 519 (1983)......................................................................................................29, 30

*Baskin-Robbins Franchising LLC v. Alpenrose Dairy, Inc.*,
  825 F.3d 28 (1st Cir. 2016)....................................................................................................5

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)..............................................................................................26, 27, 33

*Bellefonte Re Ins. v. Argonaut Ins.*,
  757 F.2d 523 (2d Cir. 1985)................................................................................................23

*Brown Shoe Co. v. United States*,
  370 U.S. 294 (1962)............................................................................................................29

*Brown v. Quest Diagnostics, LLC*,
  No. 08-11517-RGS, 2008 U.S. Dist. LEXIS 101678 (D. Mass. Dec. 16, 2008)....................11

*Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*,
  429 U.S. 477 (1977)............................................................................................................29

*Cater v. New York*,
  No. 17 Civ. 9032, 2019 U.S. Dist. LEXIS 17780 (S.D.N.Y. Jan. 30, 2019)..........................24

*Catrone v. Ogden Suffolk Downs, Inc.*,
  647 F. Supp. 850 (D. Mass. 1986) ..........................................................................................6

*Centro Empresarial Cempresa S.A. v. Am. Móvil, S.A.B. de C.V.*,
    17 N.Y.3d 269 (N.Y. 2011) ............................................................................................24

*Circiello v. Alfano*,
    612 F. Supp. 2d 111 (D. Mass. 2009) ...........................................................................18

*Coastal Fuels of P.R., Inc. v. Caribbean Petroleum Corp.*,
    79 F.3d 182 (1st Cir. 1996) ...........................................................................................31

*Compagnie de Reassurance D'Ile de France v. New England Reinsurance Corp.*,
    57 F.3d 56 (1st Cir. 1995).........................................................................................16, 18

*Crimson Galeria Ltd. P'ship v. Healthy Pharms, Inc.*,
    337 F. Supp. 3d 20 (D. Mass. 2018) .............................................................................19

*Daimler AG v. Bauman*,
    571 U.S. 117 (2014).........................................................................................................2

*Dantas v. Citigroup, Inc.*,
    779 F. App'x 16 (2d Cir. 2019) ....................................................................................24

*Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A.*,
    290 F.3d 42 (1st Cir. 2002).............................................................................................1

*Díaz Aviation Corp. v. Airport Aviation Servs.*,
    716 F.3d 256 (1st Cir. 2013)..........................................................................................31

*DIRECTV Grp., Inc. v. Darlene Invs., LLC*,
    No. 05 Civ. 5819 (WHP), 2006 U.S. Dist. LEXIS 69129 (S.D.N.Y. Sept. 27,
    2006) ..............................................................................................................................22

*Dispensa v. Nat'l Conf. of Catholic Bishops*,
    No. 19-cv-556-LM, 2020 U.S. Dist. LEXIS 89570 (D.N.H. May 21, 2020) ...........6

*DM Research, Inc. v. Coll. of Am. Pathologists*,
    170 F.3d 53 (1st Cir. 1999).............................................................................................27

*Doane v. Benefytt Techs., Inc.*,
    No. 22-10510-FDS, 2023 U.S. Dist. LEXIS 40478 (D. Mass. Mar. 10, 2023)........11

*Douglas v. Hirson*,
    63 F.4th 49 (1st Cir. 2023)...........................................................................................19

*Douglas v. Lalumiere*,
    No. 2:20-cv-00227-JDL, 2021 U.S. Dist. LEXIS 186911 (D. Me. Sept. 29,
    2021) ..............................................................................................................................17

*Efron v. Embassy Suites (P.R.), Inc.*,
223 F.3d 12 (1st Cir. 2000)................................................................13, 14, 19

*Evergreen Partnering Grp., Inc. v. Pactiv Corp.*,
720 F.3d 33 (1st Cir. 2013)................................................................26, 28

*Ezell v. Lexington Ins.*,
286 F. Supp. 3d 292 (D. Mass. 2017) ................................................................9

*Feinstein v. Resolution Tr. Corp.*,
942 F.2d 34 (1st Cir. 1991)................................................................11, 14

*Fleet Credit Corp. v. Sion*,
893 F.2d 441 (1st Cir. 1990)................................................................14

*Foster-Miller, Inc. v. Babcock & Wilcox Can.*,
46 F.3d 138 (1st Cir. 1995)................................................................1, 4, 5

*Fundacion Segarra-Boerman E Hijos v. Martinez-Alvarez*,
No. 16-2914 (DRD), 2019 U.S. Dist. LEXIS 241136 (D.P.R. Sept. 30, 2019)......................18

*Gallagher v. Amedisys, Inc.*,
No. 17-cv-11390-ADB, 2018 U.S. Dist. LEXIS 81614 (D. Mass. May 15, 2018) ................................................................2

*Garshman Co. v. GE*,
176 F.3d 1 (1st Cir. 1999)................................................................34

*Giuffrida v. High Country Inv'r, Inc.*,
73 Mass. App. Ct. 225 (2008)................................................................34

*Giuliano v. Fulton*,
399 F.3d 381 (1st Cir. 2005)................................................................13, 14

*Gott v. Simpson*,
745 F. Supp. 765 (D. Me. 1990) ................................................................20

*Gov't Emples. Ins. v. Analgesic Healthcare*,
No. 16-11970-RGS, 2017 U.S. Dist. LEXIS 45600 (D. Mass. Mar. 28, 2017) ......................10

*H.J. Inc. v. Nw. Bell Tel. Co.*,
492 U.S. 229 (1989)................................................................13

*Int'l Ass'n of Machinists & Aero. Workers v. Verso Corp.*,
153 F. Supp. 3d 419 (D. Me. 2015) ................................................................27

*In Transit Sales, Inc. v. Banco Popular de P.R., Inc.*,
2001 U.S. Dist. LEXIS 24432 (D.P.R. Dec. 27, 2001) ........................................12

v

*Ipcon Collections LLC v. Costco Wholesale Corp.*,
    698 F.3d 58 (2d Cir. 2012).............................................................................25

*Jakuttis v. Town of Dracut*,
    No. 16-12643-DPW, 2023 U.S. Dist. LEXIS 24554 (D. Mass. Feb. 14, 2023)......................20

*Johnson Creative Arts, Inc. v. Wool Masters, Inc.*,
    573 F. Supp. 1106 (D. Mass. 1983) ...................................................................3

*Kelly v. Waters Corp.*,
    No. 17-12193-LTS, 2023 U.S. Dist. LEXIS 41390 (D. Mass. Feb. 9, 2023)...........................8

*Klehr v. A.O. Smith Corp.*,
    521 U.S. 179 (1997)........................................................................................9

*Korngold v. DRB Sys. LLC*,
    No. 1:22-CV-10864-AK, 2023 U.S. Dist. LEXIS 40479 (D. Mass. Mar. 10,
    2023) ..........................................................................................................2

*Kuwaiti Danish Comput. Co. v. Digital Equip. Corp.*,
    438 Mass. 459 (2003) ...................................................................................33

*Lares Grp., II v. Tobin*,
    221 F.3d 41 (1st Cir. 2000).............................................................................8

*Lawson v. FMR LLC*,
    554 F. Supp. 3d 186 (D. Mass. 2021) ...............................................................8

*Lerner v. Coleman*,
    485 F. Supp. 3d 319 (D. Mass. 2020) ..............................................................19

*Libertad v. Welch*,
    53 F.3d 428 (1st Cir. 1995).............................................................................9

*Logfret, Inc. v. Gerber Fin., Inc.*,
    559 F. Supp. 3d 348 (S.D.N.Y. 2021)..............................................................24

*Lu v. Canton Corp.*,
    2015 U.S. Dist. LEXIS 67427 (D. Mass. May 13, 2015) ....................................17

*Mass. Sch. of Law v. ABA*,
    142 F.3d 26 (1st Cir. 1998)........................................................................2, 4

*Matsushita Electric Indus. Co. v. Zenith Radio Corp.*,
    475 U.S. 574 (1986)......................................................................................28

*McEvoy Travel Bureau, Inc. v. Heritage Travel, Inc.*,
    904 F.2d 786 (1st Cir. 1990)..........................................................................13

*McLarnon v. United States*,
    No. 09-10049-RGS, 2009 U.S. Dist. LEXIS 43781 (D. Mass. May 19, 2009)......................19

*Meddaugh v. Wgbh Educ. Found.*,
    97 Mass. App. Ct. 1116 (2020).......................................................................................................35

*Miller v. Holtzbrinck Publishers, LLC*,
    No. 08 Civ. 3508 (HB), 2009 U.S. Dist. LEXIS 18973 (S.D.N.Y. Mar. 3,
    2009) ..............................................................................................................................................23

*Mojtabai v. Mojtabai*,
    4 F.4th 77 (1st Cir. 2021)...............................................................................................................6

*Montalvo v. LT's Benjamin Records, Inc.*,
    56 F. Supp. 3d 121 (D.P.R. 2014).................................................................................................12

*Morelli v. Alters*,
    No. 1:19-CV-10707-GHW,2020 U.S. Dist. LEXIS 47351 (S.D.N.Y. Mar. 18,
    2020) ..............................................................................................................................................25

*N. Amer. Catholic Educ. Programming Found., Inc. v. Cardinale*,
    567 F.3d 8 (1st Cir. 2009).............................................................................................................34

*Nasik Breeding & Research Farm Ltd. v. Merck & Co.*,
    165 F. Supp. 2d 514 (S.D.N.Y. 2001)..........................................................................................24

*Nat'l Med. Care v. Home Med. of Am.*,
    No. 00-1225, 2002 Mass. Super. LEXIS 338 (Aug. 9, 2002)......................................................3

*Natale v. Espy Corp.*,
    2 F. Supp. 3d 93 (D. Mass. 2014) ...............................................................................................12

*Negron-Torres v. Verizon Commc'ns, Inc.*,
    478 F.3d 19 (1st Cir. 2007)............................................................................................................2

*Nycal Corp. v. Inoco P.L.C.*,
    988 F. Supp. 296 (S.D.N.Y. 1997) ..............................................................................................23

*P.R. Med. Emergency Group, Inc v. Iglesia Episcopal Puertorriquena, Inc.*,
    118 F. Supp. 3d 447 (D.P.R. 2015)..............................................................................................16

*Paladin Assocs. v. Mont. Power Co.*,
    97 F. Supp. 2d 1013 (D. Mt. 2000), *aff'd*, 328 F.3d 1145 (9th Cir. 2003) ..............................26

*In re Pharm. Indus. Average Wholesale Price Litig.*,
    263 F. Supp. 2d 172 (D. Mass. 2003) ...........................................................................................9

*PSW, Inc. v. VISA U.S.A., Inc.*,
   No. 04-347T, 2006 U.S. Dist. LEXIS 11763 (D.R.I. Feb. 3, 2006) .......................................31

*Racecourse v. Wynn Resorts*,
   990 F.3d 31 (1st Cir. 2021) ...........................................................................................15, 16

*Rivera v. P.R. Elec. Power Auth.*,
   No. 11-2003 (DRD), 2012 U.S. Dist. LEXIS 201390 (D.P.R. Sept. 25, 2022)................16, 17

*RSA Media, Inc. v. Media Group, Inc.*,
   260 F.3d 10 (1st Cir. 2001) .........................................................................................29

*Sanchez v. Triple-S Mgmt., Corp.*,
   492 F.3d 1 (1st Cir. 2007) ..........................................................................................12

*Sands Harbor Marina Corp. v. USI Ins. Serv. Nat'l, Inc.*,
   586 F. Supp. 3d 163 (E.D.N.Y. 2022) .......................................................................24

