IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SAN ROCCO THERAPEUTICS, LLC,<br><br>　　　Plaintiff,<br><br>　v.<br><br>NICK LESCHLY, MITCHELL FINER, PHILIP REILLY, CRAIG THOMPSON, THIRD ROCK VENTURES, LLC, BLUEBIRD BIO, INC, 2SEVENTY BIO, INC,<br><br>　　　Defendants. | Civil Action No. 1:23-cv-10919 |

**PLAINTIFF SAN ROCCO THERAPEUTICS, LLC'S MEMORANDUM OF LAW
IN SUPPORT OF MOTION FOR SANCTIONS AGAINST
DEFENDANT CRAIG THOMPSON AND HIS COUNSEL**

**TABLE OF CONTENTS**

INTRODUCTION ............................................................................................................................ 1
RELEVANT FACTUAL BACKGROUND ................................................................................... 3
I.    STATEMENTS IN THOMPSON'S DECLARATION ARE DEMONSTRABLY FALSE AND MATERIALLY MISLEADING .................................................................. 3
II.   THOMPSON HAS COMMITTED PERJURY AND MISLED COURTS IN PRIOR LITIGATIONS ................................................................................................................. 6
ARGUMENT .................................................................................................................................. 7
I.    LEGAL STANDARD ....................................................................................................... 7
II.   THOMPSON AND HIS COUNSEL'S CONDUCT WARRANTS SANCTIONS ........... 8
III.  THOMPSON COMMITTED PERJURY IN VIOLATION OF FEDERAL LAW ......... 11
CONCLUSION ............................................................................................................................. 13

# **TABLE OF AUTHORITIES**

Page(s)

**CASES**

*Alejandro-Ortiz v. Puerto Rico Elec. Power Authority*,
  872 F.Supp.2d 133 D.P.R. 2012) ...............................................................................................10

*Arkansas Tchr. Ret. Sys. v. State St. Bank and Tr. Co.*,
  512 F. Supp. 3d 196 (D. Mass. 2020) ...........................................................................................8

*Arkansas Tchr. Ret. Sys. v. State St. Corp.*,
  25 F.4th 55 (1st Cir. 2022) ........................................................................................7, 8, 10, 12

*Balerna v. Gilberti*,
  281 F.R.D. 63 (D. Mass. 2012), *aff'd*, 708 F.3d 319 (1st Cir. 2013) .....................................7, 8

*Biltrite Corp. v. World Rd. Markings, Inc.*,
  202 F.R.D. 359 (D. Mass. 2001) ...................................................................................................7

*Cruz v. Savage*,
  896 F.2d 626 (1st Cir. 1990) .........................................................................................................8

*Errant Gene Therapeutics, LLC v. Sloan-Kettering Inst. for Cancer Rsch.*,
  No. 15-2044-AJN-RLE, 2017 WL 4678431 (S.D.N.Y. Oct. 16, 2017) ....................................9

*Escribano-Reyes v. Pro. Hepa Certificate Corp.*,
  817 F.3d 380 (1st Cir. 2016) ................................................................................................10, 12

*Hochen v. Bobst Grp., Inc.*,
  198 F.R.D. 11 (D. Mass. 2000) ....................................................................................................9

*J. Walter Thompson Puerto Rico, Inc. v. Latin Am. Music Co., Inc.*,
  355 F. Supp. 3d 110 (D.P.R. 2019) ............................................................................................10

*McCarty v. Verizon New England, Inc.*,
  731 F. Supp. 2d 123 (D. Mass. 2010) ..........................................................................................7

*McMillan v. Rodriguez*,
  337 F.R.D. 27 (D.P.R. 2020) .....................................................................................................10

*Mendez-Aponte v. Bonilla*,
  645 F.3d 60 (1st Cir. 2011) .........................................................................................................10

*Miller v. SBA Towers V, LLC*,
  391 F. Supp. 3d 123 (D. Mass. 2019) ..................................................................................10, 11

*Navarro-Ayala v. Nunez*,
    968 F.2d 1421 (1st Cir. 1992)..............................................................................................11

*Sipco, LLC v. Amazon.com*,
    2013 WL 5372335 (E.D.Tex. Sept. 25, 2013) ........................................................................8

*Triantos v. Guaetta & Benson, LLC*,
    52 F.4th 440 (1st Cir. 2022).....................................................................................................3

*U.S. v. Scivola*,
    766 F.2d 37 (1st Cir. 1985)....................................................................................................12