*Scalercio-Isenberg v. Goldman Sachs Mortg. Co.*,
   No. 21 Civ. 4124 (KPF), 2022 U.S. Dist. LEXIS 142310 (S.D.N.Y. Aug. 9,
   2022) .........................................................................................................................23

*Schultz v. R.I. Hosp. Tr. Nat'l Bank, N.A.*,
   94 F.3d 721 (1st Cir. 1996) ........................................................................................11

*SCVNGR, Inc. v. Punchh, Inc.*,
   85 N.E.3d 50 (Mass. 2017) ..........................................................................................2

*Serpa Corp. v. McWane, Inc.*,
   199 F.3d 6 (1st Cir. 1999) ...........................................................................................29

*Spectrum Sports, Inc. v. McQuillan*,
   506 U.S. 447, 113 S. Ct. 884, 122 L. Ed. 2d 247 (1993).............................................31

*Sterling Merch., Inc. v. Nestle S.A.*,
   656 F.3d 112 (1st Cir. 2011) ...................................................................................29, 31

*Steward Health Care Sys. LLC v. Southcoast Health Sys., Inc.*,
   No. CV 15-14188-MLW, 2016 WL 2099444 (D. Mass. Sept. 2, 2016) ..............................32

*TargetSmart Holdings, LLC v. GHP Advisors, LLC*,
   366 F. Supp. 3d 195 (D. Mass. 2019) .......................................................................2, 5

*Theatre Enters., Inc. v. Paramount Film Distributing Corp.*,
   346 U.S. 537 (1954)....................................................................................................27

*Tyson v. Cayton*,
   784 F. Supp. 69 (S.D.N.Y. 1992).................................................................................22

*United Elec., Radio & Mach. Workers v. 163 Pleasant St. Corp.*,
   960 F.2d 1080 (1st Cir. 1992) ................................................................................3

*United States v. Patrick*,
   248 F.3d 11 (1st Cir. 2001) ....................................................................................9

*United States v. Velazquez-Fontanez*,
   6 F.4th 205 (1st Cir. 2021) ...................................................................................19

*Veroblue Farms USA Inc. v. Canaccord Genuity LLC*,
   No. 20 Civ. 4394 (JPC), 2021 U.S. Dist. LEXIS 166294 (S.D.N.Y. Sept. 1,
   2021) ......................................................................................................................22

*White v. R.M. Packer Co.*,
   635 F.3d 571 (1st Cir. 2011) .................................................................................26

*World Depot Corp. v. Onofri*,
   No. 16-12439-FDS, 2017 U.S. Dist. LEXIS 198814 (D. Mass. Dec. 4, 2017) ........6

*Zenith Radio Corp. v. Hazeltine Research, Inc.*,
   401 U.S. 321 (1971) ..............................................................................................33

**Statutes**

9 U.S.C. § 1 *et seq*. .........................................................................................................25

15 U.S.C. § 1 ....................................................................................................25, 26, 28

15 U.S.C. § 2 ....................................................................................................25, 26, 31

15 U.S.C. § 15 ..........................................................................................................25

15 U.S.C. § 15b .........................................................................................................33

15 U.S.C. § 26 ..........................................................................................................25

18 U.S.C. § 1962(a) ...................................................................................7, 16, 17, 18

18 U.S.C. § 1962(b) .............................................................................7, 16, 17, 18, 19

18 U.S.C. § 1962(c) ...............................................................................................7, 17

18 U.S.C. § 1962(d) .....................................................................................................7

18 U.S.C. § 1965(b) .....................................................................................................6

M.G.L. ch. 93, § 3 ..................................................................................................7, 32

M.G.L. ch. 93, § 4 ..................................................................................................7, 25

M.G.L. ch. 93, § 5 ...........................................................................................7, 25, 30, 31

M.G.L. ch. 93, § 13 ...........................................................................................................33

M.G.L. ch. 93A, § 11 ...........................................................................................7, 33, 34, 35

M.G.L. ch. 223A, § 3 ...........................................................................................................3

**Rules**

Fed. R. Civ. P. 9(b) ...........................................................................................10, 11, 12, 34

**Other Authorities**

76 Fed. Reg. 66868, 68472 .................................................................................................16

U.S. Food & Drug Admin., *Designating an Orphan Product: Drugs and Biological Products*, https://www.fda.gov/industry/medical-products-rare-diseases-and-conditions/designating-orphan-product-drugs-and-biological-products (last visited Sept. 7, 2023)........................................................................12, 15

## TABLE OF ABBREVIATIONS

| ENTITIES | |
|---|---|
| SRT | Plaintiff San Rocco Therapeutics, LLC |
| Bluebird | Defendant bluebird bio, Inc. |
| Third Rock | Defendant Third Rock Ventures, LLC |
| 2seventy | Defendant 2seventy bio, Inc. |
| MSK | Non-parties Memorial Sloan Kettering Cancer Center and Sloan-Kettering Institute for Cancer Research |
| Bluebird Defendants | Defendants Nick Leschly, Mitchell Finer, Philip Reilly, Third Rock Ventures LLC, bluebird bio, Inc., and 2seventy bio, Inc. |
| Agios or Agios Pharma | Agios Pharmaceuticals, Inc. |
| **PLEADINGS** | |
| Am. Compl. | Plaintiff's Amended Complaint, Dkt. 42 (D. Mass. Aug. 7, 2023) |
| BB MTD or bluebird Defendants' Motion to Dismiss | Defendants Leschly, Finer, Reilly, Third Rock, bluebird, and 2seventy's Memorandum of Law in Support of Their Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6), Dkt. 57 (D. Mass. Sept. 18, 2023) |
| Plaintiff's Opposition or Pl.'s Opp'n | Plaintiff's Brief in Opposition to Defendants' Motion to Dismiss the Amended Complaint, Dkt. 60 (D. Mass. Oct. 12, 2023) |
| Thompson Decl. | Declaration of Defendant Craig Thompson, M.D., in Support of His Motion to Dismiss Pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6) (filed herewith) |
| **RELATED PROCEEDINGS** | |
| Massachusetts Litigation | *Errant Gene Therapeutics v. Third Rock Ventures, LLC et al.*, No. 1984CV01832-BLS1 (Mass. Super. Ct.) |
| New York Litigation | *Errant Gene Therapeutics v. Sloan-Kettering Inst. for Cancer Research et al.*, Index No. 150856/2017 (N.Y. Sup. Ct.) |
| 2020 Settlement Agreement | Confidential Settlement Agreement between Errant Gene Therapeutics, LLC, Patrick Girondi, Memorial Sloan Kettering Cancer Center, the Sloan Kettering Institute for Cancer research, and bluebird bio, Inc. (Nov. 2, 2020), Dkt. 57-8 (D. Mass. Sept. 18, 2023) |

Dr. Craig Thompson submits this memorandum of law in support of his motion to dismiss. A cursory review of the Amended Complaint will show that, as respecting Dr. Thompson's involvement, SRT contrives a narrative to tag liability on a person who bears no responsibility for whatever fate SRT's drug discovery program has suffered.

The claims fail for a variety of reasons, including for:  failing to establish personal jurisdiction over non-resident Dr. Thompson; failing to plead claims with the required level of specificity; and omitting crucial elements in the RICO and antitrust claims asserted against him. All claims against Dr. Thompson should be dismissed.[1]

## ARGUMENT

**I.      Plaintiff Cannot Establish That This Court Has Jurisdiction Over Dr. Thompson.**

SRT bears the burden of proving that this Court may exercise personal jurisdiction over Dr. Thompson.  *Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A.*, 290 F.3d 42, 50 (1st Cir. 2002).  SRT must "adduce evidence of specific facts" that support jurisdiction.  *Foster-Miller, Inc. v. Babcock & Wilcox Can.*, 46 F.3d 138, 145 (1st Cir. 1995).  To that end, SRT alleges: (1) Dr. "Thompson is a substantial stakeholder of Agios Pharma located at 88 Sidney Street, Cambridge, Massachusetts" and (2) Dr. Thompson "regularly conducts business in Massachusetts" because he supposedly has unspecified "business relationships with Agios Pharma, Third Rock, Leschly, and Reilly."  Am. Compl. ¶ 51.  These allegations, which are both inaccurate and unsupported, cannot carry SRT's burden.

### A.  This Court Does Not Have General Jurisdiction Over Dr. Thompson.

SRT's allegations cannot support general jurisdiction over Dr. Thompson.  "A court has general jurisdiction when the litigation is not directly founded on the defendant's forum-based

---

[1] Dr. Thompson refers to and incorporates the Background Facts as written in the bluebird Defendants' Mmotion to dismiss for a summary of the prior disputes between SRT, MSK and bluebird. *See* BB MTD at 2-7.

contacts, but the defendant has nevertheless engaged in continuous and systematic activity, unrelated to the suit, in the forum state." *Negron-Torres v. Verizon Commc'ns, Inc.*, 478 F.3d 19, 25 (1st Cir. 2007). "'For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile . . . .'" *Gallagher v. Amedisys, Inc.*, 2018 U.S. Dist. LEXIS 81614, at *9 (D. Mass. May 15, 2018) (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014)). General jurisdiction may also be asserted "when the person offers explicit consent, or is physically present in the forum state." *Id.* (alterations omitted) (internal quotation marks omitted).

None of these bases applies to Dr. Thompson. Dr. Thompson's domicile is New York, not Massachusetts. Thompson Decl. ¶ 3. SRT does not allege that Dr. Thompson consented to jurisdiction or that he was "physically present" in Massachusetts when served. *See, e.g.*, *Korngold v. DRB Sys.* LLC, 2023 U.S. Dist. LEXIS 40479, at *9 (D. Mass. Mar. 10, 2023).

**B. This Court Does Not Have Specific Jurisdiction Over Dr. Thompson.**

Specific jurisdiction is available only where "there is a demonstrable nexus between a plaintiff's claims and a defendant's forum-based activities." *Mass. Sch. of Law v. ABA*, 142 F.3d 26, 34 (1st Cir. 1998). Dr. Thompson's forum-based activities must support the exercise of specific jurisdiction under both the Massachusetts long-arm statute and the Due Process Clause. *See, e.g.*, *TargetSmart Holdings, LLC v. GHP Advisors, LLC*, 366 F. Supp. 3d 195, 206 (D. Mass. 2019). SRT's allegations do not support jurisdiction under either.

*1. Dr. Thompson Is Not Subject to Massachusetts' Long-Arm Statute.*

The Massachusetts long-arm statute is not co-extensive with the Due Process Clause; thus, this Court must analyze jurisdiction under both separately. *See, e.g.*, *id.* at 207 ("Recently, both [the First Circuit and the Supreme Judicial Court] . . . have suggested that 'the Massachusetts statute does not purport to extend jurisdiction as far as due process would allow.'" (quoting *SCVNGR, Inc. v. Punchh, Inc.*, 85 N.E.3d 50, 55 (Mass. 2017))). The one basis that SRT

2

appears to allege for jurisdiction under the long-arm statute is that Dr. Thompson "transact[s] . . . business in this commonwealth."   M.G.L. ch. 223A, § 3.   Transacting business in the Commonwealth has two requirements: the defendant must have "attempted to participate in the commonwealth's economic life" and the plaintiff's cause of action must "arise from" that participation.  *United Elec., Radio & Mach. Workers v. 163 Pleasant St. Corp.*, 960 F.2d 1080, 1087 (1st Cir. 1992).  SRT's allegations fail at both steps.