*United States v. Nagell*,
    911 F.3d 23 (1st Cir. 2018)......................................................................................................8

**STATUTES**

18 U.S.C. § 1621..........................................................................................................................8, 11

18 U.S.C. § 1623......................................................................................................................8, 11, 12

18 U.S.C. § 1623(d).........................................................................................................................12

28 U.S.C. § 1746(2).........................................................................................................................11

28 U.S.C. § 1927..............................................................................................................................12

**OTHER AUTHORITIES**

Fed. R. Civ. P. 11 ...................................................................................................................... *passim*

Fed. R. Civ. P. 11(b) ...............................................................................................................7, 10, 12

Fed. R. Civ. P. 11(b)(1)–(3) ..................................................................................................................7

Fed. R. Civ. P. 11(b)(3) ......................................................................................................................2

Fed. R. Civ. P. 11(c) ..........................................................................................................................2

Fed. R. Civ. P. 11(c)(2) ....................................................................................................................14

Fed. R. Civ. P. 11(c)(3) ....................................................................................................................12

Fed. R. Civ. P. 12(b)(2)

Fed. R. Civ. P. 12(b)(6) ......................................................................................................................1

Mass. R. Prof. C. 3 .........................................................................................................................8, 9

Plaintiff San Rocco Therapeutics, LLC ("SRT") respectfully submits this memorandum of law in support of its motion for sanctions, pursuant to Fed. R. Civ. P. ("Rule") 11, against Defendant Craig Thompson ("Thompson") for submitting false, sworn testimony in the Declaration of Defendant Craig Thompson, MD (ECF 64-1 ("Thompson Declaration") attached hereto as Exhibit A) in support of his motion to dismiss the First Amended Complaint (ECF 42, "FAC"), pursuant to Rules 12(b)(2) and 12(b)(6) (ECF 63 ("Motion to Dismiss")).

## INTRODUCTION

This case involves allegations grounded in greed and deception to harm and sabotage SRT's competing drug product, at the expense of Sickle Cell Disease and Beta Thalassemia patients, who are forced to pay an exorbitant price of $2.8 million per treatment. FAC ¶¶ 1–30, 54–57, 163–188, 319–329. Thompson and his co-defendants engaged in an enterprise and unlawful acts in violations of the Federal Racketeer Influenced and Corrupt Organizations Act ("RICO"), Sherman Antitrust Act and Clayton Antitrust Act ("Federal Antitrust"), and Massachusetts' unfair competition and antitrust laws. *Id.* ¶ 16–30, 330–590.

While SRT's causes of action arose after November 2020, Thompson's relationships with the other defendants began in 2007 in connection with Agios Pharmaceuticals Inc. ("Agios"), a company co-founded by Thompson. *Id*. ¶¶ 163–188. Agios secured 111 million dollars in funding with the support of Defendant Third Rock Ventures, LLC ("Third Rock"), together with Third Rock's partners, Defendants Nick Leschly ("Leschly") and Philip Reilly ("Reilly"). *Id.* ¶¶ 9–11, 135. Thompson's relationship with Third Rock and Leschly was so close that in 2009, Leschly became the Business Development Officer at Agios. *Id.* ¶ 10. In 2008, Kevin P. Starr was the interim Chief Executive Officer at Agios while working as a partner at Third Rock. *Id*. To date, Agios remains a Third Rock portfolio company. *Id.* ¶ 164.

1

In an attempt to evade jurisdiction and facing the allegations against him, Thompson committed perjury and has misled this Court. To support his Motion to Dismiss, Thompson, through his counsel at Foley Hoag LLP, filed a sworn declaration containing false statements that Thompson has (i) "never held a position at Agios"; (ii) "had no role in operating Agios," (iii) "never served as a director or officer of Agios;" and (iv) never invested with Third Rock. *See* discussion I. *infra*. (citing Thompson Decl. ¶¶ 9–11, 21). In addition, Thompson, through his counsel, provided materially misleading testimony about the identity of Agios' co-founders, and Thompson's involvement with the board of directors of Agios and business relationship with Third Rock. *See infra*. *Id*. (citing *id*. ¶¶ 9, 17). Thompson signed a false declaration under the penalties of perjury that was relied on by his counsel in moving to dismiss the FAC.