The only allegations arguably connecting Dr. Thompson to the economic life of the Commonwealth concern Dr. Thompson's role in Agios.   SRT alleges that Dr. Thompson "founded" and "is a substantial stakeholder" of Agios.  Am. Compl. ¶ 38.  But those allegations— which reach back to Agios's founding in 2007, *id.* ¶ 9—neither reflect Dr. Thompson's current relationship to Agios nor support a finding that Dr. Thompson was participating in the Commonwealth's economic life in the timeframe relevant to this lawsuit (*i.e.*, after the 2020 Settlement Agreement).  Dr. Thompson does not hold any position in and is no longer a stakeholder in Agios.  *See* Thompson Decl. ¶¶ 9, 12-16.  Nor is his prior status as a shareholder enough to exercise jurisdiction.  *See Johnson Creative Arts, Inc. v. Wool Masters, Inc.*, 573 F. Supp. 1106, 1111 (D. Mass. 1983) (holding stock ownership insufficient to confer personal jurisdiction); *Nat'l Med. Care v. Home Med. of Am.*, No. 00-1225, 2002 Mass. Super. LEXIS 338, at *11 (Aug. 9, 2002) (dismissing defendant for lack of personal jurisdiction where plaintiff had "only established that [the defendant] owns the common stock of its Massachusetts-based subsidiary").

Dr. Thompson's alleged suit-related conduct does not constitute the transaction of business in Massachusetts.  SRT claims that Dr. Thompson "directed and caused MSK" employees to submit false information to the FDA.  *See, e.g.*, Am. Compl. ¶ 310.  That allegation (which is

inadequately pled and false[2]) concerns conduct that would have taken place at MSK in New York. *See, e.g.*, *id*. ¶ 542 (admitting "MSK is based in New York").  Likewise, SRT's allegation that Dr. Thompson somehow was involved in instructing legal counsel on positions they should take in the Delaware Litigation, *id.* ¶ 230, would have occurred from MSK's offices.  These allegations thus cannot prove Dr. Thompson attempted to participate in the Commonwealth's economy.

SRT's remaining jurisdictional allegations state in conclusory fashion that Dr. Thompson "engage[s] in business relationships with Agios Pharma, Third Rock, Leschly, and Reilly." *Id*. ¶ 51.  These allegations fail to state what this supposed "business" is and cannot satisfy the requirements for specific jurisdiction: vague allusions to unidentified "business" are not the type of specific facts that courts require before exercising jurisdiction over a non-resident.  *Mass. Sch. of Law*, 142 F.3d at 34 (In analyzing jurisdiction, "the law does not require us struthiously[3] to credit conclusory allegations or draw farfetched inferences." (internal quotation marks omitted)).

### 2. *Exercising Specific Jurisdiction Over Dr. Thompson Would Not Comport with the Due Process Clause.*

Exercising jurisdiction would also be inconsistent with the Due Process Clause.  SRT's allegations must fulfill three requirements: (1) "the claim underlying the litigation must directly arise out of, or relate to the defendant's forum-state activities"; (2) "the defendant's in-state contacts must represent a purposeful availment of the privilege of conducting activities in the forum state" and (3) "the exercise of jurisdiction must . . . be reasonable." *Foster-Miller*, 46 F.3d at 144 (internal quotation marks omitted).  Plaintiff's allegations fail on the first and second prongs.

A defendant's contacts must be related to a cause of action: "the litigation must directly arise out of, or relate to, the defendant's forum-state activities." *Id.* (internal quotation marks

---

[2] *See* Section II.C (explaining these pleading failures with respect to SRT's RICO claims).

[3] Presumably, not to put one's head in the sand, ostrich-like.

omitted).   SRT's allegations regarding Dr. Thompson's suit-related conduct occurred in New York, *see* Section I.B.1, and cannot count as "forum-state activities."   *Id.*

SRT's allegations connecting Dr. Thompson to Massachusetts do not give rise to its claims. For example, SRT alleges that Dr. Thompson is a "substantial stakeholder" of Agios, located in Cambridge, Massachusetts. Am. Compl. ¶ 51.[4]   But none of SRT's claims arises from Dr. Thompson's purported stake in Agios—they are instead based on Dr. Thompson's role at MSK.  *TargetSmart*, 366 F. Supp. 3d at 211 (requiring "the litigation itself" to be "founded directly on" the jurisdictional contacts (internal quotation marks omitted)).   SRT further alleges that Defendant Third Rock made an investment in Agios's 2008 Series A funding.  *See* Am. Compl. ¶¶ 9, 135, 164, 172.   These allegations are even weaker support for jurisdiction because they concern conduct by Third Rock and Agios—not Dr. Thompson—and cannot give rise to personal jurisdiction over him.  *Foster-Miller, Inc.*, 46 F.3d at 144.[5]

SRT also fails to establish that Dr. Thompson has purposefully availed himself of the protections of the Commonwealth.   "The purposeful availment inquiry asks whether a defendant has deliberately targeted its behavior toward the society or economy of a particular forum such that the forum should have the power to subject the defendant to judgment regarding that behavior."  *Baskin-Robbins Franchising LLC v. Alpenrose Dairy, Inc.*, 825 F.3d 28, 36 (1st Cir. 2016).   Again, the only contact SRT even arguably alleges that Dr. Thompson had with Massachusetts is his past interest in Agios, which is unrelated to the claims made here.   These ties to Agios cannot support jurisdiction via purposeful availment.

---

[4] Dr. Thompson has not held a stake in Agios since 2018.  *See* Thompson Decl. ¶ 15.
[5] SRT has not alleged any reason that piercing the corporate veil to attribute Agios Pharma's jurisdictional contacts to Dr. Thompson would be appropriate.

**C.  18 U.S.C. § 1965(b) Does Not Establish Jurisdiction Over Dr. Thompson.**

SRT claims that this Court may exercise jurisdiction over Dr. Thompson pursuant to 18 U.S.C. § 1965(b), the jurisdictional section of the RICO statute.  Am. Compl. ¶ 51.  SRT's RICO jurisdiction argument fails because SRT has failed to state a RICO claim against Dr. Thompson. SRT's dubious, generalized claims are precisely the types of RICO claims that make courts wary of applying Section 1965(b): "Because of the broad jurisdictional reach of the RICO statute, the courts should be particularly vigilant not to permit plaintiff to assert a spurious RICO claim in order to try to obtain personal jurisdiction over other defendants (or supplemental subject-matter jurisdiction over state-law claims)."  *World Depot Corp. v. Onofri*, 2017 U.S. Dist. LEXIS 198814, at \*14-15 (D. Mass. Dec. 4, 2017).  These cautionary words ring particularly true here because, as discussed below, in addition to failing to meet numerous RICO pleading requirements, SRT has not alleged how Dr. Thompson purportedly associated with, communicated with, or coordinated his behavior with other Defendants.  Any connection between Dr. Thompson and activities that occurred in this forum is therefore absent.[6]

**D.  The Court Should Not Exercise Pendent Personal Jurisdiction Over Dr. Thompson.**

To the extent that this Circuit even permits pendent jurisdiction,[7] the Court should decline to exercise it here for two reasons.  First, SRT cannot bootstrap pendent personal jurisdiction to its RICO claims because SRT has not properly pled a RICO claim or established personal jurisdiction over Dr. Thompson pursuant to the RICO statute.[8]  *See* Sections I.A-B and II.

---

[6] Plaintiff also has not alleged that "the ends of justice" require subjecting Dr. Thompson to jurisdiction in Massachusetts because an "alternative forum" for this suit exists in New York.  *See, e.g.*, *Dispensa v. Nat'l Conf. of Catholic Bishops*, 2020 U.S. Dist. LEXIS 89570, at \*24, \*28 (D.N.H. May 21, 2020).

[7] As recently as 2021, the First Circuit noted, "Our Circuit has never had occasion to address whether pendent personal jurisdiction exists at all . . . ."  *Mojtabai v. Mojtabai*, 4 F.4th 77, 88 (1st Cir. 2021).

[8] Plaintiff cannot assert pendent personal jurisdiction based on its Sherman Act claims because the Sherman Act permits "nationwide service of process for corporations, but not for individual defendants" like Dr. Thompson. *Catrone v. Ogden Suffolk Downs, Inc.*, 647 F. Supp. 850, 856 (D. Mass. 1986).

Second, it would be particularly unwise to exercise pendent personal jurisdiction over Dr. Thompson for the specific state-law claims that SRT has brought:  fraudulent inducement under New York law and violations of Massachusetts General Law chapter 93, §§ 4-5 and chapter 93A, § 11.  The District of Massachusetts has little interest in adjudicating the New York law claim against a New York resident.  And SRT's Massachusetts anti-competition and unfair business practices claims, as explained further below, have independent jurisdictional requirements that would not reach Dr. Thompson's alleged conduct because the impact of that conduct must "occur . . . primarily and predominantly within the commonwealth."  M.G.L. ch. 93, § 3; *see also* M.G.L. ch. 93A, § 11.  SRT has not alleged ***any*** action of Dr. Thompson's that "occur[ed]" in the Commonwealth.  *See* Sections I.B, IV.D, V.

## II.     All Four of Plaintiff's RICO Claims Must Be Dismissed.

SRT brings four RICO claims against Dr. Thompson pursuant to 18 U.S.C. §§ 1962(a), (b), (c), and (d).  These claims suffer from incurable pleading deficiencies:

- The claims are all time barred;[9]
- SRT fails to plead that Dr. Thompson was part of a RICO enterprise;
- SRT inadequately pleads the alleged predicate acts;
- SRT inadequately pleads a pattern of racketing activity;
- SRT inadequately pleads that its purported injuries were proximately caused by the predicate acts;
- SRT has not adequately alleged that it suffered unique injuries under Sections 1962(a) and 1962(b);
- SRT has not alleged actionable conduct under Sections 1962(a) and 1962(b); and
- SRT fails to establish that Dr. Thompson participated in a RICO conspiracy under Section 1962(d).

SRT's latest pleading demonstrates that the addition of Dr. Thompson to this action is a poorly conceived and failed attempt to salvage its defective initial RICO claims.  The predicate

---

[9] Large portions of the Amended Complaint are devoted to alleged conduct that pre-dates the 2020 Settlement Agreement that resolved substantially similar allegations.  These pre–November 2020 allegations are irrelevant to Plaintiff's RICO claims because the 2020 Settlement Agreement releases claims based on such conduct.  Dkt. 57-8, § 5.  The release covered all MSK employees and officers, including Dr. Thompson.  *Id.*

acts that SRT pins on Dr. Thompson all involve him allegedly—and vaguely—"directing" others. There are no allegations of Dr. Thompson himself taking any culpable actions. These allegations cannot suffice to maintain the claims against him.

**A. The Claims Are Time Barred.**

SRT alleges that a pattern of allegedly fraudulent conduct hampered it from bringing its TNS9 drug product to market. *See, e.g.*, Am. Compl. ¶¶ 381, 399, 415, 432. SRT has been making this same claim in one form or another as far back as 2015. *See* Dkt. 57-2, ¶¶ 62-107. Just two years later in 2017, SRT filed the New York Litigation, which likewise alleged a conspiracy aimed at preventing the TNS9 drug product from reaching the market. *See* Dkt. 57-6, ¶¶ 47-171. There is considerable overlap between SRT's claims before this Court and SRT's settled and released claims in the 2017 New York Litigation. *See* BB MTD at 2-7 ("Factual Background").