Rule 11(b)(3) requires Thompson's counsel to conduct a reasonable factual inquiry and submit to the Court only papers, such as Thompson's declaration and brief, that have or are likely to have evidentiary support. Thompson's false and materially misleading statements could have (and should have) been verified by his counsel with a minimal search of easily accessible and publicly available documents. Rule 11(c) authorizes the Court to impose sanctions on those, like Thompson and his counsel, who evade this obligation.

Thompson and his counsel have declined to withdraw the motion to dismiss that relied on Thompson's false statements and material misrepresentations. SRT, therefore, moves for sanctions against Thompson and his counsel pursuant to Rule 11(c). SRT requests that the Court (1) strike the Thompson Declaration filed in conjunction with the memorandum of law in support of his Motion to Dismiss; (2) strike the Motion to Dismiss; and (3) require Thompson and his counsel to pay SRT's reasonable costs, including attorneys' fees, incurred in responding to the

motion to dismiss premised upon Thompson's false and misleading statements and the present motion.

Consistent with Rule 5, counsel for SRT served Thompson's counsel with a copy of this Rule 11 motion on November 28, 2023, and subsequently filed the present motion 21 days after service. *See Triantos v. Guaetta & Benson, LLC*, 52 F.4th 440, 447 (1st Cir. 2022) (citing Fed. R. Civ. P. 11(c)(2)).

## RELEVANT FACTUAL BACKGROUND

**I.   STATEMENTS IN THOMPSON'S DECLARATION ARE DEMONSTRABLY FALSE AND MATERIALLY MISLEADING**

On October 23, 2023, counsel for Thompson submitted the Thompson Declaration in support of his Motion to Dismiss. To prove that this Court lacks jurisdiction over him, Thompson testified that he (i) "**never held a position** at Agios" Pharmaceuticals Inc. ("Agios"); (ii) "had ***no role*** in ***operating*** Agios," and (iii) "***never served as a director*** or officer of Agios." Thompson Decl. ¶¶ 9–11(emphasis added). But these statements, which were provided under the pains and penalties of perjury, are clearly and demonstrably false.

Contrary to this testimony, the Certificate of Amendment and Certificate of Registration previously publicly filed with the Secretary of the Commonwealth of Massachusetts specifically identify Thompson as a "Director" of Agios and Cancer Metabolism Therapeutics, Inc. (Agios' original name). *See* Exs. B and C (highlighting added). Indeed, being a Director of Agios is equivalent to holding a position at the company.

In 2011 and 2012, the University of Pennsylvania and the Abramson Cancer Research Institute accused Thompson of misappropriating their intellectual property and cancer research to

3

start Agios.[1]  The Abramson Cancer Research Institute claimed that Thompson concealed his involvement with Agios.  Contrary to his testimony here, Thompson represented to the court in the Southern District of New York that he personally disclosed to plaintiffs that he (i) was "a founder (and, at one time, a director) of Agios" in 2008, and (ii) worked as consultant to Agios in February 2010.  Ex. D at 11–12.  To this Court, however, Thompson has lied about never (i) being a director of Agios, (ii) holding a position with Agios, and (iii) playing a role with the operations at Agios.  Thompson Decl. ¶¶ 9–11.

In addition, Thompson has lied about the identity of the other co-founders of Agios.  Thompson testified that "[he] founded CBT along with Dr. Tak Mak from the University of Toronto and Dr. Lewis Cantley at Beth Israel Deaconess in Boston," and "in 2008, CBT Therapeutics became Agios."  Thompson Decl. ¶ 8.  However, the Agios Second Amended and Restated Investor Rights Agreement ("Agios Investor Agreement") dated November 16, 2011, identifies its founders as Lewis Cantley, Tak Mak, Craig Thompson, ***and Michael Su***.  Ex. E at 4/35 (emphasis added).  The Agios Investor Agreement is a public document signed by Thompson and filed with the Securities and Exchange Commission ("SEC") as part of Agios' Form S-1 Registration Statement on June 10, 2013.  *Id.* at 26/35 (highlighting added).  Given the serious doubt raised as to Thompson's credibility here, it is reasonable to conclude that the failure to disclose Michael Su was not an oversight, but done purposefully because Mr. Su signed Agios' public corporate documents identifying Thompson as a Director.  *See* Ex. B at 1–2/4 (highlighting added), Ex. C at 1, 3/5 (highlighting added).