This long history requires dismissal of SRT's RICO claims because SRT failed to bring them within four years of discovering its purported injury. "[T]he Supreme Court has established a four-year statute of limitations for civil RICO actions." *Lawson v. FMR LLC*, 554 F. Supp. 3d 186, 194 (D. Mass. 2021). Those four years begin to "accrue[] to plaintiff at the time he discovered or should have discovered the injury." *Lares Grp., II v. Tobin*, 221 F.3d 41, 44 (1st Cir. 2000) (internal quotation marks omitted). SRT has been on notice since 2015 and certainly since 2017. Because the 2015 and 2017 "claims sound (at least in large part) in the same theories of fraud that form[] the basis for" SRT's current claims, RICO's four-year statute of limitations requires their dismissal. *Kelly v. Waters Corp.*, 2023 U.S. Dist. LEXIS 41390, at *10 (D. Mass. Feb. 9, 2023).

SRT identifies additional, later injuries: its "filing fees, litigation costs, [and] attorneys' fees" incurred in responding to IPR petitions: "the dismissal of the Massachusetts Litigation," Pl.'s Opp'n at 4; and that bluebird's 2021 spinoff of 2seventy has "protect[ed] Defendants from liability to SRT and disrupt[ed] any monetary judgments against bluebird," *see* Am. Compl. ¶¶ 383, 400,

416, 433.   But those supposedly new injuries cannot restart the clock.   The predicate acts contributing to the vector's alleged delayed entry into market are time barred, and a new predicate act contributing to the same injury cannot be used "as a bootstrap to recover for injuries caused by other earlier predicate acts that took place outside the limitations period."   *Klehr v. A.O. Smith Corp.*, 521 U.S. 179, 190 (1997).   Thus, all predicate acts allegedly causing SRT's injury of failing to bring the TNS9 drug product to market must be disregarded because they are untimely.   SRT has not and cannot allege a pattern of predicate acts without them.

### B.  Plaintiff Has Not Adequately Pled that Dr. Thompson Was Part of the Alleged RICO Enterprise.

SRT has not established a RICO enterprise existed or Dr. Thompson's membership in it.[10] To establish a RICO enterprise, SRT must allege facts providing "evidence of systemic linkage . . . or continuing coordination" between Dr. Thompson and the other Defendants.   *Ezell v. Lexington Ins.*, 286 F. Supp. 3d 292, 299 (D. Mass. 2017) (quoting *Libertad v. Welch*, 53 F.3d 428, 443 (1st Cir. 1995)).   The relevant factors for determining linkage or coordination include:

> (1) whether the associates have a common purpose; (2) whether there is systematic linkage, such as overlapping leadership, structured or financial ties or continuing coordination, (3) whether there is a common communication network for sharing information on a regular basis, ([4]) whether the associates hold meetings and sessions where important discussions take place, ([5]) whether the associates wear common colors, signs or insignia to make the group identifiable, and ([6]) whether the group conducted common training and instruction.

*In re Pharm. Indus. Average Wholesale Price Litig.*, 263 F. Supp. 2d 172, 182 (D. Mass. 2003) (citations omitted) (citing *Libertad*, 53 F.3d at 442-44; *United States v. Patrick*, 248 F.3d 11, 19 (1st Cir. 2001)).

---

[10] The purported RICO enterprise is the "Leschly Enterprise," which Plaintiff alleges includes "Defendants Leschly, Finer, Reilly, Thompson, Third Rock, bluebird, and 2seventy."  Am. Compl. ¶ 20.

SRT makes no effort to establish any of these factors—the Amended Complaint contains no allegations of leadership ties, a common communication network, member meetings, common colors, training, or anything else linking the Defendants as an enterprise.  Instead, SRT merely asserts that an enterprise existed.  *See* Am. Compl. ¶ 20.[11]  SRT fails as well to allege that Dr. Thompson was a member of any such enterprise.  SRT instead rests entirely on conclusory assertions that Dr. Thompson "conspired" with other Defendants.  *See, e.g.*, *id.* ¶¶ 143, 158, 260, 300. But this is insufficient because SRT makes no allegations regarding *how* Dr. Thompson supposedly conspired with the other Defendants.  There are, for example, no allegations that Dr. Thompson regularly spoke to the other Defendants, corresponded with them, or coordinated his conduct with them in any way.  *See Gov't Emples. Ins. v. Analgesic Healthcare*, 2017 U.S. Dist. LEXIS 45600, at *6 (D. Mass. Mar. 28, 2017) (dismissing RICO claim where complaint said "nothing about how the [defendants] coordinated or collaborated with each other, or even knew one another to be participants in the same scheme").

## C. Plaintiff Has Not Pled with Particularity that Dr. Thompson Committed Two Actionable Predicate Acts.

SRT's claims that Dr. Thompson engaged in predicate acts supporting its RICO claims relate to MSK's submissions to the FDA.  SRT alleges that Dr. Thompson "directed and caused MSK to submit willfully false information to the FDA by instructing" MSK employees to state on an IND Form "that the TNS9 drug product does not have FDA Orphan Drug Designation."  *See, e.g.*, Am. Compl. ¶¶ 376-380, 392-396, 408-412, 426-430.[12]  These allegations are inadequate under Rule 9(b).

---

[11] Exhibit D to the Amended Complaint relies on connections and companies that are not tied to the allegations in the Amended Complaint and provides no information beyond corporate titles.  *See* Dkt. # 42-4.

[12] Plaintiff also alleges that Dr. Thompson directed MSK's counsel to write in an email that SRT's patent infringement suit was "improper, at least, because the claims were released by the 2020 agreement."  *Id.* ¶ 231.  Plaintiff has not linked this allegation to its RICO claims.

To establish a pattern of racketeering activity, SRT must allege that "each defendant . . . committed at least two related acts of racketeering activity 'extending over long periods of time.'" *Brown v. Quest Diagnostics, LLC*, 2008 U.S. Dist. LEXIS 101678, at *5 (D. Mass. Dec. 16, 2008) (quoting *Schultz v. R.I. Hosp. Tr. Nat'l Bank, N.A.*, 94 F.3d 721, 732 (1st Cir. 1996)).  Where, as here, the racketeering activity is purported to be mail and wire fraud, "[i]t is settled law in this circuit that Fed. R. Civ. P. 9(b) . . . requires a party to plead [that] fraud with particularity." *Feinstein v. Resolution Tr. Corp.*, 942 F.2d 34, 42 (1st Cir. 1991).

SRT fails to meet that pleading standard.  The Amended Complaint does not contain any factual allegations to indicate Dr. Thompson's supposed involvement in filling out the offending IND forms.  The IND forms attached to the Amended Complaint at Exhibits I through M are not signed by Dr. Thompson and do not mention Dr. Thompson as having any role in the TNS9 development process at MSK.   SRT instead relies on the implausible assumption that Dr. Thompson, as CEO of MSK, would have controlled the contents of these specific submissions to the FDA.  As "one of the nation's leading cancer center[s]," MSK is a major and complex medical facility that includes both clinical and research operations.  *See* Dkt. 42-5.  And as SRT has alleged in previous lawsuits, MSK's annual revenues are in the billions of dollars.  Dkt. 57-2, ¶ 10; Dkt. 57-6, ¶ 5.  It is simply implausible, considering the scope of the responsibility that falls on the shoulders of the CEO of such an organization, that Dr. Thompson would be involved in a task so ministerial as filling out IND Forms for the TNS9 drug product.  Just alleging that Dr. Thompson "caused" MSK employees to falsify documents cannot carry SRT's burden to make well-pled factual allegations establishing his participation in the supposed predicate acts.  *See, e.g.*, *Doane v. Benefytt Techs., Inc.*, 2023 U.S. Dist. LEXIS 40478, at *30-31 (D. Mass. Mar. 10, 2023) (dismissing complaint that claimed CEO "personally participated in and authorized the actionable

conduct" because the "complaint contain[ed] no facts suggesting that [the defendant] personally directed, authorized, or even had knowledge of the" actionable conduct).

SRT has also failed to allege that Dr. Thompson committed the alleged predicate acts "with the specific intent to defraud." *Sanchez v. Triple-S Mgmt., Corp.*, 492 F.3d 1, 9 (1st Cir. 2007). Instead, SRT has again relied on conclusory language to allege that the statements in the TNS9 IND Form were "willfully false" and Dr. Thompson acted "with the intent to harm SRT's business or property." *See, e.g.*, Am. Compl. ¶¶ 311, 376-380, 392-396, 408-412, 426-430.  Merely stating a defendant's state of mind cannot satisfy Rule 9(b).  *See, e.g.*, *Montalvo v. LT's Benjamin Records, Inc.*, 56 F. Supp. 3d 121, 138-39 (D.P.R. 2014) (dismissing complaint's allegations as "patently insufficient" where "Plaintiffs fail[ed] to allege any specific facts that allow this court to infer that Defendants entered into the relevant contracts with the knowledge of material falsity"). Nor has SRT deigned to identify any facts that support an inference that the forms were willfully false as opposed to simply improperly filled out due to mistake or clerical error. *See In Transit Sales, Inc. v. Banco Popular de P.R., Inc.*, 2001 U.S. Dist. LEXIS 24432, at *20-21 (D.P.R. Dec. 27, 2001) ("Where . . . a defendant has no rational economic motive to defraud, or to conspire to defraud, and its conduct is consistent with other equally plausible explanations, the conduct would not give rise to an inference of fraud, scheme, or conspiracy."); *Natale v. Espy Corp.*, 2 F. Supp. 3d 93, 101 (D. Mass. 2014) (dismissing RICO claim where plaintiff "fail[ed] to present facts suggesting that Defendants had any specific intent to defraud").

It is unsurprising SRT has failed to allege Dr. Thompson had the intent to defraud because no one, including the FDA, would be defrauded here.  The FDA confers orphan drug status on candidates. *See, e.g.*, U.S. Food & Drug Admin., *Designating an Orphan Product: Drugs and*

*Biological Products* ("FDA has authority to grant orphan drug designation to a drug or biological product").[13]  It is unreasonable to infer intent to defraud the FDA regarding its own designation.

Without well-pled factual allegations regarding Dr. Thompson's intent, SRT is not entitled to an inference that Dr. Thompson had the requisite fraudulent state of mind, and the claims against him must be dismissed.  *See McEvoy Travel Bureau, Inc. v. Heritage Travel, Inc.*, 904 F.2d 786, 790 (1st Cir. 1990) (affirming dismissal of complaint where plaintiff did not plead defendants "engaged in a scheme to defraud *with the specific intent to defraud*" (emphasis added)).

### D.  Plaintiff Fails to Show a Pattern of Racketeering Activity.

SRT must establish that the alleged predicate acts "are related, *and* that they amount to or pose a threat of continued criminal activity." *Giuliano v. Fulton*, 399 F.3d 381, 386 (1st Cir. 2005) (emphasis in original) (quoting *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 239 (1989)).  The predicate acts must constitute either: (1) a closed-ended pattern of racketeering, with "a series of related predicates extending over a substantial period of time that amount to a threat of continued criminal activity," *id.* at 387 (internal quotation marks omitted); or (2) an open-ended pattern of racketeering, where the "racketeering acts themselves include a specific threat of repetition extending indefinitely into the future or are part of an ongoing entity's regular way of doing business," *id.* (internal quotation marks omitted).[14]  SRT has failed to allege either pattern.

In evaluating closed-ended continuity, courts look to whether a plaintiff has alleged sufficient "indicators of continuity" or whether "a defendant has been involved in only one scheme with a singular objective and a closed group of targeted victims." *Efron*, 223 F.3d at 18 (internal

---

[13]   https://www.fda.gov/industry/medical-products-rare-diseases-and-conditions/designating-orphan-product-drugs-and-biological-products (last visited Sept. 7, 2023).