---

[1] These actions are, respectively, entitled, *The Leonard and Madlyn Abramson Family Cancer Research Institute at the Abramson Cancer Center of the University of Pennsylvania v. Craig Thompson, et al*. (1:11-cv-09108 S.D.N.Y.) (the "2011 UPenn Litigation") and *Trustees of the University of Pennsylvania v. Craig Thompson, et al*. (1:12-cv-01330 S.D.N.Y.).  *See* FAC ¶ 183.

4

Thompson also misrepresents his business relationships with Defendant Third Rock. In an effort to disclaim any involvement with his co-defendants (for purposes of violating RICO, Federal Antitrust, and state laws) Thompson testified that he "***never*** owned any interest in or ***invested with Third Rock***." Thompson Decl. ¶ 21 (emphasis added). This statement is demonstrably false or, at the very least, a material misrepresentation. The Agios Investor Agreement, which relates to, *inter alia*, ownership of securities (*id*. 4/35); voting rights (*id*. 5/35); and Series A Directors (*id*. 7/35); and other mutual investment interests in Agios, was entered into and executed by Thompson as a Founder (*id*. 4/35, 26/35) and Third Rock as a Purchaser (*id*. 4/35, 27/35). Therefore, Thompson's statement that he never invested with Third Rock is false.

Furthermore, the Agios Investor Agreement provides that "[Agios] will permit one designee of the Founders then serving on the Company's ***scientific advisory board*** who is not an employee of or member of the Board of Directors of the Company, to ***attend all meetings of the Board of Directors***," (*id*. 19/35 (emphasis added)), and the Founders' designee was apparently Thompson. The statement that Thompson did not hold a position on the board of directors of Agios (Thompson Decl. ¶9) is materially misleading because Thompson was officially designated to attend all meetings of the board of directors under the parties' "Observation Cause" (Ex. E at 19/35).

Thompson's statement (Thompson Decl. ¶ 17) that he does "not have any business relationships with any Defendants named in this action" is also misleading. When asked, in the New York Litigation[2], if he knew any of the partners at Third Rock, Thompson testified as follows: "I know several of the partners that were at the time they formed Agios. The partners that I dealt

---

[2] The New York Litigation in the case entitled, *Errant Gene Therapeutics, LLC v. Sloan-Kettering Institute for Cancer Research and Bluebird Bio, Inc.*, filed in the Supreme Court of the State of New York. *See* FAC ¶ 13.

5

with were Cary Pfeffer and Mark Leven and Kevin Starr." Ex. F 12/21/2018 Thompson Deposition Transcript ("Dep. Tr.") at 16:24–17:4. Indeed, the Agios Investor Agreement was signed by Thompson and Kevin Starr, Manager, at Third Rock. Ex. E, at 27/35.

## II. THOMPSON HAS COMMITTED PERJURY AND MISLED COURTS IN PRIOR LITIGATIONS

This is not the first time that Thompson has committed perjury or provided materially misleading information to a court. In the New York Litigation, Thompson testified that "[he] was not a director of Agios." Thompson Dep. Tr. at 16–17. Thompson's sworn testimony in December 2018 was likewise false. *See* discussion I *supra*.

In another case before the Southern District of New York in 2017, Thompson's counsel similarly argued that the case should be dismissed because Thompson was not a significant shareholder of Agios. *See* Ex. G. The court disagreed, and found that the excerpt of Agios' SEC filings, submitted by Thompson's counsel, left out the Form S-1 and its exhibits indicating that Thompson was a founder of Agios and a member of its Scientific Advisory Board, and had signed the Investor Rights Agreement as a founding member of the Agios. *Id*. at 13. The court stated that "by failing to produce the full document and arguing that Thompson was not a significant shareholder, [Sloan Kettering Institute] has made a misrepresentation to the Court in potential violation of its duty of candor to the Court." *Id*. at 13, n. 4.

Thompson and his counsel have engaged in worse conduct here by providing this Court with a sworn declaration riddled with false testimony and material misrepresentations, in violation of the duty of candor, and in an apparent attempt to commit fraud upon the Court.