[14]  The First Circuit has further cautioned that "RICO claims premised on mail or wire fraud must be particularly scrutinized because of the relative ease with which a plaintiff may mold a RICO pattern from allegations that, upon closer scrutiny, do not support it." *Efron v. Embassy Suites (P.R.), Inc.*, 223 F.3d 12, 19 (1st Cir. 2000).

quotation marks omitted).  The First Circuit has "consistently declined to find continuity where the RICO claim concerns a single, narrow scheme targeting few victims." *Giuliano*, 399 F.3d at 390.  That is the case here:  SRT alleges that the predicate acts were entirely aimed at preventing SRT from bringing the TNS9 vector to market.  *See, e.g.*, Am. Compl. ¶ 432.  The alleged racketeering activity thus has a single goal—preventing the TNS9 vector from reaching market— and a single victim—SRT.  Without allegations "that anything broader or more far reaching" has been attempted, SRT cannot allege closed-ended continuity.  *Giuliano*, 399 F.3d at 390.

Nor can SRT establish closed-ended continuity "by examining only the number of alleged predicate acts and duration of the alleged racketeering activity."  *Id.* at 387.  Even assuming that the predicate acts were viable, SRT has alleged just a handful of racketeering acts—consisting of the execution of the 2020 Settlement Agreement, the bluebird spinoff, and FDA filings—that took place over less than three years.  *See, e.g.*, Am. Compl. ¶¶ 424-430.  The First Circuit has required far more extensive allegations of racketeering over longer periods of time for a pattern to presumptively qualify as closed ended.  *Compare Fleet Credit Corp. v. Sion*, 893 F.2d 441, 447 (1st Cir. 1990) (holding closed-ended continuity satisfied where plaintiff alleged "95 fraudulent mailings were sent over a four and one-half year period"), *with Efron*, 223 F.3d at 18 (finding 17 predicate acts and "twenty-one month time frame" were "not so long a period nor are there so many predicate acts" to find closed-ended continuity automatically satisfied).

Open-ended continuity "necessitates a showing that 'the racketeering acts themselves include a specific threat of repetition extending indefinitely into the future [or] . . . are part of an ongoing entity's regular way of doing business.'"  *Feinstein*, 942 F.2d at 45 (internal quotation marks omitted).  There must be a "specific threat" that Defendants will engage in the alleged conduct in "other similar business settings" or that they will employ the alleged conduct

"indefinitely in their future business operations." *Id.* (internal quotation marks omitted).  SRT has not made any allegations of such a "specific threat" and thus cannot satisfy continuity.  *See id.* at 47 (affirming dismissal where plaintiffs did "not assert, or even suggest, that the behavior will likely be repeated or that the actions complained of constituted the regular way" the defendants "conducted their ongoing business").

### E.  The Predicate Acts Did Not Proximately Cause Plaintiff's Alleged Injury.

SRT's alleged injuries stem from its failure to commercially launch the TNS9 drug product. *See, e.g.*, Am. Compl. ¶ 381.  Dr. Thompson's alleged racketeering activity of directing MSK employees to improperly fill out TNS9 IND forms did not lead directly to this claimed injury.

SRT must establish that the predicate racketeering acts proximately caused its injury: "[T]he central question [a court] must ask is whether the alleged violation led directly to the plaintiff's injuries." *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 457 (2006) (requiring proximate causation); *see Racecourse v. Wynn Resorts*, 990 F.3d 31, 35 (1st Cir. 2021).  Injuries that are too remote or that "could have resulted from factors other than [the] alleged acts of fraud" do not satisfy the proximate cause requirement. *Anza*, 547 U.S. at 459.

SRT's inability to launch the TNS9 drug product does not in any way depend on whether the TNS9 IND properly reflected the TNS9 product's orphan drug designation.  An application to market a drug product does not turn on whether the drug product has received an orphan drug designation, and the process of applying for market approval proceeds independently from the orphan drug designation process.  The FDA has explicitly stated as much: "Orphan drug designation is a separate process from seeking approval or licensing."  U.S. Food & Drug Admin., Designating an Orphan Product: Drugs and Biological Products.[15]  The FDA has also emphasized

---

[15]   https://www.fda.gov/industry/medical-products-rare-diseases-and-conditions/designating-orphan-product-drugs-and-biological-products (last visited Sept. 7, 2023).

that merely obtaining orphan drug designation does not provide any "certainty that the [drug's] marketing application will be approved promptly." *See* 76 Fed. Reg. 66868, 68472.

Because these two processes—orphan drug status and market approval—proceed on separate tracks, SRT's lack of market approval depends on a separate FDA decision-making process that is not implicated by the orphan drug designation listed on the TNS9 IND. SRT's injury is therefore impermissibly "purely contingent" on FDA's independent decision-making. *Racecourse*, 990 F.3d at 36. As a matter of law, SRT cannot show that its injury could not "have resulted from factors other than [Defendants'] alleged acts of fraud," such as FDA's independent decision-making processes. *Anza*, 547 U.S. at 549. Dr. Thompson's alleged conduct concerning the orphan drug designation on the TNS9 IND therefore could not proximately cause SRT's injury.

### F. Plaintiff Has Not Alleged Distinct Section 1962(a) and 1962(b) Injuries.

To bring claims under Sections 1962(a) and 1962(b), SRT must allege additional injuries that were not caused by the purported underlying racketeering activity. Section 1962(a), which penalizes investing funds obtained from racketeering activity, requires that SRT establish an "injury flowing from the investment of the proceeds [the enterprise] received from the alleged mail and wire fraud" that is "distinct from the injury arising from the racketeering activity itself." *Rivera v. P.R. Elec. Power Auth.*, 2012 U.S. Dist. LEXIS 201390, at *12 (D.P.R. Sept. 25, 2022). Section 1962(b), which penalizes the acquisition or maintenance of "any interest in or control of any enterprise" that engages in interstate or foreign commerce, requires that SRT "allege that it was injured 'by reason of [the defendant's] acquisition or maintenance of control of an enterprise through a pattern of racketeering activity.'" *P.R. Med. Emergency Grp., Inc v. Iglesia Episcopal Puertorriquena, Inc.*, 118 F. Supp. 3d 447, 459 (D.P.R. 2015) (quoting *Compagnie de Reassurance D'Ile de France v. New England Reinsurance Corp.*, 57 F.3d 56, 92 (1st Cir. 1995)).

SRT fails to allege injuries distinct from its Section 1962(c) injuries. *Compare* Am. Compl. ¶¶ 382-383 (injuries claimed under Section 1962(c)), *with id*. ¶¶ 399-400 (injuries claimed under Section 1962(a)), *with id*. ¶¶ 415-416 (injuries claimed under Section 1962(b)). This defect alone requires dismissal of SRT's Section 1962(a) and 1962(b) claims. *See, e.g.*, *Douglas v. Lalumiere*, 2021 U.S. Dist. LEXIS 186911, at *13 (D. Me. Sept. 29, 2021) (dismissing suit where "the Complaint fail[ed] to identify an investment injury distinct from the harm caused by the predicate fraud"); *Lu v. Canton Corp.*, 2015 U.S. Dist. LEXIS 67427, at *14 (D. Mass. May 13, 2015) (Burroughs, *J.*) (dismissing 1962(b) claim where "Plaintiff [did] not set forth any additional facts suggesting that he was harmed specifically by [defendant's] acquisition or maintenance of control over [certain] companies, or that [defendant's] alleged control was acquired or maintained through a pattern of racketeering activity"); *Rivera*, 2012 U.S. Dist. LEXIS 201390, at *13 (dismissing claim where injuries were not distinct from injuries from alleged racketeering activity).

To the extent that SRT tries to allege an "addition[al]" investment injury from the 2seventy spinoff, *e.g.*, Am. Compl. ¶ 400, this attempt fails. First, this "injury" is a direct result of one of the predicate acts that SRT alleges under Section 1962(c). SRT's inability to collect monetary judgments from bluebird would be the natural consequence of SRT's claim that "Defendants, in furtherance of the activities, purpose, and scheme of the Leschly Enterprise, fraudulently created and spun off 2seventy to deplete the assets of bluebird in order to prevent SRT from recovering any monetary judgments award [sic] against bluebird, which involved the use of interstate wires." *Id*. ¶ 375. Because SRT's injury results from a predicate act and not the subsequent investment of racketeering funds, it is insufficient as a matter of law. *See, e.g.*, *Douglas*, 2021 U.S. Dist. LEXIS 186911, at *13 (dismissing Section 1962(a) claim for failure to state an investment injury where

17

plaintiff "assert[ed] that the proceeds were reinvested in the enterprise and furthered the alleged fraud"); *see also* BB MTD at 18 (noting a spinoff is not an investment).

Second, SRT has not alleged that it has been unable to collect any judgment against bluebird, making this supposed injury theoretical.  *See Circiello v. Alfano*, 612 F. Supp. 2d 111, 114 (D. Mass. 2009) (holding "a RICO damages claim may not be based on mere speculation").  A theoretical injury cannot sustain a Section 1962(a) claim.

### G.  Plaintiff Has Not Alleged Actionable Conduct Under Sections 1962(a) and (b).

SRT's Section 1962(a) claim must fail because SRT has not pled facts establishing that Dr. Thompson received any income from the purported racketeering activity or that he invested any such income in an interstate or foreign enterprise.  Section 1962(a) makes it unlawful for "any person who has received income from racketeering [to] invest, directly or indirectly, any part of such income, or the proceeds of such income" in an interstate enterprise.  *Fundacion Segarra-Boerman E Hijos v. Martinez-Alvarez*, 2019 U.S. Dist. LEXIS 241136, at *49 (D.P.R. Sept. 30, 2019) (quoting 18 U.S.C. § 1962(a)); *see also Compagnie de Reassurance*, 57 F.3d at 91.

SRT does not allege facts supporting a reasonable inference that Dr. Thompson, whom SRT does not allege is affiliated with bluebird or 2seventy, received any income from the supposed fraudulent acts, nor that he invested any such income in an interstate enterprise.[16]  Dr. Thompson is not alleged to have any financial or employment relationship with bluebird or 2seventy and therefore would have no reason to receive income from bluebird or 2seventy.  Not having received any income, Dr. Thompson cannot have invested any such income into an interstate enterprise.

---

[16] The closest Plaintiff comes to alleging Dr. Thompson received income from the alleged racketeering activity is to allege in conclusory fashion that "[e]ach Defendant received income and/or investments that were generated as a direct or proximate result of Defendants' ongoing fraud and scheme," Am. Compl. ¶ 293, and that "[e]ach individual Defendant currently owns shares of stock in 2seventy," *id.* ¶ 294; *see also id.* ¶¶ 296, 298-299.  These allegations, however, are substantially copied and pasted from the original Complaint and do not reflect the addition of Dr. Thompson as a Defendant.  *Compare* Compl. ¶¶ 257-262, *with* Am. Compl. ¶¶ 293-299.

The Section 1962(b) claim must fail because SRT does not allege facts stating that Dr. Thompson "'acquir[ed]' or 'maintain[ed]' an interest in or control of an enterprise." *Lu*, 2015 U.S. Dist. LEXIS 67427, at *14; *see also* BB MTD at 19. SRT alleges merely that "Defendants used the pattern of racketeering to acquire and maintain, directly and indirectly, an interest in and control of the Leschly Enterprise" and "to acquire and maintain interest in and control over the BB305 Vector operations, bluebird, and 2seventy." Am. Compl. ¶ 413. SRT does not explain how the predicate acts permitted Dr. Thompson to acquire and maintain such control, and the Section 1962(b) claim therefore must be dismissed. *See Lerner v. Coleman*, 485 F. Supp. 3d 319, 331-32 (D. Mass. 2020) (dismissing Section 1962(b) claim that failed to allege how "influence derived from the[] racketeering enterprise" enabled acquisition of control over enterprise).