6

**ARGUMENT**

I.  **LEGAL STANDARD**

"By presenting to the court a pleading, written motion, or other paper," like Thompson's Declaration, "whether by signing, filing, submitting, or later advocating it—an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed *after an inquiry reasonable under the circumstances* . . . is not being presented for any improper purpose," and "the *factual contentions have evidentiary support* or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." Fed. R. Civ. P. 11(b)(1)–(3) (emphasis added); *Arkansas Tchr. Ret. Sys. v. State St. Corp.*, 25 F.4th 55, 64 (1st Cir. 2022) ("Rule 11(b) applies to anyone who presents a paper to a court whether by signing, filing, submitting, or later advocating it"); *see also Balerna v. Gilberti*, 281 F.R.D. 63, 65–66 (D. Mass. 2012), *aff'd*, 708 F.3d 319 (1st Cir. 2013) (Rule 11 imposes upon an attorney the affirmative duty "to certify that they have conducted a reasonable inquiry and have determined that *any papers* filed with the court are well grounded in fact, *legally tenable*, and 'not interposed for any improper purpose'") (emphasis added) (citing *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990)); *McCarty v. Verizon New England, Inc.*, 731 F. Supp. 2d 123, 133 (D. Mass. 2010) (same).

"An attorney who signs the paper without such a substantiated belief 'shall' be penalized by 'an appropriate sanction'" including, for example, "payment of the other parties' expenses." *Balerna*, 281 F.R.D. at 65–66 (citing *Cooter*, 496 U.S. at 393)); *Biltrite Corp. v. World Rd. Markings, Inc.*, 202 F.R.D. 359, 363 (D. Mass. 2001) (sanctions in the form of paying reasonable attorney's fees and costs caused by the party's false and misleading sworn statement warranted).

7

> As relevant here, Mass. R. Prof. C., Rule 3.3 provides:
>
> A lawyer shall not knowingly… fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer.
>
> If a lawyer, the lawyer's client, or a witness called by the lawyer, has offered material evidence and the lawyer comes to know of its falsity, the lawyer shall take reasonable remedial measures, including if necessary, disclosure to the tribunal.
>
> A lawyer who represents a client in an adjudicative proceeding and who knows that a person intends to engage, is engaging or has engaged in criminal or fraudulent conduct related to the proceeding shall take reasonable remedial measures, including, if necessary, disclosure to the tribunal.

"An attorney, as an officer of the court has a duty of candor to the tribunal." *Arkansas Tchr. Ret. Sys. v. State St. Bank and Tr. Co.*, 512 F. Supp. 3d 196, 209 (D. Mass. 2020).

Sections 1621 and 1623 of Title 18 of the United States Code govern perjury. *See* 18 U.S.C. §§ 1621 and 1623. Section 1621 considers perjury generally, while section 1623 concerns false declarations before a grand jury or court. *See*, *e.g.*, *United States v. Nagell*, 911 F.3d 23, 29 (1st Cir. 2018) (perjury under section 1621(1) is defined as "giving false testimony under oath concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory") (citing *United States v. Dunnigan*, 507 U.S. 87, 94 (1993) (alterations omitted); *Sipco, LLC v. Amazon.com*, 2013 WL 5372335, *3 (E.D.Tex. Sept. 25, 2013) (granting sanctions for false declaration, with referral to U.S. Attorney for investigation of perjury under 18 U.S.C. § 1623).

## II. THOMPSON AND HIS COUNSEL'S CONDUCT WARRANTS SANCTIONS

Thompson's counsel violated Rule 11 by failing to conduct a reasonable inquiry and determine that the Thompson Declaration was "well grounded in fact," *Balerna*, 281 F.R.D. at 65–66, or had any "evidentiary support" or "the likely prospect of such support." *Arkansas*, 25 F.4th at 64–65; *Cruz v. Savage*, 896 F.2d 626, 631 (1st Cir. 1990) (under Rule 11's objective standard, "[c]ourts should avoid using the wisdom of hindsight and instead evaluate an attorney's conduct

based upon what was reasonable at the time the attorney acted") (citing Fed. R. Civ. P. 11, advisory notes)); *Hochen v. Bobst Grp., Inc.*, 198 F.R.D. 11, 16 (D. Mass. 2000), *aff'd sub nom. Nyer v. Winterthur Int'l*, 290 F.3d 456 (1st Cir. 2002) (objective standard considers what is "reasonableness under the circumstances"). The majority of Thompson's statements have no evidentiary support. The Thompson Declaration, instead, contains demonstrably false and misleading statements—concerning Thompson's role and involvement in Agios and his ownership interest and investments in Third Rock—all of which could have (and should have been) verified, but were not.