### H.  The RICO Conspiracy Claim Against Dr. Thompson Must Be Dismissed.

SRT's conspiracy claim fails because it has failed to allege an underlying RICO violation. *See Efron*, 223 F.3d at 21; *see* Sections II.A-G. SRT also has not established that Dr. Thompson agreed to participate in a RICO conspiracy. "In order to prove a RICO conspiracy, the plaintiff must show that the defendant knowingly joined the conspiracy, agreeing with one or more coconspirators to further the endeavor, which, if completed, would satisfy all the elements of a substantive RICO offense." *Douglas v. Hirson*, 63 F.4th 49, 55 (1st Cir. 2023) (alterations omitted) (internal quotation marks omitted) (quoting *United States v. Velazquez-Fontanez*, 6 F.4th 205, 212 (1st Cir. 2021)). "Neither mere knowledge of, nor association with, the alleged conspiracy, however, makes [a defendant] a conspirator." *Crimson Galeria Ltd. P'ship v. Healthy Pharms, Inc.*, 337 F. Supp. 3d 20, 42 (D. Mass. 2018) (Burroughs, *J.*). SRT "must make factual allegations regarding . . . an agreement to violate RICO." *McLarnon v. United States*, 2009 U.S. Dist. LEXIS 43781, at *14 (D. Mass. May 19, 2009).

SRT fails to allege any facts supporting an inference that Dr. Thompson agreed to further a conspiracy.   The closest SRT comes is to allege without any substantiating facts that "[Dr.] Thompson, Leschly, and bluebird had a secret side-agreement to undermine the express terms of the Release" in the 2020 Settlement Agreement.  Am. Compl. ¶ 247; *see also id.* ¶ 374 (alleging fraudulent inducement to the 2020 Settlement Agreement as a predicate act).  This "secret side-agreement" is neither pled with particularity, nor actionable as a predicate act of mail or wire fraud.  *See* BB MTD at 10.  The Amended Complaint does not state what Dr. Thompson allegedly represented to SRT or even explain why Dr. Thompson would have had any role in communicating with SRT regarding the 2020 Settlement Agreement.  SRT has given this Court no reasonable basis to infer that a "secret side-agreement" existed.

SRT otherwise relies on conclusory allegations that "[Dr.] Thompson joined in the efforts" of the other Defendants, Am. Compl. ¶ 124, or that he "entered into and engaged in a conspiracy and fraud," *id.* ¶ 143; *see also id.* ¶ 158 (stating Defendants and Dr. Thompson "conspired and engaged in a scheme").  These assertions do not contain the "factual allegations" necessary to substantiate that Dr. Thompson "entered an agreement to violate RICO."  *Gott v. Simpson*, 745 F. Supp. 765, 772 (D. Me. 1990).  Mere allegations that a defendant "entered into an agreement," without more, are insufficient to establish that the defendant joined an enterprise.  *See, e.g.*, *Jakuttis v. Town of Dracut*, 2023 U.S. Dist. LEXIS 24554, at *82 (D. Mass. Feb. 14, 2023).

## III.   Plaintiff's Fraudulent Inducement Claim Must Be Dismissed.

SRT released Dr. Thompson and MSK from all claims relating to this dispute when it executed the 2020 Settlement Agreement.[17]  SRT now alleges the Release was obtained through fraudulent inducement, Am. Compl. pp. 113-15, and seeks to: (i) recover damages, *id.* ¶¶ 552-554,

---

[17] The 2020 Settlement Agreement includes both a mutual release provision ("Release") and a dispute resolution and arbitration provision ("Dispute Resolution/Arbitration Agreement").  *See* Dkt. 57-8, ¶¶ 5, 7.

and (ii) void the Release, *id.* ¶ 546. SRT makes this claim despite no allegations that Dr. Thompson himself made any representations to it during settlement negotiations. This claim should be dismissed based on the Release's language and SRT's ratification of the 2020 Settlement Agreement. In the alternative, the court should require SRT to arbitrate this claim.

### A. The 2020 Settlement Agreement and Release Preclude the Claim.

SRT's fraudulent inducement claim has no merit. The subject matter of the claim is covered by the Release, and no basis for an exception exists under New York law.

### 1. The Claims and Parties Are Covered by the Release.

The 2020 Settlement Agreement releases Dr. Thompson and MSK from "all claims" relating to or arising out the subject matter of the underlying dispute. *See* Dkt. 57-8, ¶ 5. The Release includes a mutual general release that encompasses, "without limitation, all claims, both at law and in equity, accrued or unaccrued, known or unknown, suspected or unsuspected that relate to or arise out of (i) the 2005 Agreement, (ii) the 2011 Agreement, [&] (iii) the Dispute." *Id.* By its own admission, SRT's fraud claim relates to or arises out of the settlement of the 2005 Agreement and the 2011 Agreement. Am. Compl. ¶¶ 248-252, 254. The fraud claim also concerns the validity of the 2020 Settlement Agreement, a subject expressly contemplated by and covered by the terms of the 2020 Settlement Agreement. *See id.* ¶ 255. Dr. Thompson is one of the released parties in Agreement. Dkt. 57-8, ¶ 5 ("release . . . MSK and all of MSK's past and present . . . directors, officers, representatives  .  .  . , employees and attorneys (collectively the 'MSK Releasees')"). As the former CEO of MSK, Dr. Thompson qualifies as an MSK Releasee, together

with MSK as an institution.[18]  SRT released any potential claim against Dr. Thompson in 2020 by the plain terms of the Release.[19]

### 2. *The Release is Enforceable.*

Mutual general releases are enforceable under New York law, even where a plaintiff seeks to invalidate a prior release by alleging that the release was the product of fraud.  A release of claims signed by the parties is valid and enforceable to bar future claims brought by one of the parties, so long as the dispute is encompassed by the subject matter of the prior release.  *See DIRECTV Grp., Inc. v. Darlene Invs., LLC*, 2006 U.S. Dist. LEXIS 69129, *20-21 (S.D.N.Y. Sept. 27, 2006) (finding that a mutual release barred fraudulent inducement claim arising from the same subject matter).  General mutual releases that cover all future claims based on any theory of recovery, whether known or unknown at the time of signing, are similarly valid and enforceable. *See e.g.*, *Veroblue Farms USA Inc. v. Canaccord Genuity LLC*, 2021 U.S. Dist. LEXIS 166294, at *18 (S.D.N.Y. Sept. 1, 2021) (describing enforceability of releases against fraud claims as "well-established New York law").  Courts will even enforce a release where a plaintiff alleges that the counterparty failed to disclose relevant facts prior to the signing or execution of the release.  *Id.* ("Put simply, a signatory need not disclose all facts to make a release valid."); *see also Tyson v. Cayton*, 784 F. Supp. 69, 75 (S.D.N.Y. 1992) (enforcing release provision even where defendant allegedly violated his fiduciary duties of disclosure toward plaintiff).  Here, the Release covered all claims and disputes, including claims where SRT alleges that it did not possess all relevant and material information in the negotiation leading up to the 2020 Settlement Agreement.

---

[18] Dr. Thompson served as President and CEO of MSK from 2010 to 2022. Am. Compl. ¶¶ 11, 186.
[19] Per its plain language, the Amended Complaint acknowledges the validity of the Release vis-à-vis Dr. Thompson, as it does not even allege that the Release is void as to any Defendants other than "bluebird and related entities." *See* Am. Compl. ¶ 546.

Allegations that a release agreement was itself the product of fraud do not change this calculus—courts have explicitly rejected this approach under the *Bellefonte* Rule. *See Bellefonte Re Ins. v. Argonaut Ins.*, 757 F.2d 523 (2d Cir. 1985) (citing *Alleghany Corp. v. Kirby*, 333 F.2d 327 (2d Cir. 1964)); *Nycal Corp. v. Inoco P.L.C.*, 988 F. Supp. 296, 306 (S.D.N.Y. 1997) ("*Alleghany, Bellefonte*, and their progeny compel the conclusion that [Plaintiff] cannot avoid the preclusive impact of the Settlement Agreement."); *Scalercio-Isenberg v. Goldman Sachs Mortg. Co.*, 2022 U.S. Dist. LEXIS 142310, at *26 (S.D.N.Y. Aug. 9, 2022) ("[C]onclusory allegations of fraudulent inducement are insufficient to overcome a release's unambiguous language." (internal quotation marks omitted)).

### 3. SRT Fails to Allege Fraudulent Misrepresentation by Dr. Thompson.

SRT fails to allege that Dr. Thompson himself made any representations in connection with the Settlement.[20]  Allegations of fraud must be pled with particularity, requiring identification of, at a minimum, (i) the statements or omissions that were fraudulent, (ii) the speaker, (iii) when and where those statements were made, and (iv) an explanation of why those statements were fraudulent. *See Miller v. Holtzbrinck Publishers, LLC*, 2009 U.S. Dist. LEXIS 18973, at *8 (S.D.N.Y. Mar. 3, 2009).  SRT alleges none of these required elements.  SRT never identifies a particular statement specifically made by Dr. Thompson, the time or place of any such statement or omission, nor any explanation as to why the statements or omissions were fraudulent.

SRT also cannot establish reasonable reliance on any statements or omissions—another essential element of a fraud claim under New York law.  Any such reliance would not have been reasonable given (i) the parties negotiated and agreed to a merger clause in the 2020 Settlement Agreement[21] in an arms-length transaction, advised by counsel, and (ii) the contentious and

---

[20] This is because Dr. Thompson was not involved in any of the settlement negotiations at all.
[21] *See* Dkt. 57-8, ¶ 10 ("Entire Agreement.").

adversarial history between the parties.  *See Logfret, Inc. v. Gerber Fin., Inc.*, 559 F. Supp. 3d 348, 366 (S.D.N.Y. 2021) (reliance on pre-contractual representations not reasonable when the parties negotiated and executed a contract, including a merger clause); *Sands Harbor Marina Corp. v. USI Ins. Serv. Nat'l, Inc.*, 586 F. Supp. 3d 163, 174 (E.D.N.Y. 2022) (blind reliance on extracontractual representations unreasonable where parties had a contentious history).[22]

### B.  SRT Has Ratified the 2020 Settlement Agreement.

The fraudulent misrepresentation claim fails because SRT has ratified the 2020 Settlement Agreement by accepting compensation under its terms.  SRT cannot retain the benefits of that agreement while seeking to invalidate some of its terms by claiming fraudulent inducement.  *See Dantas v. Citigroup, Inc.*, 779 F. App'x 16, 20 (2d Cir. 2019) ("New York law does not permit a plaintiff to circumvent a release agreement by using a released fraud claim to attack the validity of the release and then assert that very fraud claim for damages." (citing *Centro Empresarial Cempresa S.A. v. Am. Móvil, S.A.B. de C.V.*, 17 N.Y.3d 269, 278 (N.Y. 2011))); *see also Cater v. New York*, 2019 U.S. Dist. LEXIS 17780, at *15 (S.D.N.Y. Jan. 30, 2019) (noting that the "Plaintiff cannot have it both ways" by retaining the benefits while avoiding obligations under a prior settlement agreement).

### C.  SRT's Claim Concerning the 2020 Settlement Agreement Should Be Referred to Arbitration.

To the extent that the Court needs to address the substance of this claim, it should be referred to arbitration.  The language of the 2020 Settlement Agreement is unambiguous; under its terms, the parties decided to arbitrate "any dispute concerning this Confidential Settlement

---

[22] SRT has failed to identify any damages that it suffered as a result of Dr. Thompson's alleged statements or omissions, resting instead on conclusory statements of damages suffered to be determined at trial.  *See* Am. Compl. ¶ 257.  Courts dismiss fraud claims with similarly vague and conclusory pleadings of alleged damages suffered by plaintiffs.  *See, e.g.*, *Nasik Breeding & Research Farm Ltd. v. Merck & Co.*, 165 F. Supp. 2d 514, 531-33 (S.D.N.Y. 2001).