Rudimentary Internet searches would have uncovered *publicly* available filings with the Secretary of Commonwealth (Exs. B and C), state and federal courts (Exs. D and G), and the SEC (Ex. E)[3] flatly refuting Thompson's statements that he (i) "never held a position at Agios"; (ii) "had no role in operating Agios"; (iii) "never served as a director or officer of Agios;" (iv) does not "have any business relationships with any Defendants named in this action"; and (v) "never . . . invested with Third Rock[.]" Thompson Decl. ¶¶ 9–11, 17, 21. Given the breadth of factual allegations tying Thompson to a fraudulent scheme with his co-defendants for the benefit of bluebird (and by extension Third Rock, Leschly, Finer, and Reilly resulting in hundreds of millions in fraudulent compensation), and Thompson's own personal gain in violation of RICO, Federal Antitrust, and state unfair competition and antitrust laws, a reasonable inquiry would have necessitated investigating Thompson's statements about Agios and the other defendants. *See*, *e.g.*,

---

[3] The Agios Investor Agreement is available at: https://www.sec.gov/Archives/edgar/data/1439222/000119312513253449/d538215dex42.htm and https://investor.agios.com/sec-filings/sec-filing/s-1/0001193125-13-253449. It is also available as Docket Number 163-1 in the action captioned, *Errant Gene Therapeutics, LLC v. Sloan-Kettering Inst. for Cancer Rsch.*, No. 15-2044-AJN-RLE, 2017 WL 4678431 (S.D.N.Y. Oct. 16, 2017). *See also* Ex. G.

FAC ¶¶ 9–11, 135, 163–88, 324, 348, 435–544, 552, 532–78. Thompson's counsel clearly undertook no inquiry whatsoever, and, thus, sanctions are warranted.

Moreover, the FAC cites directly (¶¶ 13–15, 182–183, 189–207) to relevant prior litigations, and provides case captions, docket numbers, and a brief summary of those disputes. This includes, for example, the UPenn Litigation (*id*. ¶ 183) in which Thompson himself argued he was "a founder (and, at one time, a director) of Agios" and worked as a consultant to Agios in February 2010, in moving to dismiss the complaint. Ex. D at 11–12. Counsel could have easily pulled filings from the *public* docket, but did not.

Thompson's counsel was "at least 'culpably careless.'" *Arkansas*, 25 F.4th at 65–66 (affirming district court's sanctions under Rule 11 where a filing "painted a materially misleading picture" finding that counsel "at the very least was careless"); *Miller v. SBA Towers V, LLC*, 391 F. Supp. 3d 123, 135–36 (D. Mass. 2019) (sanctioning "culpabl[y] careless" attorney who "verified that the statements contained in the complaint were true and accurate to the best of his knowledge" when they were demonstrably false); *McMillan v. Rodriguez*, 337 F.R.D. 27 (D.P.R. 2020); *J. Walter Thompson Puerto Rico, Inc. v. Latin Am. Music Co., Inc*., 355 F. Supp. 3d 110 (D.P.R. 2019); *Alejandro-Ortiz v. Puerto Rico Elec. Power Authority*, 872 F.Supp.2d 133 (D.P.R. 2012) (ordering Rule 11 sanctions against defendant in connection with its motion to dismiss).

Where, as here, a party submits a declaration containing false or misleading statements courts routinely award sanctions for violating Rule 11. *See*, *e.g.*, *Escribano-Reyes v. Pro. Hepa Certificate Corp*., 817 F.3d 380, 385 (1st Cir. 2016) (affirming striking of sworn statement containing "inconsistencies with previous facts and new factual contentions"); *Mendez-Aponte v. Bonilla*, 645 F.3d 60, 68 (1st Cir. 2011) (district court did not abuse its discretion in imposing sanctions where the attorney violated Rule 11(b) by submitting a brief "for which the only

10

evidentiary support is Mendez-Aponte's sworn affidavit . . . Neither filing has any promise of likely evidentiary support."); *Navarro-Ayala v. Nunez*, 968 F.2d 1421, 1428 (1st Cir. 1992) (affirming holding that defendants "violated Rule 11 by submitting sworn pleading containing false statements" and without making a "reasonable inquiry"); *Miller*, 391 F. Supp. 3d at 128 (ordering sanctions where party submitted a verified complaint containing false statements).