Agreement, its construction, or its actual or alleged breach."  *See* Dkt. 57-8 ¶ 7 ("Dispute
Resolution.").  The current fraud claim qualifies as "any dispute" concerning the 2020 Settlement
Agreement and falls within the broad language of the arbitration clause.  *See* Am. Compl. ¶ 2; *see
also id*. ¶¶ 17, 22, 247-250, 255, 258, 260 (describing alleged fraudulent inducement in negotiation
and signing of 2020 Settlement Agreement).  As a result, this Court must dismiss the claim, as
such matters must be decided by the arbitrator.

    Both federal and New York law support this result.  The Federal Arbitration Act, 9 U.S.C.
§ 1 *et seq*, does not allow a federal court to consider claims of fraud in the inducement of a contract
containing a valid arbitration clause.  *Ipcon Collections LLC v. Costco Wholesale Corp.*, 698 F.3d
58, 62 (2d Cir. 2012) (upholding dismissal of fraudulent inducement claims to effectuate contract's
arbitration clause); *ACE Capital Re Overseas Ltd. v. Cent. United Life Ins.*, 307 F.3d 24, 29 (2d
Cir. 2002) ("It is well settled that a claim or defense of fraudulent inducement, when it challenges
generally the enforceability of a contract containing an arbitration clause rather than specifically
the arbitration clause itself, may be subject to arbitration.").  Referral to arbitration is required
where, as here, an arbitration agreement is broadly worded and applies to "any disputes"
concerning the underlying contract.  *See, e.g.*, *Morelli v. Alters*, 2020 U.S. Dist. LEXIS 47351, at
*24 (S.D.N.Y. Mar. 18, 2020) (finding that "any dispute" covered fraudulent inducement claims).

## IV.  Plaintiff's Federal and State Antitrust Claims Must Be Dismissed.

    SRT brings six claims against Dr. Thompson under the Sherman Antitrust Act and Clayton
Act, 15 U.S.C. §§ 1, 2, 15 and 26 (the "Federal Antitrust Claims") and two claims against
Dr. Thompson under M.G.L. ch. 93, § 4  and § 5 (the "Massachusetts Antitrust Claims") (together,
the "Antitrust Claims").   The Antitrust Claims suffer from several pleading deficiencies and
should be dismissed.

**A. SRT Has Failed to Allege Facts Sufficient to Support Its Conspiracy Claims.**

SRT's claims under Section 1 of the Sherman Act and conspiracy claims under Section 2 of the Sherman Act fail because SRT has not alleged a plausible agreement involving Dr. Thompson, nor has it alleged any conduct by Dr. Thompson that supports an inference of a conspiracy. The hallmark of a valid Section 1 claim is the existence of a "contract, combination . . . or conspiracy in restraint of trade." 15 U.S.C. § 1. The standard for proving a conspiracy under Section 2 of the Sherman Act is the same standard used to prove a conspiracy under Section 1. *Paladin Assocs. v. Mont. Power Co.*, 97 F. Supp. 2d 1013, 1039 (D. Mt. 2000), *aff'd*, 328 F.3d 1145 (9th Cir. 2003). To plead such a claim, a plaintiff must at minimum allege a plausible agreement, whether tacit or express. *White v. R.M. Packer Co.*, 635 F.3d 571, 571 (1st Cir. 2011) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 553 (2007)). This must include "the general contours of when an agreement was made, supporting those allegations with a context that tends to make said agreement plausible." *Evergreen Partnering Grp., Inc. v. Pactiv Corp.*, 720 F.3d 33, 46 (1st Cir. 2013). Mere allegations of parallel conduct that is possibly anticompetitive, without any suggestion of an agreement to engage in such conduct, are insufficient. *Twombly*, 550 U.S. at 556 ("[A]n allegation of parallel conduct and a bare assertion of conspiracy will not suffice."). SRT has failed to plead factual allegations of the existence of any agreement between Dr. Thompson and Defendants or any evidence that raises a suggestion of such an agreement.

*1. SRT Does Not Allege Any Evidence of an Agreement Involving Dr. Thompson.*

SRT's allegations of a "secret agreement" between Dr. Thompson and the remaining defendants are conclusory and inadequate. *See id.* at 564 ("Although in form a few stray statements speak directly of agreement, on fair reading these are merely legal conclusions resting on the prior allegations."); Am. Compl. ¶ 251. The Amended Complaint refers to the supposed "agreement" involving Dr. Thompson in quotation marks. *See, e.g.*, Am. Compl. ¶ 525 ("The Defendants . . .

formed an 'agreement' with MSK through Thompson[]"); ¶ 537 ("Defendants' lentiviral vector 'agreement' unreasonably restrains trade. . . . . Defendants' 'agreement' was an 'agreement not to compete'"); ¶ 539 (". . . the anticompetitive 'agreement' between the Leschly Arm and the Thompson Arm . . . ."). Nowhere in the Amended Complaint does SRT allege with any detail the contours of this alleged "agreement," including its timing or any plausible basis for Dr. Thompson's interest in pursuing such an agreement. As the Supreme Court held in *Twombly,* "a conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality." *Twombly*, 550 U.S. at 557; *see also DM Research, Inc. v. Coll. of Am. Pathologists*, 170 F.3d 53, 56 (1st Cir. 1999) ("[T]erms like 'conspiracy,' or even 'agreement,' are border-line: they might well be sufficient in conjunction with a more specific allegation—for example, identifying a written agreement or even a basis for inferring a tacit agreement, . . . but a court is not required to accept such terms as a sufficient basis for a complaint.").

> 2. *SRT Does Not Allege Any Conduct by Dr. Thompson that Supports an Inference of a Conspiracy.*

SRT next attempts to infer such an agreement through allegations of supposed "parallel conduct" of Dr. Thompson and the other Defendants. Am. Compl. ¶ 530. To plead an inferred agreement through parallel conduct, plaintiffs must allege additional facts that tend to exclude independent self-interested conduct as an explanation for defendants' parallel behavior. *Twombly,* 550 U.S. at 553 (citing *Theatre Enters., Inc. v. Paramount Film Distributing Corp.*, 346 U.S. 537, 540-41 (1954)); *see also Int'l Ass'n of Machinists & Aero. Workers v. Verso Corp.*, 153 F. Supp. 3d 419, 436-37 (D. Me. 2015) ("Turning to parallel conduct, . . . the claim, which is full of adjectives but short on facts, runs against the *Twombly* Court's admonition that a mere allegation of conspiratorial parallel conduct is insufficient to state an antitrust claim absent 'facts adequate to show illegality.'").

27

The only "parallel conduct" SRT identifies in support of its Antitrust Claims is "the Leschly Arm's decision to launch the BB305 drug product and the Thompson Arm's sabotage and delay of the TNS9 drug product."  Am. Compl. ¶ 530.  As an initial matter, the timing of SRT's allegations is hardly "parallel": in fact, SRT claims that the BB305 product launched in August 2022, while Dr. Thompson's supposed "sabotage" —regulatory submissions over which he had no oversight or involvement, *see* Section II.C. —took place between January 2021 and May 2023. Am. Compl. ¶¶ 300-318; *cf. Evergreen Partnering Grp.*, 720 F.3d at 47-48 (denying motion to dismiss antitrust claim where plaintiff alleged that an agreement was made at a particular meeting after which certain parallel conduct among Defendants ensued immediately thereafter).  Even taken as true (which they are not), these allegations do not establish plausible grounds upon which to infer the existence of an agreement.

Nor do SRT's allegations regarding Dr. Thompson's purported "lack of economic justification" for his conduct suggest the existence of an agreement.  *See* Am. Compl. ¶ 535.  In the Amended Complaint, SRT alleges that Dr. Thompson "shelved" the competing TNS9 drug product in some unspecified way contrary to MSK's interests.  *Id*.  Yet SRT does not allege that MSK (or Dr. Thompson himself) has a financial interest in *any* of the drug products at issue in this case, because it does not.  Thus, SRT's claim that Dr. Thompson, as a representative of MSK, and the other Defendants represent "two separate groups with competing drug products" is baseless and provides no circumstantial evidence of any agreement between them.  *Id*. ¶ 526; *see also Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 596-97 (1986) (a Section 1 claim cannot survive if there is "no rational economic motive to conspire").[23]

---

[23] SRT's vague references to alleged "changes to regular business practices," Am. Compl. ¶ 536, with no explanation as to what business practices Dr. Thompson purportedly deviated from, when he did so, or how, suffer from the same evidentiary defects.

**B.  SRT Lacks Antitrust Standing to Sue Dr Thompson.**

SRT's Antitrust Claims against Dr. Thompson must be dismissed because SRT lacks standing.  The Supreme Court has set forth a six-factor test to determine whether a plaintiff has standing to bring an antitrust action:

> (1) the causal connection between the alleged antitrust violation and harm to the plaintiff; (2) an improper motive; (3) the nature of the plaintiff's alleged injury and whether the injury was of a type that Congress sought to redress with the antitrust laws ('antitrust injury'); (4) the directness with which the alleged market restraint caused the asserted injury; (5) the speculative nature of the damages; and (6) the risk of duplicative recovery or complex apportionment of damages.

*RSA Media, Inc. v. Media Grp., Inc.*, 260 F.3d 10, 14 (1st Cir. 2001) (quoting *Serpa Corp. v. McWane, Inc.,* 199 F.3d 6, 10 (1st Cir. 1999)).  This Circuit has emphasized the causation factors of this test, which include factor three ("antitrust injury").  "Antitrust injury" is defined as "injury of the type the antitrust laws were intended to prevent and that flows from that which makes the defendants' acts unlawful." *RSA Media,* 260 F.3d at 14 (quoting *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489 (1977)).  Antitrust injury requires an injury to competition or harm to the competitive process, not simply an injury to a competitor.  *See Brown Shoe Co. v. United States*, 370 U.S. 294, 320 (1962) (the antitrust laws were passed for "the protection of competition, not competitors").  SRT bears the burden of proving antitrust injury, including at the pleading stage.  *See Associated Gen. Contractors v. Cal. State Council of Carpenters,* 459 U.S. 519, 545 (1983); *Sterling Merch., Inc. v. Nestle S.A.*, 656 F.3d 112, 121 (1st Cir. 2011).

SRT alleges injury to competition through the exclusion of alternative lentiviral vector gene therapy treatments for Beta Thalassemia (Am. Compl. ¶ 464), higher prices per treatment for bluebird's BB305 gene therapy for Beta Thalassemia (*id.*), and "likely" higher prices per treatment

for bluebird's BB305 gene therapy for Sickle Cell Disease ("SCD") (*id*. ¶ 505).[24]  This alleged

injury does not plausibly flow from Dr. Thompson's supposed anticompetitive conduct.  With

respect to Dr. Thompson, the only anticompetitive conduct SRT alleges is that he directed and

caused MSK "to intentionally withhold TNS9 IND documents from SRT and willfully falsified

information on the TNS9 IND Forms to the FDA for SRT's TNS9 drug product."[25]  *Id*. ¶ 307.