**III.     THOMPSON COMMITTED PERJURY IN VIOLATION OF FEDERAL LAW**

The Thompson Declaration meets every element of Sections 1621 and 1623.  As to Section 1621, Thompson submitted the Thompson Declaration in substantially the same form as 28 U.S.C. § 1746(2).  *See* 18 U.S.C. § 1621 ("[w]hoever (1) having taken an oath before a competent tribunal, officer, or person . . . willfully and contrary to such oath states or subscribes any material matter which he does not believe to be true . . . "is guilty of perjury"); *see generally* Thompson Decl. (states residences in the United States, "[s]worn under the pains and penalty of perjury this 20th day of October, 2023" and bears Thompson's signature).  Thompson willfully subscribed as true (but did not believe to be true): "I have never held a position at Agios, nor did I hold a position on the board of directors," "I have had no role in operating Agios," and "I never served as a director or officer of Agios."  Thompson Decl. ¶¶ 9–11.  These matters are material to Thompson's Motion to Dismiss, such as the FAC's allegations that Thompson violated RICO, antitrust, unfair competition in seeking to benefit Agios.  *See* Argument II. *supra*.

For similar reasons, Thompson submitted a false declaration in violation of Section 1623. *See* 18 U.S.C. § 1623 ("[w]hoever under oath (or in any declaration . . . as permitted under section 1746 of title 28, United States Code) in any proceeding before or ancillary to any court… of the United States knowingly makes any false material declaration").  In addition, the Thompson Declaration was made in the current proceeding before this Court, with knowledge that the statements (i) "I have ***never*** held a position at Agios;" (ii) "I have had ***no role*** in operating Agios";

11

(iii) "I ***never served as a director*** or officer of Agios;" and "I ***never…invested*** with Third Rock") were false and material to the proceedings (*e.g.*, Thompson's Motion to Dismiss). Thompson Decl. ¶¶ 9–11, 21 (emphasis added).

The safe harbor of Section 1623 does not apply. Pursuant to 18 U.S.C. § 1623(d), "[w]here, in the same continuous court . . . proceeding in which a declaration is made, the person making the declaration admits such declaration to be false, such admission shall bar prosecution under this section if, at the time the admission is made, the declaration has not substantially affected the proceeding, or it has not become manifest that such falsity has been or will be exposed." As applied here, Thompson has not admitted that the Thompson Declaration is false, and the Thompson Declaration has substantially affected the proceeding (*e.g.*, necessitating an extensive and unnecessary opposition brief and the present motion), and it is manifest the falsity has been exposed. *See U.S. v. Scivola*, 766 F.2d 37, 46 (1st Cir. 1985) ("Once it becomes manifest to a witness that his false testimony has been or will be exposed, he may no longer take advantage of the recantation defense of section 1623(d).").

Accordingly, SRT respectfully requests the entry of sanctions against Thompson and his counsel, or at the very least, an order to show cause upon Thompson's counsel to explain why sanctions should not be issued. *See*, *e.g.*, *Arkansas*, 25 F.4th at 62 (district court properly notified counsel to show cause pursuant to Rule 11(c)(3) why it should not be sanctioned for misrepresentation in memorandum of law); *Escribano-Reyes*, 817 F.3d at 385 (court struck party's sworn statement after he and his counsel were ordered "to show cause as to why [they] should or should not be sanctioned pursuant to Fed .R .Civ. P. 11(b) and 28 U.S.C. § 1927").

12

**CONCLUSION**

For the foregoing reasons, the Court should (1) strike the Thompson Declaration filed in conjunction with the memorandum of law in support of his Motion to Dismiss; (2) strike the Motion to Dismiss; and (3) require Thompson and his counsel to pay SRT's reasonable costs, including attorneys' fees, incurred in opposing the Motion to Dismiss and preparing the present motion.

Dated: December 20, 2023

Respectfully submitted,

/s/   Erika Page
Erika Page, BBO 700052
FOX ROTHSCHILD LLP
33 Arch Street, Suite 3110
Boston, MA 02110
(617) 848-4000
epage@foxrothschild.com

Wanda French-Brown (*pro hac vice*)
James McConnell (*pro hac vice*)
Mary Jean Kim (*pro hac vice*)
FOX ROTHSCHILD LLP
101 Park Avenue, 17th Floor
New York, NY 10178
(646) 601-7617
wfrench-brown@foxrothschild.com
jmcconnell@foxrothschild.com
mkim@foxrothschild.com

*Attorneys for Plaintiff San Rocco Therapeutics, LLC*

## **CERTIFICATE OF SERVICE**

I, Erika Page, Esq., do hereby certify that on this date, I served a copy of the foregoing via the Court's electronic filing system.

      /s/   Erika Page
Erika Page, Esq.

Dated: December 20, 2023