SRT claims that "Defendants caused bluebird to increase the price of the Zynteglo (BB305)

treatment for Beta Thalassemia to $2.8 million at launch in 2022."  *Id*. ¶ 448.  Yet SRT offers no

plausible connection between the MSK employees' alleged failure to check a box on an unrelated

FDA submission form and the resulting harm to competition of which SRT complains.  The

connection between Dr. Thompson's purported conduct and the "likely" price for bluebird's

BB305 treatment for SCD—an indication for which BB305 is not even approved—is even more

attenuated.  The Supreme Court has cautioned against premising antitrust standing on such

"vaguely defined links."  *Associated Gen. Contractors*, 459 U.S. at 540.  Accordingly, the Antitrust

Claims should be dismissed.  *Id*. at 545 (concluding that plaintiff's allegations of antitrust injury

were insufficient based, in part, on the tenuous and speculative character of the relationship

between the alleged violation and the plaintiff's alleged injury).

## C.  SRT's Monopolization Claims Fail Because Dr. Thompson Neither Has Monopoly Power Nor is Dangerously Close to Achieving Such Power.

SRT's claims against Dr. Thompson under Section 2 of the Sherman Act and Section 5 of

the Massachusetts Antitrust Act ("MAA") are also facially insufficient.  To state a monopolization

claim under Section 2, a plaintiff must adequately allege that a defendant: (1) has monopoly power

---

[24] The speculative nature of the antitrust damages claim also weighs against SRT in establishing antitrust standing. *See Associated Gen. Contractors*, 459 U.S. at 542 (noting that antitrust damages claim was highly speculative where harm was "indirect" and "may have been produced by independent factors").

[25] Though SRT insists its Antitrust Claims are premised on post-settlement conduct, it also alleges "[t]o the extent the release provision of the [2020] Settlement Agreement is voidable . . . Defendants' theft of SRT's trade secrets is another unlawful anticompetitive action." Am. Compl. ¶ 454.

in the relevant market and (2) has engaged in illicit "exclusionary practices" with "the design or effect of protecting or enhancing its monopoly position." *Sterling Merch.*, 656 F.3d at 125 (citation omitted) (quoting *Coastal Fuels of P.R., Inc. v. Caribbean Petroleum Corp.*, 79 F.3d 182, 195 (1st Cir. 1996)).   Attempted monopolization requires proof that "'(1) the defendant has engaged in predatory or anticompetitive conduct with (2) a specific intent to monopolize and (3) a dangerous probability of achieving monopoly power.'" *Díaz Aviation Corp. v. Airport Aviation Servs.*, 716 F.3d 256, 265 (1st Cir. 2013) (quoting *Spectrum Sports, Inc. v. McQuillan,* 506 U.S. 447, 456 (1993)).

SRT has failed to plead such allegations.   *See PSW, Inc. v. VISA U.S.A., Inc.*, 2006 U.S. Dist. LEXIS 11763 at *35 (D.R.I. Feb. 3, 2006) ("Based on [Plaintiff]'s failure to sufficiently pled [sic] the individual market power of any one of the Defendants, all the claims for monopoly under Section Two should be dismissed").   Dr. Thompson is not a participant in the relevant markets (as defined by SRT), either as an individual or through his former role at MSK.   SRT's Amended Complaint impermissibly attributes the other Defendants' market position and participation to Dr. Thompson by referring blanketly to "Defendants" throughout its Section 2 claims.   *See, e.g.,* Am. Compl. ¶ 438 ("**Defendants** . . . have monopoly power . . . ."); ¶ 439 ("**Defendants** obtained their monopoly power in 2022 with the commercial launch of bluebird's Zynteglo (BB305) in the United States.").   Dr. Thompson possesses no market power, and he was not "engaged in illicit 'exclusionary practices' with the 'design or effect of protecting or enhancing [his] monopoly position.'" *Sterling Merch.*, 656 F.3d at 125.   Nor has SRT plausibly suggested that Dr. Thompson possessed the "specific intent" to monopolize.   *Díaz Aviation Corp.*, 716 F.3d at 265.

**D.  SRT's Massachusetts Antitrust Claims Are Not Viable Because It Has Not Alleged an Actionable Antitrust Conspiracy or Conduct Occurring "Primarily and Substantially in Massachusetts."**

In addition to failing for all the same reasons as the Federal Antitrust Claims,[26] SRT's Massachusetts Antitrust Claims fail because SRT has failed to establish that Dr. Thompson's purported anticompetitive conduct occurred in or had its primary impact in Massachusetts. Section 3 states that nothing in the MAA "shall apply to any course of conduct, pattern of activity, or activities unless they occur and have their competitive impact primarily and predominantly within the commonwealth . . . ." Much like its attempts to establish personal jurisdiction over Dr. Thompson in Massachusetts, SRT's allegations supporting jurisdiction under the MAA— including that Dr. Thompson is being "controlled" by individuals in Massachusetts and that his actions were an attempt to "bolster" a Massachusetts-based business (in which he has no financial interest)—are similarly contrived.  *See* Am. Compl. ¶¶ 577, 586.  Here, the anticompetitive conduct SRT alleges (directing and causing MSK employees to withhold certain information from SRT and submit incorrect information to the FDA) would have taken place in New York where MSK is based and where Dr. Thompson resides.

The purported anticompetitive *effect* SRT alleges (higher patient costs for bluebird's BB305 product and lack of alternative treatments) is also primary and predominantly felt outside the Commonwealth.  By SRT's own admission, the relevant markets are national in scope (*see id*. ¶ 437), and nowhere does SRT allege that patients with SCD or Beta-Thalassemia living in Massachusetts were injured disproportionately.  Nor do the other Defendants' purported monopolistic profits enjoyed in Massachusetts have anything to do with Dr. Thompson.  Dismissal is warranted here because SRT has alleged ***no*** plausible facts connecting Dr. Thompson's actions

---

[26] *See, e.g.*, *Steward Health Care Sys. LLC v. Southcoast Health Sys., Inc.*, 2016 WL 2099444, at *7 (D. Mass. Sept. 2, 2016) (dismissing MAA claims that failed to state claims for violations of the Sherman Act).

to Massachusetts.  *See Twombly*, 550 U.S. at 558 ("[T]he costs of modern federal antitrust litigation and the increasing caseload of the federal courts counsel against sending the parties into discovery when there is no reasonable likelihood that the plaintiffs can construct a claim from the events related in the complaint.").

### E. SRT's Antitrust Claims Against Dr. Thompson Are Time-Barred and, in Any Event, Were Released.

Sherman Act claims must be brought "within four years after the cause of action accrued." 15 U.S.C. § 15b.[27]  Generally, a "cause of action accrues . . . when a defendant commits an act that injures a plaintiff's business." *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 338 (1971).  If SRT's Antitrust Claims are premised on Defendants' theft of trade secrets (*see* Am. Compl. ¶ 454) or on Defendants' purported agreement to restrain trade premised on a business relationship from over a decade ago, these claims are time-barred and, in any event, specifically released as to Dr. Thompson pursuant to the 2020 Settlement Agreement.  *See* Section III.A.

## V.    Plaintiff's Claim Under Chapter 93A Must Be Dismissed.

SRT's Chapter 93A § 11 claim suffers from similar deficiencies warranting dismissal: (1) the conduct alleged did not "occur primarily and substantially" in Massachusetts; (2) the specificity of the allegations fails pleading requirements; and (3) Chapter 93A will not be applied against a non-profit when its agents act within the scope of its mission.

A "center of gravity" standard is used to determine if a defendant's conduct occurs primarily and substantially in Massachusetts.  *Kuwaiti Danish Comput. Co. v. Digital Equip. Corp.*, 438 Mass. 459, 473 (2003).  SRT is not located in, and its alleged injuries did not occur in Massachusetts.  Dr. Thompson is not located in Massachusetts, was not a party in the Massachusetts Litigation, and did not conduct business in Massachusetts.  The 2020 Settlement

---

[27] The Massachusetts Antitrust Claims are also subject to a four-year statute of limitations. M.G.L. ch. 93, § 13.

Agreement was executed during the New York Litigation and is governed by New York law, and MSK's FDA submissions were prepared in New York. The center of gravity is thus not in Massachusetts. SRT's claim that Defendants' purported actions may impact Beta Thalassemia and SCD patients located in Massachusetts (presumably on the same basis that they would affect patients in any state), cannot save the day. *Garshman Co. v. GE*, 176 F.3d 1, 7 (1st Cir. 1999) (affirming trial court ruling that incurring a loss in Massachusetts is insufficient to sustain a Chapter 93A claim where conduct resulting in injury occurred primarily outside Massachusetts).

SRT's Chapter 93A claim also fails to satisfy Rule 9(b). Claims that sound in fraud or "effectively charge fraud" are subject to the Rule. *N. Amer. Catholic Educ. Programming Found., Inc. v. Cardinale*, 567 F.3d 8, 15 (1st Cir. 2009). Because SRT's Chapter 93A claim simply regurgitates its other inadequate fraud allegations, *see* Section II.C., the Chapter 93A claim is also a fraud claim and insufficiently pled.

SRT has also failed to state its Chapter 93A claim sufficiently. "Businesses seeking relief under Section 11 [of Chapter 93A] are held to a stricter standard than consumers in terms of what constitutes unfair or deceptive conduct." *Giuffrida v. High Country Inv'r, Inc.*, 73 Mass. App. Ct. 225, 238 (2008). SRT's repeated assertion that Dr. Thompson has somehow delayed SRT's ability to obtain FDA approval for the TNS9 drug product is wholly unsupported and cannot be cured. *See* Section II.C. (noting that the FDA has explicitly refuted that orphan drug designation would impact an application to market a drug product).

Finally, the conduct SRT alleges is not covered by Chapter 93A. Chapter 93A does not punish non-profit hospitals like MSK when it, and its agents, act within the scope of its core mission. *See All Seasons Servs., Inc. v. Comm'r of Health & Hosps. of Bos.*, 416 Mass. 269, 271 (1993) (refusing to apply Chapter 93A against hospital that was not acting in a "business context"

because it "did not seek to profit from its 'transaction'").  SRT's alleged conduct, regulatory submissions and conferring with counsel, are not profit-seeking activities[28] and are merely incidental to MSK's primary functions of providing hospital services.  *See Meddaugh v. Wgbh Educ. Found.*, 97 Mass. App. Ct. 1116 (2020) (affirming dismissal of Chapter 93A claim where non-profit had acquired the intellectual property at issue as part of its core mission); *10x Genomics, Inc. v. Vizgen, Inc.*, 2023 U.S. Dist. LEXIS 117685, at *32 (D. Del. July 10, 2023) (university shielded from liability under Chapter 93A because it had "not sought to profit from its transaction").

## CONCLUSION

For the foregoing reasons, Dr. Thompson respectfully requests that the Court dismiss all claims against him in Plaintiff's Amended Complaint with prejudice.

Dated: October 23, 2023                          Respectfully submitted,

*/s/ Madeleine K. Rodriguez*
Madeleine K. Rodriguez (BBO No. 684394)
155 Seaport Boulevard
Boston, Massachusetts 02210-2600
Telephone:  617 832 1000
Facsimile:  617 832 7000
mrodriguez@foleyhoag.com

Peter A. Sullivan (*pro hac vice*)
1301 Avenue of the Americas, 25th Floor
New York, New York 10019
Telephone:  212 812 0400
Facsimile:  212 812 0399
psullivan@foleyhoag.com

*Attorneys for Defendant Craig Thompson, M.D.*

---

[28] Plaintiff also has not plausibly alleged how Dr. Thompson has personally profited, or will profit, from activities that provide no benefit to him or MSK.

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system and all attachments will be sent electronically on October 23, 2023, to the register participants as identified on the Notice of Electronic Filing (NEF), and that paper copies will be sent to any non-registered parties.

/s/ Madeleine K. Rodriguez
Madeleine K. Rodriguez

*Attorney for Defendant Craig Thompson, M.D.*